223 P.3d 157

**STATE of Hawai'i, Respondent/Plaintiff–Appellee**

v.

**Douglas MILLER, Petitioner/Defendant–Appellant.**

No. 28849.

Supreme Court of Hawai'i.

Jan. 25, 2010.

As Corrected Feb. 4, 2010.

Hayden Aluli for petitioner/defendant-appellant.

Justine M. Hura, Deputy Prosecuting Attorney, County of Maui (Richard Minatoya, Deputy Prosecuting Attorney, County of Maui also appearing) for respondent/plaintiff-appellee.

MOON, C.J., ACOBA, and DUFFY, JJ., and NAKAYAMA, J. dissenting, with whom circuit Judge HIRAI, assigned by reason of vacancy, joins.

Opinion of the Court by ACOBA, J.

In his Application for Writ of Certiorari (Application), Petitioner/Defendant–Appellant Douglas Miller (Petitioner) seeks review of the judgment of the Intermediate Court of Appeals (ICA) filed on October 3, 2008, pursuant to its September 15, 2008 Summary Disposition Order (SDO)[1] affirming the October 15, 2007 Judgment of conviction and sentence of probation filed by the family court of the second circuit (the court).[2] *See State v. Miller*, No. 28849, 2008 WL 4195877, at *1 (Haw.App. Sept. 15, 2008) (SDO). We hold that (1) Respondent/Plaintiff–Appellee State of Hawai'i (Respondent) breached its plea agreement with Petitioner when, after agreeing to take no position on Petitioner's Deferred Acceptance of No Contest Plea ("DANCP" or "DANC") motion, it effectively argued against that motion at Petitioner's sentencing hearing; and (2) Respondent's breach of the plea agreement in this case was plain error, as it denied Petitioner his constitutional right to due process. Inasmuch as the ICA held to the contrary as to the foregoing matters, the ICA's judgment is re-

1. The SDO was filed by then-Chief Judge Mark Recktenwald and Associate Judges Daniel R. Foley and Alexa D.M. Fujise.

2. The Honorable Richard T. Bissen, Jr. presided.

versed, the court's October 15, 2007 judgment is vacated, and the case is remanded for resentencing before a different family court judge.

The Application was filed by Petitioner on December 24, 2008, and accepted on February 9, 2009. This court heard oral argument on the merits on March 5, 2009.

## I.

On August 6, 2007, Respondent filed a complaint against Petitioner, charging him with Abuse of a Family or Household member, under Hawai'i Revised Statutes (HRS) § 709–906 (Supp.2007).[3] At the proceedings on October 15, 2007, both parties represented that they were ready for trial, but came to an oral agreement outside the courtroom just before the trial was to begin. Respondent agreed to amend the abuse charge to Assault in the Third Degree under HRS § 707–712 (1993)[4] on condition that Petitioner plead "no contest" to the amended charge. The agreement also "included the understanding that [Petitioner] would orally move [the court] for a [DANCP], to which [Respondent] agreed to 'take no position.'" A change of plea hearing occurred at which the following colloquy took place regarding the terms of the plea agreement:

> THE COURT: ... The attorneys, during this time off the record, have been in negotiations and have come to an agreement.
>
> Will [Respondent] please place that agreement on the record.
>
> [PROSECUTOR]: Yes, your Honor. *[Respondent] will agree to amend the charge of abuse of a family or household member to Assault in the Third Degree. And [Petitioner] will agree to plead guilty or no contest to this charge.* [Petitioner] has agreed to write a letter of apologize [sic] to [the complainant]. *[Petitioner] has already agreed* to do one year of probation, serve 48 hours jail time, do a substance abuse assessment, participate in domestic violence intervention classes, and pay restitution to [the complainant] for the emergency visit stemming from this case.
>
> [PETITIONER'S COUNSEL]: Is that it? Okay. And, your Honor, *it's my understanding, too, that [Petitioner] will be moving the [c]ourt for acceptance of a [DANCP], and [Respondent] will take no position as to that motion.*
>
> THE COURT: Is that right?
>
> [PROSECUTOR]: *I will—I'll take no position, your Honor.*

(Emphases added.)

The court then had an on-the-record colloquy with Petitioner regarding the consequences of his plea agreement and found that Petitioner "voluntarily, knowingly, and intel-

---

3. HRS § 709–906 provides in relevant part:

> **Abuse of family or household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member....
>
> For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.
> ....
> (5) Abuse of a family or household member ... [is a] misdemeanor[] and the person shall be sentenced as follows:
> (a) For the first offense the person shall serve a minimum jail sentence of forty-eight hours;
> ....
> Upon conviction and sentencing of the defendant, the court shall order that the defendant immediately be incarcerated to serve the mandatory minimum sentence imposed; provided that the defendant may be admitted to bail pending appeal pursuant to chapter 804. The

court may stay the imposition of the sentence if special circumstances exist.
> (6) Whenever a court sentences a person pursuant to subsection (5), it also shall require that the offender undergo any available domestic violence intervention programs ordered by the court. However, the court may suspend any portion of a jail sentence, except for the mandatory sentences under subsection (5)(a) and (b), upon the condition that the defendant remain arrest-free and conviction-free or complete court-ordered intervention.

4. HRS § 707–712 provides:

> **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:
> (a) Intentionally, knowingly, or recklessly causes bodily injury to another person; or
> (b) Negligently causes bodily injury to another person with a dangerous instrument.
> (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

ligently enter[ed] his plea with a full understanding of the charge against him and the consequences of his plea." The court reserved entering a "finding of guilt until [it] heard the argument" on the DANCP motion.

The court first heard from Respondent as to "[s]entencing." The prosecutor then stated:

> Your Honor, we would ask that you follow the agreement that's been reached. *However, this case was borderline strangulation.* [Petitioner] actually elbows [the complainant], kneed her in the back, punched her, choked her, put his hand over her mouth, and told her to be quiet, and then also took a pillow after that because she wouldn't be quiet and put it over her face.
>
> At that time, your Honor, the witness in this case, the victim, actually feared for her life. And, you know, she's 51 years old. So is the defendant. *He does not have a prior criminal record, but you know, at 51 years old, you shouldn't be doing that to a significant loved one. And this type of beating and brutality should not be accepted in our society.*

(Emphases added.)

After the prosecutor's statement, Petitioner thanked the prosecutor for changing the

charge to Assault in the Third Degree and argued that, because at 51 years of age Petitioner "doesn't have a criminal record," he should be granted a DANCP under HRS § 853–1 (Supp.2008).[5] Petitioner further argued that the court had discretion to grant the DANCP motion so long as it made the requisite findings under HRS § 853–1, specifically that

> [i]n this particular case, there is no mandatory minimum term based on bodily injury. The [c]ourt has the discretion to grant the deferral. If the court makes two findings, and one, it appears that *[Petitioner] is not likely, again, to engage in a criminal course of conduct; and two, the ends of justice and the welfare of society have been properly served by the penalty as imposed by law.*

(Emphasis added.) Petitioner also contended that the court's alleged interpretation of DANCP as applying to youthful offenders is not dictated by law:

> And I know the court has given, I guess, guidance that it appears that the legislature has given this type of deferral to youthful offenders. I don't see that as a matter of law, and I ask that you use your

---

5. HRS § 853–1 provides:

 (a) Upon proper motion as provided by this chapter:
 (1) *When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial,* to a felony, misdemeanor, or petty misdemeanor;
 (2) *It appears to the court that the defendant is not likely again to engage in a criminal course of conduct;* and
 (3) *The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty* imposed by law, *the court,* without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant *and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.*

 (b) The proceedings may be deferred upon any of the conditions specified by section 706–624. As a further condition, the court shall impose a compensation fee pursuant to section 351–62.6 upon every defendant who has entered a plea of guilty or nolo contendere to a petty misdemeanor, misdemeanor, or felony; provided that the court shall waive the imposition of a compensation fee, if it finds that the

defendant is unable to pay the compensation fee. The court may defer the proceedings for a period of time as the court shall direct but in no case to exceed the maximum sentence allowable; provided that, if the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, the court may defer the proceedings for a period not to exceed one year. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

 (c) *Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge* against the defendant.

 (d) Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction.

 (e) Upon discharge of the defendant and dismissal of the charge against the defendant under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831–3.2.
 (Emphases added.)

discretion where [Petitioner] has not engaged at all in any criminal conduct.

Apparently in response to Respondent's statements concerning the assault, Petitioner continued,

> I just want the court to note, while we are not minimizing his plea and apology, when Officer Katayama appeared at the scene, there was no complaint of injuries. Look for and found none.

In response to Petitioner's comments, Respondent "clarif[ied]" on the record that

> [Respondent] did have Dr. Nelson from the ER examine her, and did see—well, diagnosis, she had a bruised neck; and also, in talking with [the complainant], she did have bruises to her leg area by basically getting into a fetal position to block [Petitioner].
>
> So Officer Katayama, even though he was on the scene first, bruises do show up later.

The court denied Petitioner's DANCP motion and sentenced him according to the terms of the plea agreement to "forty-eight hours of incarceration, one year probation, substance abuse assessment, domestic violence intervention classes, and restitution and an apology to the victim." However, according to the court, "someone who is involved [in] or causes such an offense is—should not be granted a deferred acceptance [of his or her] plea":

> Your motion for deferred acceptance is denied. The [c]ourt—*although I can find [Petitioner] has had no record for 51 years, I guess the offense you decided to start off was one too significant for the [c]ourt to ignore and to treat as something where the ends of justice and the welfare of society do not require that you presently suffer this penalty.* I think, in fact, the opposite is true. *I think society does demand that someone who is involved [in] or causes such an offense is—should not be granted a deferred acceptance [of his or her] plea.*
>
> I can make the finding of the other two conditions, but the other condition is that he's pleading voluntarily prior to trial, but I don't know if I—do not feel comfortable

making a finding that he's not likely to, again, engage in a criminal course of conduct.

> And by the way, to address the argument made by defense that the [c]ourt is of the belief that the deferred acceptance is reserved only for the youthful offender, that actually is not correct.

(Emphases added.)

Furthermore, the court indicated that someone 20 or 21 might be "worthy of a deferred acceptance," but that for "the type of crime that was committed," it would "not grant a deferral *whatever age* ":

> The [c]ourt does view someone whose judgment is not fully formed, perhaps at an age of 20 or 21, as being perhaps worthy of a deferred acceptance for a minor theft or some other offense that's been created. But someone that is the defendant's age, but more importantly for the type of crime that was committed, I could not grant a deferral whatever age anyone who committed a similar offense, and I don't believe I have.

(Emphasis added.)

## II.

Petitioner appealed to the ICA as to 1) whether the case should be remanded for re-sentencing before a different judge based on the prosecutor's alleged violation of the plea agreement wherein she agreed that she would "take no position" with respect to [Petitioner's] request for a DANCP, but then tendered an argument at sentencing that amounted to a strong opposition to [Petitioner's] request for a DANCP; and 2) even if the ICA found that Respondent did not breach the plea agreement, whether the matter should be remanded for re-sentencing before another judge based on the [court's] alleged apparent "policy" of not granting any DANCPs to offenders over the age of 21 years who have been charged with Assault in the Third Degree.

### A.

The ICA in its SDO affirmed the "Judgment Conviction and Probation Sentence."

*Miller*, 2008 WL 4195877, at *1. As to Petitioner's first argument of whether the prosecutor violated the plea agreement, the ICA concluded that, "having failed to claim a breach of the plea agreement by [Respondent] at the sentencing hearing, [Petitioner] did not preserve this issue for appeal." *Id.* According to the ICA, "[Petitioner] did not object" to the prosecutor's comments at the hearing and Respondent's "comments were limited to sentencing and at no time did it take a position on [Petitioner's] DANC [m]otion." *Id.* at *2. The ICA viewed as determinative that Petitioner failed to raise the breach of the plea agreement at the sentencing hearing or subsequently by Hawai'i Rules of Penal Procedure (HRPP) Rule 35 motion "and thus he cannot raise the issue for the first time on direct appeal."[6] *Id.*

Regarding whether the ICA should nonetheless exercise plain error review, the ICA determined that it could not, "based on the record before [it], conclude there was error which seriously affected 'the fairness, integrity, or public reputation of judicial proceedings,' subverted 'the ends of justice,' and prevented 'the denial of fundamental rights.'" *Id.* (quoting *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999)).

### B.

As to Petitioner's second argument that "the [court] abused its discretion in denying [Petitioner's] DANC [m]otion[,]" *Id.* at *1, the ICA reasoned that "[t]he grant or denial of a motion for a DANC plea is within the

discretion of the [court] and will not be disturbed unless there has been manifest abuse of discretion." *Id.* at *2. The ICA thereby concluded that "[Petitioner] has failed to show that the [court] exceeded the bounds of reason or disregarded the rules or principles of law or practice to [Petitioner's] substantial detriment." *Id.* at *3.

### III.

In his Application, Petitioner presents the following questions:

I. Whether the ICA gravely erred by holding that [Petitioner], having failed to claim an alleged breach of the plea agreement by the prosecution at the sentencing hearing, did not properly preserve the issue for appeal, and therefore waived it.

II. Whether the ICA gravely erred by holding that [Petitioner] failed to show that [the court] had abused its discretion by denying [Petitioner's] DANCP motion due to an alleged "categorical" policy of rejecting DANCP motions that involve offenders over the age of 21 and a charge of assault in the third degree.

### IV.

### A.

█ Regarding the first question, Petitioner's first argument in his Application is that "the ICA gravely erred by holding that [Petitioner], having failed to claim an alleged breach of the plea agreement by Respondent at the sentencing hearing, did not properly

---

**6.** Petitioner argued that several of the federal circuits have concluded that claims for breach of a plea agreement are not waived if not raised at sentencing or under Federal Rules of Criminal Procedure (Fed.R.Crim.P.) Rule 35, and can be raised for the first time on appeal. *See United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir.1989) ("Even if we agree that appellant did not properly object to the plea agreement violation at the sentencing hearing, such failure does not constitute a waiver." (Citation omitted.)); *United States v. Shorteeth*, 887 F.2d 253, 255 (10th Cir.1989) ("Failure to properly object to breach of a plea agreement at a sentencing hearing ordinarily does not waive the objection." (Citation omitted.)); *Paradiso v. United States*, 689 F.2d 28, 30 (2d Cir.1982) ("Ordinarily there is no requirement that a defendant object to the violation of a plea agreement at the time of

sentencing, and defendant's claim that his plea agreement was violated is not waived by his failure to raise the issue at sentencing or in a subsequent [Fed.R.Crim.P.] Rule 35 motion." (Citation omitted.)).

Respondent relied in its arguments to the ICA upon a Ninth Circuit case to argue that "[a] claim of breach of plea is ... the sort of claim which a defendant ... should be required to raise when the alleged breach can still be repaired." (Quoting *United States v. Flores–Payon*, 942 F.2d 556, 560 (9th Cir.1991).) In apparent agreement with Respondent, the ICA concluded that "[Petitioner] should have raised the alleged breach before the family court at sentencing or subsequently by [HRPP] Rule 35 motion.... This [Petitioner] failed to do, and thus he cannot raise the issue for the first time on direct appeal." *Miller*, 2008 WL 4195877, at *2.

preserve the issue for appeal, and therefore waived it." Petitioner maintains "the ICA's SDO is obviously inconsistent with every federal circuit court and Hawai'i appellate decision regarding this issue."

The ICA cited to *State v. Miyazaki*, 64 Haw. 611, 616, 645 P.2d 1340, 1344 (1982), to support its conclusion that "[Petitioner] did not preserve this issue for appeal." *Miller*, 2008 WL 4195877, at *1. In *Miyazaki*, the appellant had not raised her double jeopardy claim prior to appeal. 64 Haw. at 616, 645 P.2d at 1344. As the ICA reiterated, this court noted in *Miyazaki* that "[n]ormally, an issue not preserved at trial is deemed to be waived[,]" but went on to address the double jeopardy issue under this court's power to review plain errors affecting substantial rights. *See id.*

■ The ICA further cited to its opinion in *State v. Abbott*, 79 Hawai'i 317, 901 P.2d 1296 (App.1995), for the proposition that "[d]isputes over the meaning of plea agreements involve questions of fact to be addressed by the trial court" and therefore "[Petitioner] should have raised the alleged breach before the family court at sentencing or subsequently by [HRPP] Rule 35 motion and afforded the court the opportunity to hold a hearing on the alleged breach and make factual determinations as to whether a breach of the plea agreement occurred." *Miller*, 2008 WL 4195877, at *2. However, *Abbott* does not support the conclusion that the ICA propounds. *Abbott* merely stated that "[d]isputes over the meaning of plea agreements involve questions of fact, and our review of factual determinations ... is governed by the 'clearly erroneous' standard." 79 Hawai'i at 319, 901 P.2d at 1298.

■ Contrary to the ICA's position, the meaning of the plea agreement is not at issue on appeal in this case—there is no dispute that Respondent agreed not to take any position on Petitioner's DANCP motion. Rather, whether the prosecutor took a position, and thereby breached the agreement, is the issue on appeal. In that respect, *Abbott* held that "[w]hether the State has *actually breached the terms of a plea agreement, however, is a question of law, which we review de novo* under the right/wrong standard of review."

*Id.* at 320, 901 P.2d at 1299 (emphasis added). *Abbott* further reiterated the principle that "a sentence imposed after a hearing at which the State breaches its plea agreement with the defendant *is illegal and must be set aside.*" *Id.* at 319, 901 P.2d at 1298 (emphasis added) (citation omitted). Therefore, contrary to the ICA's interpretation, *Abbott* suggested that whether a plea agreement was breached is a question appropriate for *de novo* appellate review.

### B.

■ As noted, the ICA further rejected Petitioner's argument that the matter could be reviewed on appeal pursuant to the plain error doctrine. *Miller*, 2008 WL 4195877, at *2. Without engaging in any reasoning as to why plain error review should not be exercised in this case, the ICA merely concluded that there was no "denial of fundamental rights" and that plain error should be "exercised sparingly." *Id.* (internal quotation marks and citations omitted).

### 1.

Petitioner argues in his Application that "the ICA gravely erred in its decision because it was clearly inconsistent with Hawai'i appellate decisions addressing breaches of a plea agreement under [HRPP Rule 52] as 'plain error,' since such error would undoubtedly affect [Petitioner's] substantial rights." Petitioner cites to *State v. Nichols*, 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006), in which this court held that "[i]f the substantial rights of the defendant have been affected adversely, the error will be deemed plain error[,]" and to *State v. Sanchez*, 82 Hawai'i 517, 524–25, 923 P.2d 934, 941–42 (App.1996), for the proposition that "where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court."

Respondent, on the other hand, argued in its answering brief on appeal that "[a]lthough the [c]ourt has inherent power to notice plain error ... plain error notice is extraordinary[,]" (citations omitted), and that here "[t]he extraordinary measure of plain error

notice is not warranted when [Petitioner] had and failed to avail himself of adequate and ordinary alternative recourse for alleged errors[.]"

### 2.

 It would seem firmly established that under the plain error doctrine, "where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court." *Sanchez*, 82 Hawai'i at 524–25, 923 P.2d at 941–42 (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 75 (1993)) (brackets omitted). Hence, Respondent's and the ICA's position that Petitioner is precluded from raising the breach of the plea agreement at this point because he failed to raise it at the time of the breach or subsequently by HRPP Rule 35 motion to correct sentence, indisputably and directly conflicts with our case law on the plain error doctrine.

 This court has held that it "will apply the plain error standard of review to correct errors which seriously affect the *fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.*" *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citing *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988)) (emphasis added). Neither Respondent nor the ICA cite to any case in our decisional law indicating that breaches of plea agreements should be excluded from the realm of errors suitable for plain error review on the basis that such review would be "extraordinary."

To the contrary, under Hawaii's plain error doctrine, if Petitioner's substantial rights or the integrity of the proceedings were affected, then plain error review is appropriate. HRPP Rule 52 (2008) provides:

> RULE 52. HARMLESS ERROR AND PLAIN ERROR
>
> **(a) Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
>
> **(b) Plain Error.** *Plain errors or defects affecting substantial rights may be*

> *noticed although they were not brought to the attention of the court.*

(Emphasis added.) Therefore, despite Petitioner's failure to raise the issue below, the error may be corrected on appeal unless it was harmless beyond a reasonable doubt. *See State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (holding that error that " 'does not affect the substantial rights' of a defendant" will be deemed "harmless beyond a reasonable doubt") (brackets omitted).

The ICA apparently recognized Petitioner's argument that he should be able to seek plain error review on appeal, but concluded that there was not "error which seriously affected the fairness, integrity, or public reputation of judicial proceedings, subverted the ends of justice, and prevented the denial of fundamental rights." *Miller*, 2008 WL 4195877, at *2 (internal quotation marks and citation omitted). The ICA's position plainly clashes with the protection afforded by Hawai'i law for the integrity of plea proceedings and the safeguards afforded fundamental rights in such proceedings.

### C.

 Opposed to Respondent's position and the ICA's opinion, *State v. Adams*, 76 Hawai'i 408, 879 P.2d 513 (1994), holds that plea agreement violations *do* implicate fundamental rights. Petitioner cites *Adams* for the proposition that "because a plea agreement 'implicates constitutional considerations—including the fairness and voluntariness of the plea,' " "*the terms of a plea agreement*, which serve as the inducement for entering a plea, *must be fulfilled* .... Indeed, *due process requires that the State uphold its end of the bargain.*' " (Quoting 76 Hawai'i at 412, 414, 879 P.2d at 517, 519.) (Emphases added.) In *Adams*, this court reiterated that "where a defendant is denied due process because the prosecution violates a plea agreement, *there is manifest injustice as a matter of law*[.]" 76 Hawai'i at 414, 879 P.2d at 519 (internal quotation marks and citations omitted) (emphasis added).

 Similarly, in *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court

emphasized that, based on the breach alone, the case must be remanded in *"the interests of justice,"* regardless of prejudice, because, in the case of a plea agreement, the prosecutor's "promise *must be fulfilled."* (Emphases added.) The Court stated that it

> *need not reach the question whether the sentencing judge would or would not have been influenced* had he known all the details of the negotiations for the plea. He stated that the prosecutor's recommendation did not influence him and have no reason to doubt that. *Nevertheless, we conclude that the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case*[.]

*Id.* (emphases added.) Hence, according to the Supreme Court, the "interests of justice" *require* that appropriate relief be granted in the face of a breach of a plea agreement, regardless of whether the breach affected the sentencing decision. *See id.* It is the breach in and of itself that is the injustice. *See id.; see also State v. Waiau,* 60 Haw. 93, 97, 588 P.2d 412, 415 (1978) (stating that "the interests of justice require that appellant have a means of escape from the position in which he was improperly induced to place himself"); *Abbott,* 79 Hawai'i at 319, 901 P.2d at 1298 ("a sentence imposed after a hearing at which the State breaches its plea agreement with the defendant is illegal and must be set aside"); *People v. Sanders,* 191 Cal.App.3d 79, 87, 236 Cal.Rptr. 197 (Cal. App. 5 Dist.1987) (stating that "more is at stake in the context of a broken plea agreement than the liberty of the defendant or the length of his term. At stake is the honor of the government, public confidence in the fair administration of justice, and the efficient administration of justice." (Quotation marks, citations, and brackets omitted.)).

Under Hawai'i precedent, then, breaches of plea agreements provide appropriate bases for appellate review under the plain error standard, inasmuch as a breach "implicates" "due process," *Adams,* 76 Hawai'i at 414, 879 P.2d at 519, and the "interests of justice," *Santobello,* 404 U.S. at 262, 92 S.Ct. 495. Moreover, in this case, if the agreement was breached, Petitioner would have been prejudiced by the error, and his fundamental rights would have been affected. Therefore, Petitioner's failure to raise the issue at sentencing or by HRPP Rule 35 motion does not preclude our review of the alleged error under the plain error doctrine.

## V.

■ The ICA did correctly point out that "[w]hether [Respondent] breached the terms of a plea agreement is a question we would normally review de novo under the right/wrong standard of review." *Miller,* 2008 WL 4195877, at *1. However, the ICA failed to conduct such a review in this case because it concluded that Petitioner "did not preserve this issue for appeal." *Id.* Because plain error review is appropriate, we review the circumstances of the breach *de novo.*

## A.

Regarding whether the plea agreement was breached, Petitioner argues in his Application that "[Respondent] promised 'to take no position,'" but "[i]nstead of taking no position[,] ... [the prosecutor] argued quite eloquently against [Petitioner's] oral motion for DANCP" and thereby "clearly breached her plea agreement under the law, which affected [Petitioner's] substantial rights by influencing whether he would be granted a DANCP." In support, Petitioner argues that

> [t]he record is undisputed that the prosecutor agreed to "take no position" with respect to the issue of whether the [court] should grant [Petitioner's] oral motion for DANCP. *Yet, her sentencing statements directly undermined both her sentencing agreement and her agreement to "take no position" regarding [Petitioner's] oral motion for DANCP.* But the prosecutor, in her zeal to influence the [court] with respect to [Petitioner's] DANCP motion, *violated not only the letter of the plea agreement, but its spirit as well,* by asking the [court] to "follow the agreement that's been reached" while simultaneously argu-

ing that "this type of beating and brutality should not be accepted in our society." (Emphases added.)

## 1.

Petitioner looks to federal Third Circuit cases for instances of where a prosecutor breached a plea agreement after promising to "take no position" as to one of the issues at sentencing. According to Petitioner, "[i]n *United States v. Crusco*, 536 F.2d 21 (3d Cir.1976), the prosecutor promised to *take no position* on sentencing[,]" but at the sentencing hearing, emphasized the defendant's "'elevation in organized crime hierarchy'" and "'the danger to the community that this man has by being out on the street.'" (Quoting *id.* at 21, 23, 25.) (Emphasis added.) On appeal, the Third Circuit held that the prosecutor's actions were "a transparent effort to influence the severity of [the appellant's] sentence." 536 F.2d. at 26.

Similarly, Petitioner cites *Moscahlaidis*, wherein "the prosecutor vowed that he would '*not take a position* relative to whether or not a custodial sentence shall be imposed on [appellant] but ... will recommend to the sentencing [j]udge that if a custodial sentence is imposed on [appellant], it will not exceed one year.'" (Quoting 868 F.2d at 1358. (Ellipsis in original.)). (Emphasis added. (Some brackets in original and some added.)). However, "in its sentencing memorandum, the prosecution [made reference] to the defendant's 'moral bankruptcy,' ... 'demonic' efforts to preserve his 'fetid empire,' and stated that he was 'not just a white-collar criminal.'" (Quoting 868 F.2d at 1359.) In that case, the Third Circuit held "'that the statements made by the prosecutor which offered opinions and drew conclusions about appellant's character violated the terms of the plea agreement'" and "the prosecutor's 'comment about [appellant] not being just a white collar criminal' was taking [a] position relative to whether a custodial sentence be imposed and thus violated the plea agreement." (Quoting 868 F.2d at 1362–63. (Brackets in original.)). Petitioner argues that the circumstances of this case are similar to those in *Crusco* and *Moscahlaidis*, because "[i]n the instant case, the prosecutor

promised 'to take no position' with respect to [Petitioner's] motion for DANCP. However, like the prosecutors in *Crusco* and *Moschalaidis* [sic], the prosecutor here broke that promise."

## 2.

Additionally, Petitioner argued that "[Respondent] violated the plea agreement not to take any position with respect to [Petitioner's] oral motion for DANC plea by making statements that had no other purpose than to persuade the trial court to deny the DANC plea." To reiterate, he contended to the ICA that Respondent had violated the plea agreement through its comments that, among other things,

1) "this case was borderline strangulation[,"] which "should not be accepted in our society["];] and 2) *purportedly "clarified"* that an emergency room doctor had allegedly observed bruises on the complainant days later, even though a Maui Police Department officer had failed to observe any injuries at the time of the alleged incident. *[Respondent's] argument violated the plea agreement as a matter of law because the only aspect of the sentencing proceeding that was not agreed to by the parties was whether the trial court should grant or deny the DANC plea. Yet, instead of taking no position with respect to this issue, the prosecutor made numerous statements that appear to have been clearly intended to influence, and indeed, had the practical effect of influencing, the trial court's decision of whether to grant or deny the DANC plea.*

(Brackets omitted.) (Emphases added.)

As to Respondent's argument that it was only attempting to "clarify" the factual predicate for the charge after Petitioner denied such basis, Petitioner urged in his reply brief that this argument was "totally unfounded for three reasons." Those reasons were that

[f]irst, the record shows that [Respondent's] statements were made *even before* defense counsel had an opportunity to address the [court]. Second, [Petitioner] and [Respondent] had entered into a stipulation "as to a factual basis to support this

charge" earlier, prior to [Respondent's] statements. Third, [Petitioner] had not "actively denied" the factual basis of the charge.

(Emphasis in original.) Furthermore, Petitioner argued that even putting Respondent's allegedly clarifying statements aside, Respondent's "initial statements . . . were also in direct opposition to [Petitioner's] DANCP motion." According to Petitioner,

> [Respondent's] initial statements *addressed directly the two requisite findings under [HRS] § 853–1(a)(2) & (3),* that "defendant is not likely again to engage in a criminal course of conduct" and "the ends of justice and the welfare of society do not require the defendant shall presently suffer the penalty imposed by law" respectively.

(Emphasis added.) With respect to the finding required under HRS § 853–1(a)(2), Petitioner contended that

> [Respondent's] statements about [Petitioner], being 51 years-old, committing "borderline strangulation" upon his "significant loved one" by "elbow[ing]," "knee[ing]," "punch[ing]," and "chok[ing]" her, and "put[ting] his hand over her mouth" and "pillow . . . over her face" "because she wouldn't be quiet," which resulted in the complainant "actually fear[ing] for her life," *addressed whether [Petitioner] would likely engage in a criminal course of conduct again.*

(Emphasis added.) Similarly, with regard to the finding required under HRS § 853–1(a)(3), Petitioner maintained that "[Respondent's] statement that 'this type of beating and brutality should not be accepted in our society' addressed whether the ends of justice and the welfare of society require [Petitioner] being granted the DANCP."

### 3.

Respondent conceded in its answering brief on appeal that "[p]er [Petitioner's] request, [Respondent] agreed to take no position on the DANC." However, Respondent asserted that it "argued in favor of sentencing, *not* against a DANC[,]" (emphasis in original), and that it "made its remark about the brutality of the crime in *direct response*

to the court's question: *'Sentencing?'*" (Emphases in original). Respondent maintained that its comments went directly to the "statutory sentencing factors" in HRS § 706–606(1) (1993), "which states 'the court . . . *shall* consider the *nature and circumstances of the offense* and the *history* and *characteristics of the defendant.*'" (Emphases in original.)

Respondent asserted that, consequently, its comments that "[t]he victim is 51 years old" and "[s]o is the defendant" and that "[h]e doesn't have a prior criminal record[,]" went to "the nature and circumstances of the offense, as well as the history of the defendant." As for Respondent's statements that "you shouldn't be doing that to a significant loved one[, a]nd this type of beating and brutality should not be accepted in our society[,]" Respondent claims that those addressed the portion of HRS § 706–606(2)(a) that states that "the court . . . *shall* consider . . . the need for the sentence imposed . . . to *reflect the seriousness of the offense,* to promote *respect for the law,* and to provide *just punishment for the offense.*" (Emphases in original.)

Respondent further contended (1) that it "scrupulously avoided comment on [Petitioner's] DANC argument[,]" but "necessarily" had to "proffer the factual basis for [Petitioner's charge]"; (2) that Petitioner "denied an essential element" of the charge by noting that "when [Maui Police] Officer Katayama appeared at the scene, *there was no complaint of injuries*" (emphasis in original); and therefore (3) Respondent was "justified in clarifying the facts to the trial court when [Petitioner] actively *denied* the factual basis for his charge[,]" because, under *United States v. Maldonado,* "*even where the government enters a 'plea agreement to make certain recommendations,* the government has a duty to ensure that the court has complete and accurate information, enabling the court to impose an appropriate sentence,'" (quoting 215 F.3d 1046, 1052 (9th Cir.2000)) (emphases in original).

### B.

In concluding that the plea agreement was not violated, the ICA disregarded the well-

established law of this court and of prior decisions of the ICA itself. Whether plea agreements are subject to the protections of due process is governed by the due process clause in the Hawai'i Constitution and therefore by state decisional law. Petitioner aptly cites to this court's decision in *Adams* in support of his argument that the plea agreement was breached. In *Adams*, the petitioner had "agreed to plead no contest to one count of Medicaid fraud in violation of [HRS] § 346–43.5 (1985) in exchange for, *inter alia*, the State's promise to 'stand silent . . . and not oppose' his requests for a [DANC] plea and for no jail time." 76 Hawai'i at 409, 879 P.2d at 514.

In response to a request for "general input" from the Adult Probation Division (APD), the prosecutor had submitted a statement in which he averred, among other things,

that (1) [the petitioner] had been charged with just "twenty-one of the hundreds of false claims available"; (2) [the petitioner's] "sexual assaultive behavior" stemmed from his "extremely low opinion of women"; (3) [the petitioner] is "a danger to the community because of his propensity to claim that he renders medical services he is not qualified to perform and his overwhelming desire to generate bills that precludes any interest in patients to overcome their illnesses"; and (4) [the petitioner] falsely claimed to be destitute in order to have a defense attorney provided at taxpayer expense.

*Id.* at 410, 879 P.2d at 515. The prosecutor's statement "was attached to the APD's presentence report and forwarded to the court." *Id.*

This court addressed the standard for evaluating breaches of plea agreements as follows:

A plea agreement is essentially a contract entered into between the State and the defendant, in which the defendant agrees to plead guilty or no contest to a charge and to forego certain constitutional rights (including the right to trial) in exchange for which the State promises some form of leniency or cooperation in prosecution. Indeed, courts have often looked to contract

law analogies in determining the rights and obligations of the parties to a plea agreement. *However, because the plea negotiation process implicates constitutional considerations—including the fairness and voluntariness of the plea—we have recognized that resort to contract principles cannot solely be determinative of the rights and duties comprising the plea bargain.*

*Id.* at 412, 879 P.2d at 517 (citations omitted) (emphasis added). Applying those principles, this court concluded that the circuit court's findings, which "amount[ed] to a finding that . . . a promise" "that the State . . . would not communicate with the APD regarding the pre-sentence report . . . was not implied in the plea agreement" were "clearly erroneous." *Id.* It was reasoned that

[p]ursuant to the plea bargain, the State agreed to "*stand silent . . . and not oppose*" Adams's requests for DANC and for no jail time. *No parameters were placed on the State's obligation; i.e.,* the agreement did not provide that the State would stand silent only at the sentencing hearing. . . . Although it appears that the parties never explicitly considered the precise issue, it is far more reasonable to conclude that *the State's promise to "stand silent" on the matters of jail and DANC meant that the State would not take a position on the issues or make that position known to the court directly or indirectly.*

*Id.* (emphases added). Because "the State [had] clearly attempted 'to accomplish indirectly what it had promised not to do directly[,]' [and] the subject areas covered in the written statement parallel[ed] several important factors which a court considers in sentencing[,]" it was decided that "the circuit court erred in concluding that the State did not breach the plea agreement." *Id.* at 413–14, 879 P.2d at 518–19; *see also State v. Anderson,* 4 Haw.App. 102, 113, 661 P.2d 716, 723 (1983) (holding that although the State did not directly advise the court to reject the appellant's DAG motion, the State "breached its plea bargain not to urge the judge to impose a sentence other than a DAG plea" when it recommended an alternative sentence in the case that the judge decided

to deny the DAG motion and "defended the judge's decision to deny [the appellant's] motion for DAG plea and to confine him for a maximum of five years").

### C.

The facts of *Adams* are virtually indistinguishable from the facts of this case. Here, Respondent promised as a condition of the plea agreement to "take no position" on Petitioner's DANCP motion, similar to the prosecution's promise in *Adams* to "stand silent" and "not oppose" the DANCP plea. *Miller*, 2008 WL 4195877, at *1. As in *Adams*, "[n]o parameters were placed on [that] obligation." 76 Hawai'i at 412, 879 P.2d at 517 (emphasis added). Despite the obligation to "take no position," Respondent here "clearly attempted to accomplish indirectly what it had promised not to do directly," by emphasizing the "brutality" of Petitioner's crime and directly addressing issues pertinent to the DANCP motion such as Petitioner's criminal record and his age, and the closeness of Petitioner's relationship with the victim.

As in *Adams*, Respondent's comments "parallel[ed] several important factors which a court considers" in determining whether to grant a DANCP motion. In that connection, the prosecutor stated that although "[Petitioner] does not have a prior criminal record ... at 51 years old, you shouldn't be doing that to a significant loved one[, a]nd this type of beating and brutality should not be accepted in our society." Those comments manifestly invoked the pertinent issues for consideration under HRS § 853-1 of whether "defendant is not likely again to engage in a criminal course of conduct" and whether "the welfare of society [requires] that the defendant shall presently suffer the penalty[.]"

Furthermore, the prosecutor's reference to "a significant loved one" directly intimated that the charge was in effect that of Abuse of a Family or Household Member. The closeness of Petitioner's relationship to the complainant spoke directly to an element of the abuse charge, which the prosecution had promised to amend to Assault in the Third Degree in exchange for the plea. That the defendant held a family or household relationship with the victim is a requisite element of the abuse charge, whereas no such element exists under the assault charge.

The prosecutor therefore essentially argued an element of the abuse charge was present, in contravention of her agreement to drop that charge. *See Abbott*, 79 Hawai'i at 320, 901 P.2d at 1299 ("Even where the state technically complies with every term, a breach of the plea agreement may be found if the spirit of the agreement is breached."). To aggravate this breach, Abuse of a Family or Household Member is an offense that is excluded from DANCP eligibility under HRS § 853-4 (Supp.2008), whereas Assault in the Third Degree is not.[7] Thus, in raising an element of the abuse charge, the prosecutor argued in direct opposition to Petitioner's DANCP plea. Under the standard established in *Adams*, Respondent's comments directly violated Respondent's agreement to "take no position" on the DANCP motion, and therefore, the ICA was wrong in concurring with Respondent that "its comments were limited to sentencing and at no time did it take a position on [Petitioner's] DANC [m]otion." *See Miller*, 2008 WL 4195877, at *2.

### D.

 Instead, as Petitioner pointed out on appeal, "[t]he prosecutor's argument violated

---

7. HRS § 853-4 limits the applicability of HRS § 853-1, providing in pertinent part that

 [t]his chapter shall not apply when:

 (1) The offense charged involves the intentional, knowing, reckless, or negligent killing of another person;

 (2) The offense charged is:

 (A) A felony that involves the intentional, knowing, or reckless bodily injury, substantial bodily injury, or serious bodily injury of another person; or

 (B) A misdemeanor or petty misdemeanor that carries a mandatory minimum sentence and

 that involves the intentional, knowing, or reckless bodily injury, substantial bodily injury, or serious bodily injury of another person;

 . . . .

 (13) The offense charged is:

 . . . .

 (P) *Abuse of family or household members;*

 . . . .

 The court may adopt by rule other criteria in this area.

 (Emphasis added.)

the plea agreement as a matter of law because *the only aspect of the sentencing proceeding that was not agreed to by the parties was whether the trial court should grant or deny the DANC plea.*" (Emphasis added.) As set forth *supra*, it was agreed *before sentencing* that Petitioner would write a letter of apology to the complainant, be sentenced to one year of probation, serve 48 hours in jail, submit to a substance abuse assessment, participate in domestic violence intervention classes, and pay restitution to the complainant for the emergency visit stemming from this case. Furthermore, Respondent's argument that its comments were directed at "clarifying" Petitioner's denial of the factual predicate for the charge is without merit. Respondent's challenged comments, made by the prosecutor before defense counsel ever had a chance to speak, were more than sufficient to effectuate the breach. Under the circumstances of this case, the only reasonable explanation for Respondent's comments is that it was attempting to influence the court's decision as to whether to grant the DANCP plea after explicitly promising not to do so.

Hence, in this case, the terms of the agreement were not fulfilled and Petitioner was denied his due process rights; thus, there was "manifest injustice as a matter of law." *See Adams,* 76 Hawai'i at 414, 879 P.2d at 519. Accordingly, Petitioner's fundamental rights were indeed violated. *See id.* (noting that "[t]he fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State" (quoting *Santobello,* 404 U.S. at 267, 92 S.Ct. 495 (Douglas, J., concurring))). Because contravention of the plea agreement violated Petitioner's fundamental rights and resulted in manifest injustice, it was incumbent upon the ICA to recognize the violation as plain

error under HRPP Rule 52. *See Santobello,* 404 U.S. at 262, 92 S.Ct. 495 (concluding that the "interests of justice" require that the case be remanded for relief based on the breach, despite accepting the judge's assertion that "the prosecutor's recommendation did not influence him").

Moreover, the error in this case was not harmless beyond a reasonable doubt, as the court clearly took the prosecutor's comments into account in deciding to deny the DANCP motion. In orally denying the DANCP motion, the court appears to have relied particularly upon comments offered by the prosecution. For instance, the court stated that

> although I can find the defendant has had *no record for 51 years,* I guess the offense you decided to start off was one *too significant* for the court to ignore and to treat as something where the ends of justice and the *welfare of society* do not require that you presently suffer this penalty.

(Emphases added.) That statement mirrors the prosecutor's comments regarding the severity of the crime and that "[Petitioner] does not have a prior criminal record, but you know, at 51 years old, you shouldn't be doing that to a significant loved one. And this type of beating and brutality should not be accepted in our society."

## VI.

In sum, Petitioner's substantial rights were affected by the violation of the plea agreement. The ICA gravely erred in concluding that the error did not rise to the level of plain error. Accordingly, "[s]entencing by another judge is the proper remedy[.]" *Anderson,* 4 Haw.App. at 114, 661 P.2d at 724.[8]

8. Because Petitioner's case is remanded for re-sentencing, we need not address Petitioner's second argument, that "the ICA gravely erred by holding that [Petitioner] failed to show that the [court] had abused its discretion by denying [Petitioner's] DANCP motion due to an alleged 'categorical' policy of rejecting DANCP motions that involve offenders over the age of 21 and a charge of assault in the third degree." However, we note that such a policy, if in fact exercised categorically, potentially runs afoul of this court's holding in *State v. Martin. See* 56 Haw. 292, 294, 535 P.2d 127, 128 (1975) (holding, *inter alia,* that where a motion for a DANC plea was filed, the sentencing judge's "blind adherence to predetermined rigid conduct ... preclude[s] any enlightened and just resolve of the criminal charge placed against appellant"). Because this case is remanded to be reassigned to a different judge based on the breach of plea agreement, any potential prejudice stemming from the court's alleged policy is remedied, and thus, this issue need not be addressed further.

## VII.

The dissent, (1) based on *Puckett v. United States*, —— U.S. ——, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), "agree[s] with the ICA that [Petitioner] forfeited his claim for breached plea agreement[,]" dissenting opinion at 133, 223 P.3d at 198; (2) asserts that "the [ICA] would have had to notice this claim under the plain error standard *sua sponte*[,]" because Petitioner did not comply with Hawaiʻi Rules of Appellate Procedure ("HRAP") Rule 28(b) inasmuch as he (a) failed to assert that the trial court committed error, and (b) "failed to argue how the breached plea agreement affected [Petitioner's] substantial rights," *id.*; (3) maintains that recognition of plain error *sua sponte* requires that the error is *"extraordinary,"* *id.* at 143, 223 P.3d at 208 (emphasis in original); (4) argues that "[n]oticing [p]lain [e]rror [*s]ua* [*s]ponte*[,]" *id.* at 142, 223 P.3d at 207 is not appropriate because "[a] breached plea agreement does not in itself" constitute plain error, *id.* at 143, 223 P.3d at 208 and "[t]he federal cases reviewing breached plea agreements ... have determined that ... the defendant is not automatically prejudiced[,]" *id.* at 146, 223 P.3d at 211 and (5) declares (a) the agreement was not breached, *id.* at 148, 223 P.3d at 213 n. 13, and, (b) "the prosecution's statements" did not "affect[ Petitioner's] substantial rights," *see id.* at 149, 223 P.3d at 214. We respectfully reject the dissent's arguments for the reasons following.

## VIII.

The dissent first "write[s] to elaborate on the ICA's ruling that, because [Petitioner] did not raise the alleged breach at sentencing or in a [HRPP] Rule 35 motion, he cannot raise the issue for the first time on direct appeal." *Id.* at 133, 223 P.3d at 198 (citing *Miller*, 2008 WL 4195877, at *2).[9] However, the dissent concedes that, "in [Petitioner's] opening brief, [Petitioner] correctly explained that the breached plea agreement was to be reviewed for plain error." *Id.* We have reviewed the breach pursuant to the plain error standard of review. Therefore, the dis-

sent's first argument, from pages 133–35, 223 P.3d at 198-200, does not in any way contradict this court's opinion.

## IX.

Second, according to the dissent, Petitioner violated HRAP Rule 28(b), inasmuch as he did not (1) state the error committed by the court, (2) allege that the court's failure to *sua sponte* object to Respondent's breach of the plea agreement was error, or (3) explain how the court's error deprived the defendant of his substantial rights. *Id.* at 135-37, 223 P.3d at 200-02. We disagree inasmuch as Petitioner (1) set forth the violation of the plea agreement as a point of error, (2) there is no requirement that the court *sua sponte* object to a breach of a plea agreement, and (3) Petitioner argued at length that the breach affected his substantial rights, thereby warranting plain error review.

### A.

#### 1.

With respect to points of error, HRAP Rule 28(b)(4) requires

[a] *concise statement of the points of error* set forth in separately numbered paragraphs. Each point shall state: (i) *the alleged error committed by the court* or agency; (ii) *where in the record the alleged error occurred;* and (iii) *where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court* or agency.

(Emphases added.) Following the admonition in HRAP Rule 28(b)(4) to set out "[a] *concise statement* of the points of error[,]" (emphasis added), Petitioner succinctly stated in his points of error section fundamental errors that were committed, writing that (1) "[t]he judgment of conviction and sentence must be set aside and the matter remanded to another trial judge for resentencing because the prosecutor violated the plea agree-

---

**9.** Although we agree that Petitioner's claim should be reviewed for plain error, we reject the dissent's argument on this point inasmuch as it relies on the *federal* standard for reviewing breaches of plea agreements as set forth in *Puckett*, which this court has explicitly rejected. *See*

discussion *infra; see also Nichols*, 111 Hawaiʻi at 335, 141 P.3d at 982 (noting that "such discretion may exist in the federal courts," but "we have never employed the four-pronged [federal] plain error standard[,]" and "decline to do so").

ment[,]" and (2) "the trial court abused its discretion by failing to exercise any discretion due to an apparent policy of not granting DANC pleas in assault cases." [10] No further detail was required.

### 2.

■ The dissent's sole objection to Petitioner's presentation of error seems to be that he did not couch the breach in terms of an error on the part of the *court*. However, the dissent completely ignores that HRAP Rule 28(b)(4), by its plain language, cannot be intended to strictly apply to claims of plain error. In addition to requiring that the appellant state the "error committed by the court[,]" the rule requires that the appellant must also state *"where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court*[.]" HRAP Rule 28(b)(4) (emphasis added). Plain errors by definition were *not* "objected to" or "brought to the attention of the court," therefore, under the dissent's formulation, an appellant claiming plain error would start his or her appeal without any chance of complying with HRAP

Rule 28(b)(4), and thus would always be subject to the dissent's more rigid *sua sponte* standard. We decline to read the rules in that manner.[11]

### B.

### 1.

■ Generally, when a plea agreement is breached, the focus is not on any error of the sentencing authority, but on the prosecution. *See, e.g., United States v. Barnes*, 278 F.3d 644, 647 (6th Cir.2002) (holding that "the touchstone of *Santobello* is whether the *prosecution* met its commitment and *not whether the court would have adopted the government's recommendation*" (emphases added) (citation omitted)). Thus, courts have not questioned that the *government's* breach of a plea agreement constitutes an "error" cognizable by an appellate court. Every federal circuit that has reviewed an argument that a plea agreement was breached for plain error on the basis that it was not raised in the sentencing court, has viewed the government's breach as an "error" appropriate for plain error review.[12] In each of the cases

10. Petitioner's points of error section, in its entirety, is as follows:

1. *The judgment of conviction and sentence must be set aside and the matter remanded to another trial judge for resentencing because the prosecutor violated the plea agreement.* The prosecutor disregarded her agreement "not to take any position" with respect to [Petitioner's] oral motion for DANC plea when she argued, among others, that "this case was borderline strangulation," which "should not be accepted in our society," and then proceeded to purportedly "clarify" that an emergency room doctor had allegedly observed bruises on the complainant days later, even though a Maui Police Department officer had failed to note any injuries at the time of the alleged incident. 2. Even if the prosecutor did not breach the plea agreement, the trial court's denial of [Petitioner's] oral motion for DANC plea must be reversed and remanded to another trial judge for re-sentencing because *the trial court abused its discretion by failing to exercise any discretion due to an apparent policy of not granting DANC pleas in assault cases.*

(Citations omitted.) (Emphases added.)

11. According to the dissent any technical violation of HRAP Rule 28 requires the appellate court to review a plain error *"sua sponte"* as opposed to under the regular plain error standard. According to *Black's Law Dictionary,* "sua

sponte" means "[w]ithout prompting or suggestion" or "on its own motion." *Black's Law Dictionary* 1560 (9th ed.2009). It defies reality to suggest that where an appellant has manifestly set forth an error for review on appeal, that the appellate court is somehow raising the error "without prompting" or "on its own motion" merely because the appellant failed to comply with the appellate rules. While we do not condone rule violations, it is unreasonable to assert that any rule violation somehow renders appellate review *"sua sponte"*. In our view, *sua sponte* review of an error occurs where it is not raised by the appellant, but by the appellate court.

12. *See United States v. Rivera–Rodriguez,* 489 F.3d 48, 57 (1st Cir.2007) (reviewing the breach for plain error because "defendant h[ad] knowledge of conduct ostensibly amounting to a breach of [the] plea agreement, yet d[id] not bring that breach to the attention of the sentencing court" and concluding that the agreement was not breached because "[t]he plea agreement expressly provided that the government would recommend a sentence at the high-end of the guideline range" and that "is exactly what it did"); *United States v. McQueen,* 108 F.3d 64, 65, 66 (4th Cir.1997) (reviewing for plain error "because [defendant] raises this issue for the first time on appeal" and finding that "because viola-

cited in the preceding footnote, it was the prosecution, and not the court, that effectuated the breach, and yet, all of the federal circuit courts recognized that the breach should be considered pursuant to plain error review. For example, in *Barnes,* the Sixth Circuit did not hesitate to notice the breach as plain error, while at the same time emphasizing that the error did not reflect on the circuit court judge. 278 F.3d at 647 ("We emphasize that this is in no sense to question the fairness of the sentencing judge; *the fault here rests on the prosecutor, not on the sentencing judge.*" (Emphasis added.) (Citations omitted.)); *see also United States v. Gonczy,* 357 F.3d 50, 52 n. 1 (1st Cir.2004) (reviewing for plain error despite noting that "[a] breach of a plea agreement is deemed a

*violation of that agreement by the government, not by the sentencing judge*" (emphasis added)).

2.

Similarly, the federal circuits that have opted to exercise plenary review over breaches that were not raised in the sentencing court also have not questioned that a plea breach on the part of the government is a cognizable error appropriate for appellate review.[13] Most recently, in *Puckett,* a case relied upon by the dissent, the United States Supreme Court, like all of the federal circuits, assumed in its opinion that the breach was an error reviewable by an appellate court, despite the fact that the breach was

tions of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government, we hold that the [g]overnment's breach constituted plain error"); *United States v. Brown,* 328 F.3d 787, 789, 791 (5th Cir.2003) (reviewing defendant's claim of breach of plea agreement for plain error "[b]ecause [defendant] made no objections concerning his plea" and upon reviewing the prosecutor's contested statements, concluding that "no breach occurred"); *United States v. Swanberg,* 370 F.3d 622, 627 (6th Cir.2004) (despite government's contention that defendant "has forfeited this argument on appeal" because he "did not argue that the plea agreement had been breached" to the sentencing court, holding "that forfeiture ... does not extinguish an error under Rule 52(b)" and therefore reviewing the breach under plain error review, because "[t]his court's decisions ... have consistently applied plain-error review where a defendant fails to claim during sentencing that the government has breached the plea agreement"); *United States v. Salazar,* 453 F.3d 911, 913, 915 (7th Cir.2006) (reviewing the breach for plain error because defendant made the argument for the first time on appeal, and in addressing "[t]he first step of our analysis[, which] is to consider whether the government did in fact breach its plea agreement[,]" concluding that the agreement was not breached); *United States v. Jensen,* 423 F.3d 851, 854–55 (8th Cir.2005) (reviewing the breach and concluding that the agreement was breached by the government under the *de novo* standard of review, but concluding that, "[b]ecause [defendant] failed to allege a breach at sentencing, [the court] is limited to reviewing his now-raised challenge for plain error" and determining that defendant did not meet all prongs of the test because he failed to demonstrate prejudice); *United States v. Can-*

*nel,* 517 F.3d 1172, 1176–77 (9th Cir.2008) (reviewing for plain error because defendant "failed to claim a breach of the plea agreement by the government at the sentencing hearing" and, after reviewing defendant's arguments and the facts surrounding the alleged breach, concluding that the government did not breach the agreement); *United States v. Thayer,* 204 F.3d 1352, 1356 (11th Cir.2000) (reviewing defendant's claim of breach of plea agreement for plain error because defendant failed to object at trial, and concluding that because defendant "never argue[d] that the sentence imposed is unfair ... the breach of plea agreement does not rise to the level of unjustly affecting a substantial right of the defendant").

**13.** *See United States v. Griffin,* 510 F.3d 354, 360, 366–67 (2d Cir.2007) (holding that "[t]he defendant need not demonstrate that any *error as to the government's compliance* with his plea agreement satisfies plain error review," and, despite determining no error on the part of the court, vacating and remanding for resentencing, because "[w]here the sentencing court has sentenced in accordance with a position improperly advocated, while claiming not to have been influenced by the improper advocacy, a reviewing court can do no more than speculate as to whether the judge was in fact influenced, even unconsciously" (emphasis added)); *United States v. Altamirano–Quintero,* 511 F.3d 1087, 1094 (10th Cir.2007) (stating that, "where a defendant fails to object to the *Government's breaching a plea agreement* at the time the breach occurs, *this court still reviews the terms of the plea agreement de novo*" (emphases added)); *United States v. Hodge,* 412 F.3d 479, 485, 487 (although assuming the absence of a proper objection in the sentencing court, "remand[ing] for the [d]istrict [c]ourt to determine whether to grant specific performance or allow withdrawal of the guilty plea" because *"the government breached its agreement"* (emphasis added)).

the fault of the prosecution and not the court. *See* —— U.S. at ——, 129 S.Ct. at 1428 (concluding that the "plain-error test applies to a forfeited claim, like Puckett's that the *Government failed to meet its obligations under a plea agreement*" (emphasis added)).[14]

Like the federal courts, neither this court nor the ICA has ever declined to review a breach of a plea agreement on the basis that the government's breach does not count as a "point of error." *See, e.g., State v. Chincio,* 60 Haw. 104, 105, 588 P.2d 408, 409 (1978) (addressing the breach and stating that "*[a]ppellant has presented the point on this appeal* that by requesting the extended term sentencing hearing *the prosecuting attorney breached the plea agreement* and entitled appellant to withdraw his guilty plea" (emphases added)); *Waiau,* 60 Haw. at 97–98, 588 P.2d at 415–16 (concluding that a breach occurred and "remand[ing] for sentencing by another judge" without stating that the court committed any error, but only that "the plea bargain was breached and we must consider the remedy available to appellant"); *State v. Schaefer,* 117 Hawaiʻi 490, 501, 184 P.3d 805, 816 (App.2008) (ordering that, "[o]n remand, the district court shall" "determin[e] the scope of the parties' plea agreements and whether the Partial [pre-sentence investigations (PSIs)] were a material breach of the plea agreements" although there is no indication that the appellant alleged any error on the part of the court in having failed to do so); *Abbott,* 79 Hawaiʻi at 320, 901 P.2d at 1299 (referring to the breach as the "error" on appeal).[15]

### C.

The dissent concedes that Petitioner "(1) set forth [the plain error] standard . . . and (2) claimed that the ICA should consider this issue 'even though raised for the first time on appeal[.]' " Dissenting opinion at 135, 223 P.3d at 200. Inexplicably, however, the dissent dismisses Petitioner's actions as providing "mere 'notice' to the prosecution[,]" which "does not satisfy the . . . requirement that each point of error state the error committed by the court[.]" *Id.* But the dissent fails to elaborate as to what is the legal significance of "mere notice," why "mere notice" does not satisfy HRAP Rule 28(b), or why Petitioner's express discussion of plain error served only to provide "notice" as opposed to actually raising the issue, other than to state that "HRAP Rule 28(b)(4) . . . require[s] . . . a statement as to 'the alleged error committed by the court[,]' " rather than "mere notice." *Id.* at 136, 223 P.3d at 201 n. 3.

Because the *breach* was the "point of error" raised by Petitioner on appeal, it is difficult to discern any cogent basis for the dissent's position. Under the circumstances, Petitioner's argument cannot be reasonably characterized as giving "mere notice." His "Point 1" in his points of error set forth the breach as the error, contrary to the dissent's statement that he did "not satisfy HRAP

**14.** The dissent maintains that we "obfuscate the points raised in the dissenting opinion" by asserting that *federal* courts have recognized that a breach is an "error" cognizable by appellate courts, despite a lack of any fault attributable to the sentencing judge, *see* dissenting opinion at 136, 223 P.3d at 201, and argues in opposition that "the appellants in the cited federal cases were not required to follow HRAP Rule 28(b)(4)[,]" *id.* at 136, 223 P.3d at 201. To the contrary, this is a correct reflection of the case law.

Additionally, reference to federal cases for further guidance on this point lend support to the proposition that a breach of plea agreement is an "error" appropriate for consideration on appellate review, and to the proposition that breaches by their nature do not involve any "error" on the part of the court.

**15.** The dissent maintains that the foregoing cases "do not quote to the appellants' points of error

or otherwise indicate that the appellants in those cases failed to cite to a court's error in compliance with HRAP Rule 28(b)(4)[,]" and, therefore, "[t]hese cases do not permit this court to disregard the requirements of HRAP Rule 28(b)(4)." Dissenting opinion at 136, 223 P.3d at 201 n. 4. First, this opinion does not "permit" courts to "disregard" HRAP Rule 28(b)(4), but only that it should be construed in a reasonable manner under the circumstance of this case so as not to subject a whole category of potential constitutional errors to heightened scrutiny. Second, this argument seems to rest on the dissent's view that the appellant in the points of error section should distort reality and characterize an error that is actually the prosecutor's as one on the part of the court, and that, had the appellants in the foregoing cases done so, no violation would have occurred. We reject such an unreasonable application of the rules.

Rule 28(b)(4)'s requirement that *the point state the error." Id.* (emphasis added).

### D.

Both Respondent and the ICA recognized that Petitioner's brief raised (1) the breach as an error (2) to be reviewed in accordance with HRAP Rule 28. Respondent did not challenge Petitioner's plain error argument as having been raised in violation of HRAP Rule 28(b)(4). Rather, Respondent *replied* directly to Petitioner's arguments. Respondent devoted almost the entirety of its brief to addressing the breach and the plain error standard, arguing at length that (1) "the extraordinary measure of plain error notice is not warranted," (formatting altered), and (2) "[Respondent] fulfilled the plea agreement when it took no position on [Petitioner's] motion for a DANC[,]" (formatting altered).

Similarly, the ICA did not indicate that Petitioner violated HRAP Rule 28(b)(4), as it would be expected to do and has done so in the past when a violation of the rule took place.[16] Rather, like Respondent, the ICA addressed Petitioner's breach and plain error arguments, stating, *inter alia,* that "[o]n appeal, [Petitioner] *raises two points of error:* (1) [Respondent] *violated the terms of the plea agreement*[,] . . . and (2) the [ ] court abused its discretion in denying [Petitioner's] DANC Motion." *Miller,* 2008 WL 4195877, at *1. The ICA further stated that, "[o]n appeal, *[Petitioner] raises,* for the first time, *the issue of breach of the plea agreement*[,]" *id.* at *2 (emphases added), and, *"[a]s to plain error review,* we cannot . . . conclude there was error[,]" *id.* at *3 (citations and internal quotation marks omitted) (emphasis added). Respondent and the ICA recognized there was no violation of HRAP Rule 28 by Petitioner.

### E.

The dissent's argument that Petitioner violated HRAP Rule 28 because he "raised as a point of error that '[t]he prosecutor violated the plea agreement,' but it did not state 'the alleged error committed *by the court or agency,'* as required by HRAP Rule 28(b)(4)[,]" dissenting opinion at 135, 223 P.3d at 200 (emphasis in original), is simply wrong. As stated above, it appears that certain provisions of HRAP Rule 28(b)(4) are not applicable to Petitioner's circumstances, and thus, he did not violate the requirements of that rule to the extent that they are simply inapplicable. First, as stated *supra,* an appellant raising plain error will *never* be able to strictly comply with HRAP Rule 28(b)(4) because, by definition, that error was not raised in the trial court, and thus, the appellant will always be unable to point to where in the record the error was objected to, as required under the rule.

Second, with regard to breached plea agreements, there is no precedent suggesting that a sentencing court is obligated to "object" when the prosecution violates a plea agreement or that such an act on the part of the court would serve any purpose, and the dissent cites none. It would not undo the breach, nor could it undo the impact of the breaching statements on the court. *Cf. Gonczy,* 357 F.3d at 52 n. 1 (stating that "[a] breach of a plea agreement is deemed a *violation of that agreement by the government, not by the sentencing judge"* (emphasis added)); *Barnes,* 278 F.3d at 647 (emphasizing "that this is in no sense to question the fairness of the sentencing judge; *the fault here rests on the prosecutor, not on the sentencing judge"* (emphasis added) (citations omitted)).

To the contrary, the dissent would require appellants to contrive an argument that the

---

16. *Cf. Weidenbach v. Koolau Agr. Co., Ltd.,* No. 24315, 2009 WL 537098, at *1 n. 3 (Haw.App. March 3, 2009) (mem.) (noting that "[appellant's] opening brief fail[ed] to comply with . . . [HRAP Rule] 28(b)(4) by failing to state in the points of error where in the record the error occurred and a quotation of the finding or conclusion urged as error" and warning "counsel on the opening brief . . . that future noncompliance with HRAP Rule 28 may result in sanctions against them"); *Suzuki v. State,* 119 Hawai'i 288, 303, 196 P.3d 290, 305 (App.2008) (noting that "[appellant] did not identify the circuit court's grant of summary judgment on her claims for negligence, negligent hiring and retention, and infliction of emotional distress in her points of error in her brief as required by HRAP Rule 28(b)(4)" and therefore concluding that appellant "waived any challenge to the circuit court's grant of summary judgment on these claims").

court committed error, even where the error "was technically the 'fault' of the prosecution[.]" Dissenting opinion at 137, 223 P.3d at 202. In that connection, the dissent relies on *State v. Merino*, arguing that the appellant there "complied with HRAP Rule 28(b)(4) by stating the court's error" where he "pointed out the *circuit court's* error 'in *allowing him to plead no contest*' where 'the complaint charging him with criminal conspiracy was fatally defective.' " *Id.* (quoting 81 Hawai'i 198, 201, 915 P.2d 672, 675 (1996)) (first emphasis in original) (second emphasis added). Based on *Merino*, the dissent posits that, "[s]imilarly, here, where the prosecution's breach of the plea agreement may have been the root of the court's error, [Petitioner] was required to state *the court's alleged error.*" *Id.* (emphasis added).

 However, the issue in *Merino* was whether the circuit court abused its discretion in accepting the appellant's no contest plea. As this court stated, "[t]he trial court is vested with wide discretion to accept or refuse a nolo contendere plea, *and the acceptance or refusal of a no contest plea is therefore reviewed for abuse of that discretion.*" *Merino*, 81 Hawai'i at 211, 915 P.2d at 685 (quotation marks, brackets, and citation omitted) (emphasis added). Thus, a trial court's acceptance or refusal of a no contest plea, if it represents an abuse of discretion, could properly be considered *court error.* On the contrary, a court has no obligation to *sua sponte* object to a breach, and thus, any failure to do so on the part of the court cannot be considered court error.[17]

What the dissent ignores is that, in the case of a breached plea agreement that is not objected to, as in this case, there is no "alleged error" on the part of the court, and to force the appellant to conjure one up is unreasonable. In the case of a breached plea agreement, as opposed to other types of error, the fault lies solely with the prosecution. Hence, HRAP Rule 28(b)(4) is not applicable to breaches raised as plain error to the ex-

tent it requires (1) that the error be one "by the court" and (2) that the appellant state "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court[.]" Appellant thus complied with HRAP Rule 28(b)(4) to the extent possible under the specific circumstances of his case.

### F.

Moreover, HRPP Rule 52(b) does not require that a plain error clearly must be an error by the court, as the dissent maintains. HRPP Rule 52(b) states that "*[p]lain errors or defects affecting substantial rights may be noticed* although they were not brought to the attention of the court[,]" (emphases added). Similarly, HRAP Rule 28(b)(4) only states that "the appellate court, at its option, *may notice a plain error* not presented." (Emphasis added.) Thus, neither rule limits *plain error* to those errors committed "by the court[,]" thereby lending support to the rational conclusion that the precise strictures of HRAP Rule 28(b)(4)(i)-(iii) may not always be directly applicable to *plain* errors raised for the first time on appeal.

### G.

 Finally, it would appear fundamental that a court briefing rule such as HRAP Rule 28 cannot contravene a constitutional mandate such as the due process guarantee in the breach of plea context. *Cf. State v. Calbero*, 71 Haw. 115, 124, 785 P.2d 157, 161 (1989) ("[Hawai'i Rules of Evidence (HRE) ] 412 cannot override the constitutional rights of the accused."). To foreclose appellate review of plea agreement breaches because they are not errors committed "by the court" would be fundamentally unfair to defendants who are induced into plea agreements based on unkept promises, and thus would leave an entire category of due process violations unremedied, as both federal and state decisions apparently recognize.

---

17. Notably, the dissent asserts that the appellant in *Merino* "complied with HRAP Rule 28(b)(4)" although there is no indication that he stated "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court" as required by HRAP Rule 28(b)(4)(iii). Indeed, the appellant could not have done so, inasmuch as he did not raise the error in the trial court. However, this court did not fault appellant for having committed a HRAP Rule 28(b)(4) violation, and, apparently, neither does the dissent.

### H.

Based on the foregoing, the dissent's assertion that the majority "rewrites" HRAP Rule 28, dissenting opinion at 136, 223 P.3d at 201, is without basis. In that connection, the dissent asserts that, "[u]nder the majority's ruling, [ ] an opening brief will be reviewed where its point of error section states the alleged error *committed by any party* as long as fault may be attributed to that party." *Id.* at 137, 223 P.3d at 202 (emphasis in original). Contrary to the dissent's assertion, this opinion merely holds that, under the specific circumstances of this case, the requirements in HRAP Rule 28(b)(4)(ii) and (iii) that the appellant state (1) the error "committed by the court," and (2) where the error was "objected to" or "brought to the attention of the court," are inapplicable with regard to Petitioner.

Hence, we are by no means of the opinion that "Hawai'i appellate courts are now *required* to review an error committed by *any party*—the prosecution or defendant in a criminal case, or the plaintiff, defendant, [or] co-party in a *civil case*—if that party is responsible for the 'error.'" Dissenting opinion at 137, 223 P.3d at 202 (emphases in original). First, our decision is expressly based on the fact that the error in this case is *plain error,* and thus, there is no "require[ment]" that an appellate court "*must* rule" on a claim that a party erred even if it is the "*first* objection[,]" *id.* (emphases in original). Instead, where a claim is not raised, the plain error standard of review applies. Second, the ruling herein is specifically based on the fact that a prosecutorial breach, not objected to at the trial court, is different, inasmuch as, in such cases, there is no error attributable to the court that could be raised as such on appeal. Third, this opinion in no way suggests that claims of error on the part of a *defendant* will now be cognizable. Finally, because the decision to review pursuant to plain error in this case rests substantially on the fact that the error was a constitutional one based on a criminal defendant's right to due process, it is plainly inappropriate to suggest that the holding herein in any way extends to civil proceedings.

The dissent further states that this opinion requires that "the appellate court *first* determin[e] whether the appellant's objection has merit, although that role is reserved for the trial court." *Id.* (emphasis in original). The dissent merely reiterates what occurs when an appellate court reviews for plain error. As discussed herein, the plain error rules, HRPP Rule 52(b) and HRAP Rule 28(b)(4), recognize that the role of initially adjudging the merit of a defendant's claim is typically a role "reserved for the trial court." However, those rules allow the appellate court the discretion to review, even in the first instance, where substantial rights are affected.

### X.

Next, the dissent argues Petitioner "did not show how he, specifically, suffered prejudice from the alleged breach of the plea agreement." Dissenting opinion at 137, 223 P.3d at 202.

### A.

But Petitioner in his opening brief cited HRPP Rule 52(b), as well as case law, in arguing that the breach "affected substantial rights," "[b]ecause the defendant relinquishes his constitutional right to a trial by entering into a plea agreement, the *integrity of our judicial system* requires that the government strictly comply with its obligations under a plea agreement[,]" (citations, quotation marks, and brackets omitted) (emphasis added), "the *interests of justice* require that appellant have a means of escape from the position in which he was improperly induced to place himself in this case[,]" (citation omitted) (emphasis added), and "the prosecutor made numerous statements that appear to have been clearly *intended to influence, and indeed, had the practical effect of influencing, the trial court's decision*[,]" (emphasis added). Petitioner specifically noted that the Ninth Circuit has reviewed "an alleged breach of a plea agreement raised for the first time on appeal under the 'plain error doctrine.'" (Citing *Maldonado,* 215 F.3d at 1051.) Thus, contrary to the dissent, Petitioner "present[ed] *arguments* that satisfy the plain error standard."[18] Dissenting

---

18. In his standard of review section, Petitioner recounted the plain error standard, which in-

opinion at 137, 223 P.3d at 208 n. 8 (emphasis added).

## B.

Nevertheless, the dissent maintains that "the majority is required to inject its own analysis as to the effect of the prosecution's breach of the plea agreement." *Id.* at 137, 223 P.3d at 202. To the contrary, we agree with Petitioner that the error was not harmless because he "relinquishe[d] his constitutional right[s]" based on a false inducement, Respondent's actions in breaching the agreement adversely impacted "the integrity of our judicial system" and "the interests of justice[,]" and Respondent's statements were "intended to influence, and indeed, had the practical effect of influencing, the trial court's decision."

As to how the breaching statements interacted with the court's decision, Petitioner quoted the relevant portions of the transcript, adding emphasis to those statements of the prosecutor and the court which bore a close relationship both to each other, and to the DANCP, such as the prosecutor's com-

ment that "*this type of beating and brutality should not be accepted in our society* [,]" (emphasis in original), and the court's related conclusion that "*society does demand that [Petitioner] . . . should not be granted a deferred acceptance [of] your plea* [,]" (emphasis in original).[19] Thus, this court's conclusion stems *directly* from arguments presented by Petitioner in his opening brief.

## C.

Furthermore, neither Respondent nor the ICA had any trouble discerning Petitioner's argument, as neither asserted that Petitioner failed to argue that substantial rights were affected. Specifically, Respondent contended that "[Petitioner] failed to [avail himself of other options], yet *complains that plain error notice should be taken for a violation of his 'substantial rights.'*" (Emphasis added.) Respondent continued to argue why Petitioner's substantial rights were not affected, *never stating that Petitioner had failed to argue that point, or even that his argument was inadequate.* Thus, the dissent's argument that "the prosecution [could not] rebut [Petitioner's] arguments[,]" dissenting opinion at 143, 223 P.3d at 208 n. 8, is not true.[20]

cludes errors "that *affected substantial rights*" and "that seriously affected the fairness, *integrity,* or public reputation *of the judicial proceedings.*" (Citations omitted.) (Emphases added.) Subsequently, in the first paragraph of his argument section, Petitioner argued that "[b]ecause the defendant *relinquishes his constitutional right* to a trial by entering into a plea agreement," (citing *INS v. St. Cyr,* 533 U.S. 289, 321–22, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001)), "*'[t]he integrity of our judicial system* requires that the government strictly comply with its obligations under a plea agreement[,]'*" (quoting *United States v. Allen,* 434 F.3d 1166, 1174 (9th Cir.2006) (quoting *United States v. Mondragon,* 228 F.3d 978, 981 (9th Cir.2000))).

Petitioner went on to devote almost two pages of his six-page argument section, arguing that, where "the terms of a plea agreement [ ] serve as the inducement for entering a plea," (quoting *Adams,* 76 Hawai'i at 414, 879 P.2d at 519), the breach *is a denial of constitutional rights* and has an adverse impact on the administration of justice. In that vein, Petitioner stated that when entering a plea, the defendant agrees to "*forego certain constitutional rights*[,]" and that "the plea negotiation process *implicates constitutional considerations*[.]" (Quoting *Adams,* 76 Hawai'i at 412, 879 P.2d at 517.) (Emphases added.) He further maintained that "*due process requires* that the State uphold its end of the bargain." (Quoting *Adams,* 76 Hawai'i at 414, 879 P.2d at 519.) (Emphasis added.) Petitioner proceeded to discuss *Santobello,* noting that a plea agreement

induced by a prosecutorial promise "*must be fulfilled.*" (Quoting 404 U.S. at 262, 92 S.Ct. 495.) (Emphasis added.) Moreover, Petitioner quoted from *Waiau,* 60 Haw. at 97, 588 P.2d at 415, explaining that "*the interests of justice require* that appellant have a means of escape from the position in which he was improperly induced to place himself in this case." (Emphasis added.)

Based on the record, we fail to see any merit in the dissent's position.

19. Petitioner could not have done any more to emphasize that statements made by the prosecutor were reflected in the court's decision and to argue that the prosecutor's statements were "intended to influence" and did influence the judge. As described *supra,* it appears that the breaching statements quoted by Petitioner were (1) relevant to DANCP factors and (2) included in the court's analysis.

20. That statement is plainly incorrect inasmuch as Respondent "rebut[ted]" Petitioner's substantial rights argument at length in its answering brief. Respondent's theory as to why substantial rights were not affected was that "where multiple avenues of recourse existed and [Petitioner] failed to take them, [Petitioner's] substantial rights were not violated[,]" and "[t]he ends of justice do not require plain error notice where the parties stood ready for trial, a jury awaited, and [Petitioner] chose to be silent . . . against a perceived breach[.]"

Similarly, the ICA concluded that "based on the record before us" there was not error that denied "fundamental rights." *Miller,* 2008 WL 4195877, at *2. The ICA did not state that Petitioner had inadequately argued plain error or that his substantial rights were affected. Therefore, the plain error issue, including the impact on substantial rights, was fully briefed, as the ICA recognized by addressing it.

### XI.

■ The dissent proceeds to argue at length that this court should establish a new, heightened "extraordinary" standard where plain error review is exercised *sua sponte.* Dissenting opinion at 138, 223 P.3d at 203.

### A.

First, the dissent maintains that "[i]n his [A]pplication, [Petitioner] seeks review of the ICA's ruling, apparently under a *de novo* standard," *id.* at 137, 223 P.3d at 202, yet the dissent immediately contradicts that point, conceding that "[Petitioner] recited case law demonstrating that a breached plea agreement has affected other defendants' *substantial rights,*"[21] *id.,* and "claim[ed] generally that the breach *'affected [his] substantial rights* by influencing whether he would be granted a DANCP[.]'" *Id.* at 137, 223 P.3d at 202 (emphases added). Although Petitioner did point out that "two federal circuit[s] ... review ... breaches of plea agreements *de novo,*" he also argued "that every federal circuit has at least adopted the view that alleged breaches of plea agreements may be raised for the first time on appeal ... *under the 'plain error' standard of review.*" (Emphasis added.) Petitioner further asserted that the breach "affected [Petitioner's] sub-

stantial rights by influencing whether he would be granted a DANCP[.]" Hence, we are not "required to inject [our] own analysis as to the effect of the prosecution's breach of the plea agreement[,]" dissenting opinion at 137, 223 P.3d at 202, as the dissent charges.

### B.

The dissent asserts "that the 'appellate court's discretion to address plain error is *always* to be exercised *sparingly.*'" *Id.* at 138, 223 P.3d at 203 (quoting *Okada Trucking, Co. v. Bd. of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002)) (emphases in original).

### 1.

*State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 676 (1988), was the first case to use the term "sparingly," stating that "[t]hough mindful that this power to deal with error is one to be exercised sparingly and with caution because the rule represents a departure from a pre-supposition of the adversary system, we are convinced the case at bar calls for its invocation." (Citation omitted.) Thus, *Fox* recognized that HRPP Rule 52(b) does not represent the normal procedure in the adversary system, but nonetheless gives the appellate courts discretion to notice such errors, which this court deemed was appropriate in that case. In explicating the plain error rule, it was stated that

[o]ur prior expressions of an appellate court's power to notice plain error in criminal cases have been ... succinct. We have said little more in this regard than HRPP [Rule] 52(b) itself, that is: *appellate courts "have the power, sua sponte, to notice plain errors or defects in the record affecting substantial rights though they were*

---

21. The dissent complains that Petitioner "did not show how he, specifically, suffered prejudice from the alleged breach of the plea agreement, *i.e., evidence that the court would have granted the DANCP motion if not for the breach.*" Dissenting opinion at 137, 223 P.3d at 202 (emphasis added). However, as the dissent later in its opinion apparently concedes, neither the rules nor our case law requires that Petitioner provide "evidence" that the result *"would have"* been different. Indeed, as explained more fully *infra,* in most cases it is virtually impossible to speculate

as to what the precise impact on the sentencing judge might have been or how the court would have decided absent the breaching statements. Instead, under our law, Petitioner is required to show only that there is "a *reasonable possibility* that [the] error *might have contributed* to conviction." *Nichols,* 111 Hawai'i at 334, 141 P.3d at 981 (citation omitted) (emphases added). Thus, the dissent requires that Petitioner demonstrate what our law recognizes cannot reasonably be shown, *i.e.,* "that the court *would have* granted the DANCP motion[.]" Dissenting opinion at 137, 223 P.3d at 202 (emphasis added).

not properly brought to the attention of the trial judge or raised on appeal." . . .

We have not endeavored to place a gloss on the rule, as other courts have, by further defining the kind of error for which we would reverse under Rule 52(b). In our view, the decision to take notice of plain error *must turn on the facts of the particular case to correct errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings.* Though mindful that this power to deal with error is one to be exercised *sparingly* and with caution because the rule represents a departure from a presupposition of the adversary system, we are convinced the case at bar calls for its invocation.

*Id.* (quotation marks, citations, footnote, and brackets omitted) (emphases added).

This court's elaboration of the plain error standard in *Fox* is instructive. First, it was verified that the court's power to notice plain errors is one that may be exercised "*sua sponte,*" and "even when not presented," without any indication that such power is in any way distinct from the power to notice plain error generally. *See id.* Second, the term "sparingly" as used in *Fox* indicates a recognition that the rules favor the adversary process, while still allowing the granting of plain error review. Third, *Fox* directed that the "kind of error" appropriate for plain error review under HRPP Rule 52(b) is one to be determined on the specific facts of the case where the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *See id.* Fourth, *Fox* advised against "plac[ing] a gloss on the rule." *See id.*

The error in *Fox* was "admission of evidence grounded on statements made in the course of plea discussions" as prohibited by HRE Rule 410(4). *Id.* Without stating anything as to what impact such statements may have had on the jury, this court held that the admission of the statements "seriously affected the fairness of the proceedings." *Id.* This court explained that

[w]ere we to approve their use to discredit the defendant's testimony in court, *we would not be furthering the purpose of [HRE Rule] 410 to promote the disposi-*

*tion of criminal cases by compromise.* We would be standing idly by though clear error affecting substantial rights of the defendant was committed. Under the circumstances, *an invocation of the plain error rule would be the better part of discretion.*

*Id.* (emphases added). Thus, in *Fox*, promoting the purpose of the rule was enough. In this case, where the error is of constitutional magnitude, we think the rationale of *Fox* is even more compelling, and, therefore, "invocation of the plain error rule would be the better part of discretion." *See id.*

### 2.

The dissent entirely misconstrues *Fox*, asserting that "the *Fox* decision did not merely restate HRPP Rule 52(b)—rather, it added a crucial element to this rule[,]" *i.e.*, that "appellate courts 'have the *power, sua sponte,* to notice plain errors[,]' . . . and subsequently *limited* this power" as one to be used "*sparingly* and *with caution*[.]" Dissenting opinion at 139, 223 P.3d at 204 (quoting *Fox*, 70 Haw. at 56, 760 P.2d at 676) (emphases in original). To the contrary, although we agree that *Fox* did more than restate the plain error rule, inasmuch as, as indicated above, it explicated HRPP Rule 52(b), it certainly did not "*add* [ ]" any "crucial element[,]" because *both* HRPP Rule 52(b) and HRAP Rule 28(b)(4), by their plain language, already allow for *sua sponte* review. In fact, neither rule indicates any requirement that the appellant raise plain error, but instead, they provide that "[p]lain errors . . . affecting substantial rights *may be noticed* although they were not brought to the attention of the court[,]" HRPP Rule 52(b) (emphasis added), and "the appellate court, *at its option, may notice a plain error* not presented[,]" HRAP Rule 28(b)(4) (emphasis added). Thus, it is illogical to assert that *Fox* "add[ed]" an element that was already encompassed within the rule. It follows then, that *Fox* did not "limit" the power already clearly granted by the rules, but instead recognized that noticing plain error *sua sponte*, just like noticing plain error that has been raised, is a power "to be exercised sparingly and with caution because[,]" as the rules manifestly recognize,

"the rule represents a departure from the presupposition of the adversary system." *Fox*, 70 Haw. at 56, 760 P.2d at 676.

### 3.

▉ Consequently, the term "sparingly" must be viewed in light of the rules, and also in the context of the cases in which it has been used. *See* dissenting opinion at 138, 223 P.3d at 203 n. 5.[22] The cases that have followed *Fox* in employing the term "sparingly" have qualified that term by recognizing that, "where plain error has been committed and *substantial rights have been affected thereby, the error may be noticed*[.]" *See, e.g. State v. Kaiama*, 81 Hawai'i 15, 25, 911 P.2d 735, 745 (1996) (recognizing that "[t]his court's power to deal with plain error is one to be exercised sparingly[,]" but "*[n]evertheless, where plain error has been committed and substantial rights have been affected thereby, the error may be noticed* even though it was not brought to the attention of the trial court" (citation and internal quotation marks omitted)); *State v. Baron*, 80 Hawai'i 107, 117, 905 P.2d 613, 623 (1995) (same); *State v. Puaoi*, 78 Hawai'i 185, 191, 891 P.2d 272, 278 (1995) (stating that "[t]hough mindful that this power to deal with error is one to be exercised sparingly[,]" "where plain error has been committed and

substantial rights have been affected thereby, the error may be noticed" (quotation marks and citations omitted)); *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993) (stating that "[t]his court's power to deal with plain error is one to be exercised sparingly" but "[n]evertheless, where plain error has been committed and substantial rights have been affected thereby, the error may be noticed" (citations omitted)).[23] The foregoing cases, then, indicate that the term "sparingly" refers to the limitation already in place in HRPP Rule 52(b) that the error must be one "affecting substantial rights." Hence, this court has not "used the word 'sparingly' in order to *limit* appellate courts from noticing plain error." Dissenting opinion at 138, 223 P.3d at 203 n. 5 (emphasis in original). To the contrary, "where plain error has been committed and substantial rights have been affected thereby," the "better part of discretion" is to "invok[e] the plain error rule." *Fox*, 70 Haw. at 56, 760 P.2d at 676.

### 4.

The dissent must concede that the rules already recognize that plain error is a departure from the adversarial system, but allow appellate courts discretion to notice plain errors despite the rules' requirements.[24] *See*

**22.** The dissent cites to civil cases which are irrelevant here. *See* dissenting opinion at 138, 223 P.3d at 203 n. 5 (citing *Honda v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i*, 108 Hawai'i 212, 239, 118 P.3d 1155, 1182 (2005) (Levinson, J., dissenting, joined by Moon, C.J.); *Okada Trucking*, 97 Hawai'i at 458, 40 P.3d at 81); *In re Doe Children*, 108 Hawai'i 134, 141, 117 P.3d 866, 873 (App.2005); *Liftee v. Boyer*, 108 Hawai'i 89, 98, 117 P.3d 821, 830 (App. 2004).

**23.** Similarly, many of the cases that have used the term "sparingly" have immediately qualified it by stating that "[t]his court *will apply* the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Chin*, 112 Hawai'i 142, 147 n. 4, 144 P.3d 590, 595 n. 4 (App.2006) (emphasis added); *State v. Randles*, 112 Hawai'i 192, 194, 145 P.3d 735, 737 (App.2006) (same); *State v. Kiakona*, 110 Hawai'i 450, 458 n. 4, 134 P.3d 616, 624 n. 4 (App.2006) (same); *State v. Yoo*, 110 Hawai'i 145, 150, 129 P.3d 1173, 1178 (App.2006) (same); *State v. Gray*, 108 Hawai'i 124, 134 n. 9, 117 P.3d 856, 866 n. 9 (App.2005)

(same); *State v. Carvalho*, 106 Hawai'i 13, 16 n. 6, 100 P.3d 607, 610 n. 6 (App.2004) (same); *State v. Aki*, 102 Hawai'i 457, 459, 77 P.3d 948, 950 (App.2003) (same); *State v. Sugihara*, 101 Hawai'i 361, 364, 68 P.3d 635, 638 (App.2003) (same); *State v. Gunson*, 101 Hawai'i 161, 162 n. 4, 64 P.3d 290, 291 n. 4 (App.2003) (same); *State v. Kossman*, 101 Hawai'i 112, 122 n. 10, 63 P.3d 420, 430 n. 10 (App.2003) (same). Thus, "sparingly" manifestly refers to the requirement that the error "seriously affect" the proceedings, justice, or fundamental rights.

**24.** Furthermore, the dissent's argument on this point ignores that the language in HRPP Rule 52(b) and HRAP Rule 28(b)(4) already encompass a preference for the adversarial system, but nonetheless permit appellate courts to notice plain error in their discretion. HRPP Rule 52(b) states that "[p]lain errors or defects affecting substantial rights *may be noticed although they were not brought to the attention of the court*." (Emphasis added.) The rule therefore acknowledges that issues are usually to be raised in the trial court by counsel. HRAP Rule 28(b)(4) similarly confirms that the appropriate procedure for raising errors on appeal is to list them as points of error, stating that *"[p]oints not presented in*

dissenting opinion at 138–39, 140, 223 P.3d at 203-04, 205. But the dissent maintains that "appellate review of plain error is confined and explained by case law[,]" and "the constraints of appellate review of plain error must continue to be explained by appellate *case law.*" *Id.* at 140, 223 P.3d at 205, (emphasis in original). However, as the dissent concedes, this court has *never* set forth in the case law a different standard for reviewing plain errors *sua sponte* as opposed to reviewing errors brought to the court's attention by the appellant. *See id.* at 138, 223 P.3d at 203.

Nevertheless, the dissent would upset this equanimity by limiting notice of plain error *sua sponte* "even more 'sparingly' than the 'power to deal with plain error*[,]* " *id.* at 139, 223 P.3d at 204 (emphasis added), supposedly because "[w]hen an appellate court notices plain error *sua sponte,* it departs from . . . the adversary system . . . *twice:* first, when the counsel failed to preserve the error at the lower court and, subsequently, when the counsel failed to argue the plain error on appeal[,]" *id.* (quotation marks and brackets omitted) (emphasis in original).[25] That statement, of course, contravenes the plain language of HRPP Rule 52(b) and HRAP Rule 28(b)(4), neither of which adopts the severe restrictions proposed by the dissent. *See supra* note 24. Instead, both of those rules grant appellate courts discretion to "notice" error not raised either (1) in the court, *see* HRPP Rule 52(b), or (2) in the points of error, *see* HRAP Rule 28(b)(4). No distinction is made in the rules between an appellant who fails to raise a plain error in his appellate brief versus failure at the trial court level.

Similarly, there is no authority for the dissent's position that "[t]he appellate court must seek power to notice plain error *sua sponte* from *both HRAP Rule 28(b)(4) and HRPP Rule 52(b)."* Dissenting opinion at 139, 223 P.3d at 204 (emphasis added). To the contrary, *both* of those rules recognize appellate courts' power to recognize plain error *sua sponte,* stating that "[p]lain errors . . . *may be noticed*[,]" HRPP Rule 52(b) (emphasis added), and "the appellate court, at its option, *may notice* a plain error[,]" HRAP Rule 28(b)(4) (emphasis added). The rationale behind each rule is the same: that when substantial rights are affected, an error may be noticed despite counsel's failure to raise it.

Also, none of our courts have stated that *sua sponte* review requires the appellate court to "seek power" from both rules, but have instead acknowledged that each rule *individually* allows an appellate court to exercise *sua sponte* review, and, moreover, regardless of the rules, such power is inherent. *See, e.g. State v. Fields,* 115 Hawai'i 503, 528, 168 P.3d 955, 980 (2007) ("We are, of course, cognizant of our *inherent power to notice plain error sua sponte.*" (Emphasis added)); *State v. Friedman,* 93 Hawai'i 63, 67–68, 996 P.2d 268, 273 (2000) (citing only HRPP Rule 52(b) and recognizing that the appellant's *"failure to properly raise the issue . . . does* not foreclose our consideration of the issue *because this court may sua sponte notice plain errors*[,]" because *under HRPP Rule 52(b)* (1996), " '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court' " (emphases added)); *In*

---

accordance with this section will be disregarded," (emphasis added), except that the appellate court, *"may notice* [] plain error[,]" (emphasis added).

Hence, although acknowledging that the usual, and appropriate method, for raising errors in the adversarial system is to depend on counsel, the rules provide that, where substantial rights are affected, the court may choose to review error, even if not raised in the adversary process, in order to avoid the infringement of substantial rights. Consequently, the adversarial factor that might otherwise preclude review is already accounted for and incorporated into the language of HRPP Rule 52(b) and HRAP Rule 28(b)(4), and, therefore, further narrowing of the rules to account for the adversarial process as proposed by the dissent is neither wise nor warranted.

25. As discussed at length *supra,* Petitioner's argument satisfied the requirements of HRAP Rule 28(b), and, therefore, *it was wholly unnecessary for the ICA or this court to raise the error sua sponte.* With all due respect, it is implausible to say in this case that Petitioner's counsel did not "argue the plain error on appeal." First, based on the record expounded *supra,* to urge that the breach of plea agreement argument was not presented defies reason. Second, as discussed at length *supra,* Petitioner argued to the ICA and to this court that the plea breach should be reviewed pursuant to the plain error standard. Hence, the dissent embarks on a path foreign to this case.

*Interest of Doe*, 77 Hawai'i 46, 50, 881 P.2d 533, 537 n. 5 (1994) (citing neither rule but noting that "[a]lthough Doe has not raised [on appeal] the family court's failure to explain the nature of assault as error with regard to her waiver of counsel, we may *sua sponte* notice plain error where it affects Doe's substantial rights" (citation omitted)); *State v. McGriff*, 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (citing only HRAP Rule 28 and noting that the appellant "violate[d] *[HRAP Rule] 28(b)(4)(A)*" but recognizing that, nevertheless, "this court may *sua sponte* notice plain errors affecting an accused's substantial rights" (citation omitted)); *State v. Hirayasu*, 71 Haw. 587, 589, 801 P.2d 25, 26 (1990) (holding, without citation to either rule, that "[o]n appeal, although [the a]ppellant did not raise the issue of sufficiency of the evidence, the *power to sua sponte notice plain errors ... clearly resides in this court*" (internal quotation marks and citation omitted) (emphasis added)); *Fox*, 70 Haw. at 56, 760 P.2d at 676 (citing only HRPP Rule 52(b) and holding that "*appellate courts have the power, sua sponte, to notice plain errors* or defects in the record affecting substantial rights though they were *not properly brought to the attention of the trial judge or raised on appeal*" (quotation marks, brackets, and citation omitted) (emphases added)); *State v. Calarruda*, No. 28880, 2009 WL 1060465, at *2 (Haw.App. Apr. 21, 2009) (SDO) (citing only HRPP Rule 52(b) and stating that "*[a]n appellate court may notice error even if it was not properly preserved at trial or properly raised on appeal*[,]" and "[w]e have said little more in this regard than *HRPP 52(b) itself*, that is: *appellate courts have the power, sua sponte, to notice plain errors*" (citation omitted) (emphases added)). Thus, the dissent's contention that "this court's discretion to notice

plain error *sua sponte should be narrowed* ... by case law[,]" dissenting opinion at 140, 223 P.3d at 205 (emphasis added), advocates not only usurpation of the express language of the rules, but of our case law as well.

Furthermore, creating a two-tiered standard for reviewing plain errors, as the dissent suggests, would create two classes of defendants who could have suffered the same substantial right injury, granting one relief but denying it to the other on the circumstance that plain error was expressly raised in one instance but not in the other. Such an approach would duly invite not only due process, but equal protection objections.

The dissent objects to this premise, stating that "Hawai'i appellate courts require parties to follow numerous procedural court rules, and have dismissed parties' claims or appeals in accordance with rules and case law, when the rules were not followed, even where another appellant could have suffered the 'same substantial right injury.' " *Id.* at 140, 223 P.3d at 205. That statement is contrary to the purpose of the plain error rule and our precedent applying plain error. First, the cases the dissent cites for that proposition are entirely inapposite because this court did not in any of those cases indicate that substantial rights were affected.[26] Thus, those cases are irrelevant to the question of whether two appellants with the same substantial right injury should be subject to differing standards of plain error review.

■ Second, as discussed at length herein, there is no rational basis in the rules or the case law for placing appellants who fail to raise plain error into two different categories.[27] The purpose of plain error is to allow the court to vindicate substantial rights and to uphold the integrity of the judicial system, regardless of the venue in which the appel-

---

**26.** *See Bank of Hawaii v. Shinn*, 120 Hawai'i 1, 12, 200 P.3d 370, 381 (2008) (concluding that "under HRCP Rule 61, the 'harmless error' rule, a judgment or order is not to be disturbed absent *conflict with the substantial rights of the parties, which is not the case here*" (emphasis added)); *In re Contested Case Hearing on Water Use Permit Application Filed by Kukui (Molokai), Inc.*, 116 Hawai'i 481, 506, 174 P.3d 320, 345 (2007) (noting that the petitioner asserted that there was a conflict of interest with regard to its attorney's representation, but failed to point to any facts supporting that assertion, without any indication that substantial rights might have been affected);

*Poe v. Hawaii Labor Relations Bd.*, 98 Hawai'i 416, 419, 49 P.3d 382, 385 (2002) ("dismiss[ing] Poe's appeal for *lack of appellate jurisdiction*" without any mention of plain error or a substantial right injury (emphasis added)). *Poe*, in particular, is entirely inapplicable inasmuch as this court does not have the option to review for plain error where appellate jurisdiction is lacking.

**27.** *See, e.g., State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (recognizing that HRPP Rule 52(b) *alone* grants the appellate court discretion "whether to recognize error that *has not*

lant failed to present the argument. Accordingly, HRAP Rule 28 does not set forth a different or more stringent type of error than HRPP Rule 52(b), and in fact, merely recognizes the same plain error rule set forth in HRPP Rule 52(b) that "[p]lain errors ... affecting substantial rights may be noticed although they were not brought to the attention of the court." If it were otherwise, then, according to the rules, the standard under HRAP Rule 28(b)(4) would be a *less* burdensome standard, because that rule does not place any substantial rights limitation as to what kind of error may be recognized, merely stating that "the appellate court, at its option, may notice a plain error not presented."

Manifestly, HRPP Rule 52(b) and HRAP Rule 28(b)(4) refer to the *same* inherent plain error power, including the power to notice errors *sua sponte*. The dissent contrarily suggests that where a substantial rights violation has occurred, if the appellate court's review is *sua sponte*, where the error is not "extraordinary," the appellate court should decline to notice the error, despite the substantial rights violation. That view contradicts the plain language of the rules, as well as the case law. *See Nichols*, 111 Hawai'i at 335, 141 P.3d at 982 (stating that "[w]hile [remedial] discretion may exist in the federal courts," "there is no case in this jurisdiction referring to 'remedial discretion' in connection with plain error, *nor can we discover any reported criminal case in which this court has found plain error but refused to reverse in the exercise of discretion*" (emphasis added)).

### C.

In its proposal to adopt a different standard for *sua sponte* recognition of plain er-

ror, the dissent has misapplied the use of the words "sparingly" and "exceptional" in the case law, arguing not only that plain error *review* is extraordinary, but that the *nature of the error itself* must be exceptional or extraordinary.[28] The dissent misinterprets this opinion, asserting that because plain error is limited to "*errors* which *seriously affect* ... judicial proceedings," dissenting opinion at 140, 223 P.3d at 205 (emphases in original) (internal quotation marks and citation omitted), "[the dissent] do[es] not believe that the majority has a reasonable basis to now question our long-held practice to consider the *nature of the error* or its impact[,]" *id.* (emphasis in original). We do not question that the "nature of the error" is a paramount consideration. The difference between the majority's view and that of the dissent is that we believe that the "nature of the error or its impact" has been defined by the rules and in the case law as being one that "affects substantial rights," HRPP Rule 52(b), or "seriously affect[s] ... judicial proceedings[,]" *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981, *not* that the error must be "extraordinary," as the dissent insists. We believe that the former standard, as set forth in the rules and elaborated in the case law, provides more coherent guidance for plain error review. Thus, the dissent's statement that "this decision will result in confusion" in the "application of the plain error rule[,]" dissenting opinion at 140, 223 P.3d at 205, is belied by the numerous cases applying the same plain error standard we follow here.

### D.

### 1.

The dissent also relies on *Fields* to argue that plain error review should be exercised

been raised by trial counsel, appellate counsel, or both, *as plain error" (emphasis added))*.

**28.** The dissents states that "[t]he *circumstances should be exceptional"* in order to notice plain error. Dissenting opinion at 139, 223 P.3d at 204 (emphasis added). It cites to *Fox* for that proposition, wherein, as discussed *supra*, it cannot be said that the circumstances, *i.e.* admission of statements made in the course of plea negotiations, were any more "exceptional" than the circumstances in this case.

The dissent also cites *State v. Ruiz*, 49 Haw. 504, 506, 421 P.2d 305, 308 (1966) for the propo-

sition that *sua sponte* review should "be exercised only in an *exceptional case."* Dissenting opinion at 139, 223 P.3d at 204 (emphasis in original). In *Ruiz*, this court recognized the error because "the court ruled that defendant's story was incredible because it was told for the first time on the stand ... [b]ut the record plainly shows that this story was told to one or both investigators[,]" and "[h]ence, the stated ground of the decision was erroneous." *Ruiz*, 49 Haw. at 506, 421 P.2d at 308. Again, a court's reliance on an erroneous factual finding does not

"sparingly." *Id.* at 139–40, 223 P.3d at 204-05. However, that case is not supportive. In *Fields*, the petitioner argued "that his 'constitutional right' of confrontation is undoubtedly a 'substantial right' and the erroneous admission of both statements, in violation of the Hawai'i Constitution, did affect [his] substantial rights[.]" 115 Hawai'i at 528, 168 P.3d at 980. This court did not reject the petitioner's claim because it considered violation of the right of confrontation not important enough to rise to the level of plain error, but because this court had "already determined that the admission of [the] prior out-of-court statement did not violate [the petitioner's] right of confrontation." *Id.*

In a stance that is contradictory to the dissent's position in this case, the majority in *Fields sua sponte* addressed the possibility of recognizing ineffective assistance of counsel, inasmuch as that claim had not been raised by the petitioner,[29] stating that *"[w]e are, of course, cognizant of our inherent power to notice plain error sua sponte." Id.* (emphasis added). However, in that case, the

make that case any more "exceptional" than this one.

**29.** Significantly, the petitioner in *Fields* had *never* raised the ineffective assistance argument *at all*, let alone whether it should be reviewed for plain error, which makes *Fields* a case wherein the ICA or this court literally would have had to raise the issue on its own, *and in fact the majority in Fields apparently did so. See* 115 Hawai'i at 529, 168 P.3d at 981. By contrast, here, the ICA never considered the possibility of having to address the breach *sua sponte*, as it was clear that it was *the central issue* presented on appeal.

**30.** A review of our case law on plain error reveals that our appellate courts have in fact recognized plain error *sua sponte* in numerous cases, contrary to the dissent's assertion. *See, e.g., State v. Ruggiero*, 114 Hawai'i 227, 239, 160 P.3d 703, 715 (2007); *State v. Heapy*, 113 Hawai'i 283, 305, 151 P.3d 764, 786 (2007); *State v. Yamada*, 99 Hawai'i 542, 550, 57 P.3d 467, 475 (2002); *State v. Staley*, 91 Hawai'i 275, 286, 982 P.2d 904, 915 (1999); *State v. Mahoe*, 89 Hawai'i 284, 287, 972 P.2d 287, 290 (1998); *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998); *State v. Gaylord,* 78 Hawai'i 127, 130 n. 5, 890 P.2d 1167, 1170 n. 5 (1995); *Puaoi*, 78 Hawai'i at 191, 891 P.2d at 278; *State v. Schroeder*, 76 Hawai'i 517, 532, 880 P.2d 192, 207 (1994); *State v. Lemalu*, 72 Haw. 130, 136, 809 P.2d 442, 445 (1991); *Hirayasu*, 71 Haw. at 589, 801 P.2d at 26; *State v. Grindles*, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989); *State v. Her-*

majority determined it was appropriate to "decline to notice plain error *sua sponte* inasmuch as [the petitioner] retain[ed] the ability to vindicate his rights by filing a petition, pursuant to HRPP Rule 40, asserting a claim of ineffective assistance of counsel." *Id.* at 529, 168 P.3d at 981. Therefore, this court's decision not to exercise *sua sponte* review was not based on the fact that such review is extraordinary, but was specifically grounded in the fact that there was an alternate avenue of relief still available to the petitioner by way of a HRPP Rule 40 motion. *Fields*, then, is obviously not supportive of the dissent's position.

**2.**

The dissent goes on to argue that "[a] review of the small number of cases in which this court has noticed plain error *sua sponte* indicates that it is only appropriate to do so in extraordinary circumstances." [30] Dissenting opinion at 140-41, 223 P.3d at 205-06 (footnote omitted). But the cases the dissent cites do not support that proposition.[31] The

*nandez*, 61 Haw. 475, 482, 605 P.2d 75, 79 (1980); *Calarruda*, 2009 WL 1060465, at *2. The dissent asserts that all of the foregoing cases "involved *extraordinary* errors." Dissenting opinion at 141, 223 P.3d at 206 n. 7. However, the dissent does not make any argument as to why the errors in those cases were any more "extraordinary" that the error in this case, and thus, the dissent's assertion is unavailing.

**31.** In a footnote, the dissent cites to Justice Acoba's dissenting opinion in *Fields*, which cited to several cases for the proposition that "this court has many times employed" its "inherent power to notice plain error sua sponte." Dissenting opinion at 140–41, 223 P.3d at 205–06 n. 6 (quoting *Fields*, 115 Hawai'i at 536–37, 168 P.3d at 988–89 (Acoba, J., dissenting)). The dissent "do[es] not dispute [the] appellate courts' ability to notice plain error *sua sponte*[,]" but "note[s] that many of [the cases cited by Justice Acoba in *Fields*] declined to notice plain error." *Id.* at 141, 223 P.3d at 206 n. 6. However, the dissent fails to recognize that, although it was determined in those cases that no error had in fact occurred, this court's *ability to review for error in the first place* stemmed from its inherent power to recognize errors *sua sponte*. Thus, in those cases this court employed its power to review an alleged error *sua sponte*, but upon such review, ultimately concluded that no error had occurred.

For example, in *McGriff*, although this court ultimately determined that the defendant's right of confrontation had not been violated, it recognized that, had a constitutional violation oc-

circumstances of those cases are not any more "extraordinary," or unprecedented, than those in this case. In *Ruggiero*, this court held that "[t]he district court plainly erred in convicting Ruggiero as a second time DUI offender pursuant to HRS § 291E–61(a) and (b)(2)[,]" because "[t]his court's holding in *[State v.] Tafoya*[, 91 Hawai'i 261, 270, 273, 982 P.2d 890, 899, 902 (1999),] *requires that the essential elements of any offense be alleged in the complaint and found beyond a reasonable doubt by the trier of fact.*" 114 Hawai'i at 239, 160 P.3d at 715 (emphasis added). Plainly, the requirement that all elements be alleged in the charging document is not any more "extraordinary" than the requirement that a prosecutor's promise associated with a plea agreement "must be fulfilled." *See Santobello*, 404 U.S. at 262, 92 S.Ct. 495.

The dissent cites to the *dissent* in *State v. Frisbee*, 114 Hawai'i 76, 85, 156 P.3d 1182, 1191 (2007) (Nakayama, J., dissenting), as authority for the proposition that the errors in *Ruggiero* and *Yamada*, were "particularly egregious and obviously harmful[.]" Dissenting opinion at 143, 223 P.3d at 208. However, in both *Ruggiero* and in this case, *the error stemmed from an action of the prosecution, which resulted in a denial of the defendant's fundamental due process rights.* *See Ruggiero*, 114 Hawai'i at 239, 160 P.3d at 715 ("A charge defective in this regard amounts to a failure to state an offense, and

curred, *it would be recognized as plain error. See* 76 Hawai'i at 155, 871 P.2d at 789 (stating that "if we should determine that [a co-defendant's] testimony in this case contravened the confrontation clauses of the United States or Hawai'i constitutions, *the admission of such testimony would be considered plain error*" (emphasis added)); *see also State v. Iaukea*, 56 Haw. 343, 355, 537 P.2d 724, 733 (1975) (reviewing "the issue raised because it *could have [affected] the appellant's substantial rights*, including the length of his sentence," but ultimately concluding that "[t]he trial court did not commit error, plain or otherwise" (emphasis added); *State v. Cummings*, 49 Haw. 522, 528, 423 P.2d 438, 442–43 (1967) (although concluding that no error occurred, reviewing the alleged error pursuant to the power to review for plain error, because "[e]rroneous admission of evidence may constitute plain error if a fair trial of the accused was thereby impaired, or if it substantially prejudiced the accused[,]" and because admission of evidence in that case was "peculiarly vulnerable as possible error 'affecting substantial rights' under [HRCP] Rule 52(b)"

*a conviction based upon it cannot be sustained, for that would constitute a denial of due process.*" (citations omitted) (emphasis added)); *Adams*, 76 Hawai'i at 412, 414, 879 P.2d at 517, 519 (holding that a plea agreement "implicates constitutional considerations—including the fairness and voluntariness of the plea," and therefore, "the terms of a plea agreement, which serve as the inducement for entering a plea, *must be fulfilled*[,]" and thus, "*due process requires that the State uphold its end of the bargain*" (emphases added)).

Similarly, it cannot be said that, in *Yamada*, the error was any more "egregious" than the error in this case. As the dissent explains, this court reversed the court in *Yamada sua sponte* because "[b]y directing the jury to find Yamada guilty of manslaughter 'if one or more jurors believes or believe that the prosecution has not proven ... that' Yamada was not under the influence of [extreme mental or emotional distress,]" the court "potentially allowed a single juror to highjack the proceedings[,]" thereby depriving Yamada of his constitutional right "to a unanimous verdict[.]" 99 Hawai'i at 551, 57 P.3d at 476. The dissent does not make any argument as to why depriving a defendant of a panoply of constitutional guarantees because of a false promise of the government in a plea deal is any less troublesome than denial of the right to a unanimous verdict.[32]

(some internal quotation marks, parentheses and citation omitted)).

Finally, the dissent's reference to the majority's conclusion in *In re Doe* is misplaced, because in *Fields*, Justice Acoba's dissenting opinion cited his dissent in that case and not the majority opinion. *See Fields*, 115 Hawai'i at 537, 168 P.3d at 989 (Acoba, J. dissenting) (citing *Doe*, 102 Hawai'i 75, 87, 73 P.3d 29, 41 (2003) (Acoba, J., dissenting)).

**32.** The dissent's recitation of the facts of *Ruggiero* and *Yamada* only demonstrates the requirement that substantial rights must be affected, *not* that the error committed must somehow be "extraordinary." Indeed, the dissent does not leave the reader with any sense of what an "extraordinary" error might be, or when this court might consider the denial of fundamental constitutional rights to be of an extraordinary nature versus a garden variety violation. Nor does the dissent explain why the fundamental due process rights denied when a breach occurs are merely of a garden variety, rather than "extraordinary."

Accordingly, there is nothing so "extraordinary" about the cases cited by the dissent wherein this court has *sua sponte* noticed plain error that sets them apart from this case.[33]

### 3.

Furthermore, the dissent chooses selectively which *sua sponte* cases to discuss, ignoring those that have recognized plain error based on denial of constitutional rights, *i.e.*, due process rights.[34] For example, in *Staley*, this court noticed plain error *sua sponte*, unanimously holding, "based on [its] independent review of the record, that [the appellant's] constitutional right to testify was violated." 91 Hawai'i at 277, 982 P.2d at 906.[35] This court, citing only to HRPP Rule 52(b) and case law, stated succinctly with regard to plain error review that "[w]e may recognize plain error when the error committed affects substantial rights of the defendant[,]" *id.* at 282, 982 P.2d at 911, and did not employ the term "sparingly" or "exceptional" to refer to plain error review. It was held that "[a]lthough not raised by [the appellant] on appeal, our review of the record establishes that [his] right to testify ... was violated" because "[w]hile the circuit court did engage in a colloquy with [the appellant] regarding [his] understanding of his right to testify, the circuit court failed to elicit an on-the-record waiver[.]" *Id.* at 286, 982 P.2d at 915. As for the impact on substantial rights, this court concluded that "[b]ecause the circuit court's error *infringed upon [the appellant's] constitutional right to testify*, we address it as plain error." *Id.* (emphasis added). We do not think that the infringement of constitutional rights that occurs when the court fails to obtain a specific waiver of the right to testify is any more "extraordinary" than the infringement upon constitutional due process rights that occurred in this case.

Several other cases wherein this court has recognized plain error *sua sponte* did not present circumstances more extraordinary than in this case, nor did *any* of following cited cases state that *sua sponte* plain error review should be exercised "sparingly" or in "exceptional" cases. *See Ruggiero*, 114 Hawai'i at 239, 160 P.3d at 715 (recognizing plain error *sua sponte* based on insufficiency of the complaint, stating only that "[w]e may recognize plain error when the error committed affects substantial rights of the defendant"); *Heapy*, 113 Hawai'i at 305 n. 26, 151 P.3d at 786 n. 26 (stating only that "[a]ppellate courts, in criminal cases, may *sua sponte* notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings," and recognizing as plain error the trial court's exclusion of "The Use of Sobriety Checkpoints for Impaired Driving Enforcement, (Nov.1990) of the National Highway Traffic Safety Administration," (the Guide), because "[g]iven the *negative constitutional implications of the court's decision, application of the plain error doctrine would be proper*" (citation omitted) (emphasis added))[36]; *Yamada*, 99 Hawai'i at 550, 57 P.3d

---

33. *See Ruggiero*, 114 Hawai'i 227, 160 P.3d 703 (discussed *supra*); *Yamada*, 99 Hawai'i 542, 57 P.3d 467 (discussed *supra*); *Grindles*, 70 Haw. at 533, 777 P.2d at 1191 (concluding "that the [a]ppellant was entitled to have the State present its entire case against him under HRS § 291-4(a) before presenting any evidence in his defense or deciding whether or not he himself should take the stand"); *Ruiz*, 49 Haw. at 506, 421 P.2d at 308 (discussed *supra* note 28).

34. The dissent claims that it "certainly recognize[s] that the *denial* of constitutional rights *may* well be extraordinary." Dissenting opinion at 142, 223 P.3d at 207 n. 7 (first emphasis in original) (second emphasis added). However, the dissent does not explain which constitutional errors might satisfy its rigid *sua sponte* standard, as opposed to those that are merely ordinary constitutional errors not worthy of plain error

review. Inasmuch as our case law supports plain error review where constitutional rights are denied, and the violation in this case rose to the level of plain error, we see no reason to distinguish among categories of constitutional error herein.

35. Contrary to the facts of this case, in *Staley*, the appellant did *not* present the constitutional issue at all, and instead argued solely "(1) the circuit court erred in granting the prosecution's motion in limine, ...; (2) the jury instructions as read to the jury were prejudicial to him; and (3) there was insufficient evidence to support his conviction[,]" 91 Hawai'i at 277, 982 P.2d at 906, matters totally unrelated to the issue addressed as plain error.

36. The dissent attacks our citation to *Heapy*, asserting that "the plurality's mere mention of the

at 475 (recognizing plain error *sua sponte* and stating solely that "[w]e may recognize plain error when the error committed affects substantial rights of the defendant" (citations omitted)); *Mahoe*, 89 Hawai'i at 287, 972 P.2d at 290 (merely quoting the language of HRPP Rule 52(b) and concluding *sua sponte* that "[a]lthough not raised by Mahoe on appeal, our review of the record indicates that Mahoe's *right to due process ... was violated* " and "[b]ecause these errors *infringed on Mahoe's constitutional rights to due process* and unanimous jury verdict, we address them as plain error" (emphases added)); *Richie*, 88 Hawai'i at 33 n. 6, 960 P.2d at 1241 n. 6 (recognizing plain error *sua sponte* and stating solely that "this court has reviewed possible violations of HRS § 701–109 under the plain error doctrine in the past[,]" and thus, "despite the failure of trial counsel and appellate counsel to properly raise this issue, we address it *sua sponte* " (citation omitted)); *Gaylord*, 78 Hawai'i at 130 n. 5, 890 P.2d at 1170 n. 5 (merely quoting the plain error language from HRAP Rule 28(b)(4) and noticing plain error *sua sponte* with regard to "the sentencing court's restitution order"); *Schroeder*, 76 Hawai'i at 532, 880 P.2d at 207 (noticing plain error *sua sponte* because the appellant had a *"right under the due process clause ...* to be given reasonable notice of the circuit court's intention to ... impos[e] a mandatory minimum ten year term of imprisonment" because "where plain error has been committed and substantial rights have been affected thereby, the error may be noticed" (citation omitted) (emphasis added)); *Lemalu*, 72 Haw. at 136, 809 P.2d at 445 (noticing plain error *sua sponte* because, "[a]lthough Lemalu has not raised this issue on appeal, we view the giving of certain instructions coupled with the use of multiple verdict forms as plain error"); *Hirayasu*, 71 Haw. at 589, 801 P.2d at 26 (noticing plain error *sua sponte*, stating that "[o]n appeal, although [the a]ppellant did not raise the issue of sufficiency of the evidence, the power to sua sponte notice plain errors or defects affecting substantial rights clearly resides in this court" (quotation marks and citations omitted)); *Grindles*, 70 Haw. at 530, 777 P.2d at 1189 (noticing *sua sponte* as error that "the trial court's action in compelling [the a]ppellant to put on his evidence prior to the conclusion of the State's evidence *violated his due process right to a fair trial*[,]" because "[a]lthough [the a]ppellant did not raise on appeal any due process claim, the power to sua sponte notice plain errors or defects affecting substantial rights clearly resides in this court" (quotation marks and citation omitted) (emphasis added)); *Hernandez*, 61 Haw. at 482, 605 P.2d at 79 (recognizing plain error *sua sponte* because "[a]lthough appellant did not raise on appeal the sufficiency of the evidence ..., the power to [s]ua sponte notice plain errors or defects affecting substantial rights clearly resides in

plain error doctrine [in *Heapy*] was unnecessary to adjudicate the particular issue presented in that case, and is therefore dictum[,]" and, thus, "the majority's reliance on *Heapy* is wrong, inasmuch as it is clearly not an accurate reflection of the extraordinary circumstances under which this court has applied the plain error doctrine in the past." Dissenting opinion at 142, 223 P.3d at 207 n. 7. Although in *Heapy* this court determined, in addition to its plain error analysis, that consideration of the Guide was appropriate on appeal, "irrespective of any arguable failure on the part of Defendant to raise it on appeal[,]" because it was "germane" to the other issues on appeal, its reference to plain error was manifestly tied to its decision that the Guide was "imbedded in the legal doctrine concerning roadblocks," and provided additional support for its conclusion that review of the Guide was appropriate, and, thus, was not merely "dictum":

Also, *this court may consider plain error for the apparent failure of Defendant to raise HRS § 291E–20 and the Guide on appeal. Appellate courts, in criminal cases, may sua sponte "notice errors to which no exception has been taken,* if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings[,]" [*Fox*, 70 Haw. at 56, 760 P.2d at 675–76], as in this case.

Assuming, *arguendo*, that an exception must be taken with respect to ... the court's exclusion of the Guide, *notice of plain error would be appropriate. As earlier explained, the procedures listed in ... the Guide are relevant to a discussion of the reasonableness of the stop.* These prescribed procedures were developed in order to minimize intrusion upon an individual's privacy rights and are referred to in much of the case law. *Given the negative constitutional implications of the court's decision, application of the plain error doctrine would be proper.*

*Heapy*, 113 Hawai'i at 305 n. 26, 151 P.3d at 786 n. 26 (emphases added).

this court" (quotation marks and citation omitted)); *Calarruda*, 2009 WL 1060465, at \*2 (concluding *sua sponte* that "the trial court committed plain error in imposing sentences for both possession of the firearm and possession of ammunition[,]" because "[a]n appellate court may notice error even if it was not properly preserved at trial or properly raised on appeal").

### E.

Additionally, the dissent's assertion that when plain error review is exercised *sua sponte*, "our adversarial system is directly undermined," dissenting opinion at 143, 223 P.3d at 208 (footnote omitted), is inapposite here. The dissent maintains that "[t]his system is premised on the well-tested principle that truth—as well as fairness—is best discovered by *powerful statements on both sides of the question.*" *Id.* at 139, 223 P.3d at 204 (quoting *Fields*, 115 Hawai'i at 529, 168 P.3d at 981) (emphasis added). But, the aforementioned objection is not involved in this case. Here, both sides plainly believed that (1) the prosecution's breach of the plea agreement, and (2) whether that breach should be reviewed for plain error, were the central issues on appeal, and each made "powerful statements" to that effect.[37] As a result, all of the arguments, facts, and case law necessary to determine whether the plea agreement was breached were fully presented. Consequently, there was no necessity for this court to perform its own "legal inquiry and research," *see id.* at 139, 223 P.3d at 204 (citation omitted), inasmuch as this opinion relies on cases that were argued by Peti-

tioner, *i.e., Adams* and *Santobello.* The concerns posed by the dissent are simply not present in this case.

### XII.

The dissent next argues that the *sua sponte* standard was not satisfied, because (1) "[a] breached plea agreement does not in itself satisfy the plain error requirements[,]" dissenting opinion at 143, 223 P.3d at 208; and (2) "federal decisions" dictate that "a breached plea agreement [does not] automatically den[y] a defendant of his substantial rights[,]" *id.* at 147, 223 P.3d at 212.

### A.

#### 1.

The dissent objects to what it characterizes as the majority's "conclusion that [Petitioner] 'was denied his due process rights,' based solely on the alleged breach."[38] *Id.* at 144, 223 P.3d at 209 (emphasis in original). That statement misconstrues this opinion. First, this opinion does not hold "that [Petitioner's] fundamental rights were violated based *entirely* on the fact of a breached plea agreement ... without a discussion of how [Petitioner's] due process rights were affected in this case." *Id.* (emphasis in original). Petitioner's right to due process was violated *based on the circumstances of this case*, because (1) the promise of the prosecution to take no position on DANCP was central to the promise made by the prosecution as a condition of the plea, and thus, was clearly material to Petitioner's resulting decision to forego all of his constitutional rights and plead guilty,[39] and (2) the court's rationale

---

**37.** It is ironic that the dissent argues that somehow the parties in this case were "precluded from presenting arguments on the [plain error] issue," dissenting opinion at 143, 223 P.3d at 208, and yet the dissent apparently deemed Respondent's argument quite "powerful," inasmuch as the dissent adopts Respondent's unprecedented "extraordinary" standard and advocates adopting that standard in this jurisdiction. In fact, the dissent employs Respondent's "extraordinary" language several times. *See id.* at 138, 141, 142, 143, 148, 223 P.3d at 203, 206, 207, 208, 213. Thus, the dissent contradicts its own argument that Respondent did not have a chance to argue plain error, by adopting the very plain error standard Respondent advocated on appeal.

**38.** As discussed more fully *infra*, the dissent subsequently contradicts that statement by stating

that "the majority ... also concluded that the error was not harmless beyond a reasonable doubt." *Id.* at 148, 223 P.3d at 213. At page 148, 223 P.3d at 213, the dissent is apparently referring to the conclusion that the breaching statements had an impact on the court's decision. The harm in this case, however, stems *both* from (1) denial of Petitioner's due process rights based on the breach, and (2) the apparent impact on the court's decision to deny Petitioner's DANCP motion.

**39.** The dissent attempts to minimize the impact of the breach by stating that "the plea agreement clearly involved advantages and incentives for the defendant other than the prosecution's promise to stand silent on the DANCP motion." *Id.* at 145, 223 P.3d at 210. However, under *Adams*, "the *terms* of a plea agreement, *which serve as*

for rejecting Petitioner's DANCP closely reflected the prosecution's position, which was offered for no other apparent reason than to influence the court's decision to grant or deny the DANCP. Thus, it is *not* this court's holding "that all breached plea agreements violate a defendant's fundamental rights[,]" *id.* at 144, 223 P.3d at 209, or "that a breached plea agreement automatically ... violates [ ] fundamental rights[,]" *id.* at 145, 223 P.3d at 210 n. 10, without any further analysis, but, that, on the facts of this case, the breach rises to the level of plain error. That approach is consistent with our cases noticing plain error based on the facts of the particular case. *See State v. Rodrigues*, 113 Hawai'i 41, 47, 147 P.3d 825, 831 (2006) (holding that "[t]he decision to take notice of plain error must turn on the facts of the particular case" (quoting *Fox*, 70 Haw. at 56, 760 P.2d at 676)). Thus, the dissent's "extraordinary" standard is unprecedented.

### 2.

Also, this court has said more than that a breach "*implicate[s]* constitutional rights[.]" Dissenting opinion at 145, 223 P.3d at 210 (emphasis in original). In *Adams*, this court stated that, not a *breach*, but "*the plea negotiation process* implicates constitutional considerations*.*" 76 Hawai'i at 412, 879 P.2d at 517 (emphasis added). As *Adams* indicated, the constitutional considerations at stake "includ[e] the fairness and voluntariness of the plea[.]" *Id.* When the State's promise acts as inducement for the plea, the validity of the plea, and therefore the conviction, are called into question when that promise goes unfulfilled. It is for those reasons that this court held in *Adams* that "the terms of a plea agreement, which serve as the inducement for entering a plea, must be fulfilled." *Id.* at 414, 879 P.2d at 519 (citing *State v. Costa*, 64 Haw. 564, 566, 644 P.2d 1329, 1331 (1982); *Santobello*, 404 U.S. at 262, 92 S.Ct. 495). Thus, despite the dissent's contrary position, we have affirmatively *held* that, where the plea agreement acts as inducement for pleading guilty, the "defendant is *denied due process* " and "*there is manifest injustice as a matter of law.*" *Id.* (emphases added).[40] When, as in this case, a breach "denied due process," *id.*, because it undermined the foundation for the defendant's guilty plea, the error "*in fact* affected *the defendant's* substantial rights[,]" dissenting opinion at 145, 223 P.3d at 210 (emphases in original).[41] Thus, we do not "lower[ ] the plain error standard for breached plea agreements[,]" *id.* at 145, 223 P.3d at 210, as the dissent contends, but, consistent with our plain error precedent, opt to notice plain error where

the inducement for entering a plea, must be fulfilled." *Adams*, 76 Hawai'i at 414, 879 P.2d at 519 (emphases added); *see also State v. Yoon*, 66 Haw. 342, 347, 662 P.2d 1112, 1115 (1983) (concluding that, "if [the defendant's] guilty pleas ... *rested in any significant degree* " on the prosecution's promise, "*due process would indeed call for a fulfillment of the State's end of the bargain* "). Thus, any term that "serve[d] as the inducement" is material to the agreement and "must be fulfilled," regardless of any other compromises incorporated into the agreement. *See Adams*, 76 Hawai'i at 414, 879 P.2d at 519; *see also Santobello*, 404 U.S. at 262, 92 S.Ct. 495 (stating that "petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, *but also on condition that no sentence recommendation would be made by the prosecutor* " (emphasis added)). Here, Petitioner manifestly pleaded guilty based at least in part on the prosecution's promise to "take no position" on the DANCP motion, and thus, Petitioner was "*denied due process because the prosecution violate[d the] plea agreement*[.]" *Adams*, 76 Hawai'i at 414, 879 P.2d at 519 (emphasis added).

40. The dissent claims that it objects to our holding that "[Petitioner's] due process rights were violated, *based on Adams' discussion on the effect of a breached plea agreement, generally.*" Dissenting opinion at 146, 223 P.3d at 211 n. 12 (emphasis in original). However, as we stated *supra*, "[t]he facts of *Adams* are virtually indistinguishable from the facts of this case[,]" *see supra* at 105, 223 P.3d at 170, and hence, *Adams* is quite apposite here. Moreover, *Adams'* holding that the government's breach of a plea agreement violates due process is unmistakable, whether that holding is characterized as "general[ ]" or specific.

41. The dissent asserts that this is "an egregious distortion of my statements[,]" because it purports to believe that "the denial of due process affects substantial rights, but that *a breached plea agreement, in itself, does not deny the defendant of his or her due process rights*[.]" Dissenting opinion at 145, 223 P.3d at 210 n. 11 (emphasis added). The dissent relies on *Puckett* in support of that statement, which, as explained further, *infra*, relies on the federal plain error standard and is therefore inapposite here. Moreover, the dissent's view as to the due process implications

due process is denied. Urging, as the dissent does, that the denial of due process, *i.e.*, the breach, does not "in fact" affect substantial rights, is contrary to this court's plain error jurisprudence, and would greatly diminish due process protections under our constitution.[42]

3.

According to the dissent, "a Hawai'i appellate court must also find that 'there is a reasonable possibility that the error contributed to the defendant's conviction[.]'" *Id.* at 143, 223 P.3d at 208 (quoting *Nichols*, 111 Hawai'i at 337, 141 P.3d at 984). The dissent seems to concede that, in *Adams* and in *Santobello*, the breach was the *sole reason for vacation of the sentence*, but avers that those cases do not apply here because those "courts were not limited to reviewing the defendant's claim for plain error." *Id.* at 144, 223 P.3d at 209 n. 10. The dissent's argument seems to be that, cases wherein this court has concluded that fundamental rights were denied outside of the plain error context, cannot be used as support for the proposition that substantial rights were affected in the plain error context.

■ That reasoning defies logic and precedent. It is not the standard of review that dictates whether fundamental rights are denied, but the guarantees embodied in our

constitution. Where such constitutional rights are affected, our courts have on several occasions opted to review for plain error.[43] Thus, the dissent has no sound basis for ignoring the rationale of *Adams* and *Santobello* in the instant case.

Furthermore, contrary to the dissent's assertions, this opinion recognizes that Petitioner *was* prejudiced by the breach, and that, therefore, the error was not harmless beyond a reasonable doubt. *See* dissenting opinion at 147, 223 P.3d at 212. First, Petitioner was prejudiced when he forewent all of his constitutional rights and pleaded guilty based, at least in substantial part, on an empty promise. In *Yoon*, this court concluded that, "if [the defendant's] guilty pleas ... *rested in any significant degree* on a promised resolution of all the cases then pending against him, *due process would indeed call for a fulfillment of the State's end of the bargain.*" 66 Haw. at 347, 662 P.2d at 1115 (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Santobello*, 404 U.S. at 262, 92 S.Ct. 495; *Waiau*, 60 Haw. at 96–97, 588 P.2d at 414–15; *State v. Gumienny*, 58 Haw. 304, 308, 568 P.2d 1194, 1197–98 (1977)) (emphases added). Because "[a]n unfulfilled plea agreement ... implicates other considerations of constitutional dimension[,] ... it is also clear that a

of breached plea agreements is *impossible* to square with *Adams*.

**42.** The dissent also claims that "[t]he majority correctly states that this court may review a breached plea agreement claim for plain error, but it [ ] applies a *de novo* standard for a breached plea agreement claim raised for the first time on appeal[.]" Dissenting opinion at 143, 223 P.3d at 208; *see also id.* at 144, 223 P.3d at 209 n. 9 (stating that the majority's "conclusion itself was based entirely on its *de novo* review of the breach"). That statement is manifestly inaccurate, as this court has determined, pursuant to two distinct analyses, (1) that the breached plea agreement is appropriate for plain error review inasmuch as the breach contributed both to Petitioner's conviction and the denial of his DANCP motion, and (2) pursuant to *de novo* review, that the plea agreement was breached. *See Abbott*, 79 Hawai'i at 320, 901 P.2d at 1299 (emphases added) ("Whether the State has actually breached the terms of a plea agreement [ ] is a question of law, which we review de novo under the right/wrong standard of review.") It would seem plain that whether the breach occurred,

and whether or not it affected substantial rights under the plain error standard, are two distinct, albeit related, questions.

**43.** *See, e.g., State v. Uyesugi*, 100 Hawai'i 442, 449, 60 P.3d 843, 850 (2002) (stating that plain error will be noticed where "instruction ... has affected the defendant's substantial rights-to wit, his or her constitutional rights to a trial by an impartial jury and to due process of law" (citation omitted)); *State v. Arceo*, 84 Hawai'i 1, 33, 928 P.2d 843, 875 (1996) ("Arceo's substantial constitutional right to unanimous jury verdicts was prejudiced in such a manner as to give rise to plain error."); *Puaoi*, 78 Hawai'i at 191, 891 P.2d at 278 (holding that "[a] conviction based on insufficient evidence of any element ... is a violation of due process and thus constitutes plain error[,]"); *State v. Mitchell*, No. 28079, 2008 WL 4649426, at *13 (Haw.App. Oct. 17, 2008) (mem.) (holding that "[i]f the psychologist-client privilege was destroyed, the [error] would have seriously affected the fairness and integrity of Mitchell's trial, entitling Mitchell to a new trial to serve the ends of justice and prevent a denial of his fundamental right to a fair trial").

prosecutor's [broken] promise may deprive a guilty plea of the character of a voluntary act." *Id.* at 349, 662 P.2d 1112, 662 P.2d at 1116 (citation and quotation marks omitted). It was held that "the State should be held to the agreement to clear the defendant's record[,]" inasmuch as *"[a]nything less might have raised questions concerning fairness in the State's dealings with [the defendant] and the voluntariness of his guilty pleas." Id.* (emphasis added).

 Based on *Yoon,* it is the law in this jurisdiction that, where the plea *"rest[s] in any significant degree"* on the State's promise, due process requires that the promise be fulfilled. Where, as here, the plea is based on an unfulfilled promise of the prosecution, there is certainly "a reasonable possibility that [the] error might have contributed to conviction[,]" *Nichols,* 111 Hawai'i at 334, 141 P.3d at 981 (citation omitted), inasmuch as the conviction rests entirely on Petitioner's plea.

Second, Petitioner was prejudiced because the prosecution's statements appeared to influence the sentencing court's decision to deny the DANCP, as set forth *supra.* Hence, the dissent is wrong when it says that "the majority[ ] ... concludes that [Petitioner's] fundamental rights were violated without actually applying [the plain error] standard." Dissenting opinion at 146, 223 P.3d at 211 (citations omitted). This decision does not contradict, but reaffirms that this court's review is exercised in order "to correct [an] error[ ] which seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *See Sawyer,* 88 Hawai'i at 330, 966 P.2d at 642 (emphasis added).

### B.

#### 1.

Next, although conceding that "[w]e have never employed the four-pronged plain error standard of review set forth in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123

L.Ed.2d 508 (1993)[,]" dissenting opinion at 146, 223 P.3d at 211 (brackets and citation omitted), the dissent nevertheless argues that "Hawaii's plain error standard is substantially similar to the federal plain error test," *id.* at 146, 223 P.3d at 211. Aside from the fact that its contention is incorrect, the dissent's application of the federal plain error standard is particularly questionable, *see id.* at 146-47, 223 P.3d at 211-12, inasmuch as, not only has this court *never employed* the federal four-pronged test, but has *explicitly rejected* it when faced with the opportunity to adopt that standard. *See Nichols,* 111 Hawai'i at 335, 141 P.3d at 982.

In *Nichols,* the federal standard was addressed in the context of this court's review of the ICA's determination that "it had the option to decline to exercise its 'remedial discretion' or that it had any remedial discretion at all in regards to [prejudicial] error." *Id.* As stated before, *Nichols* "note[d] that [the petitioner wa]s correct in asserting that there is no case in this jurisdiction referring to 'remedial discretion' in connection with plain error, nor can we discover any reported criminal case in which this court has found plain error but refused to reverse in the exercise of discretion." *Id.* While observing that "such discretion may exist in the federal courts," this court declared that "we have *never* employed the four-pronged plain error standard of review set forth in *[Olano],"* and, additionally, *"decline to do so." Id.* (emphases added).

#### 2.

The dissent proceeds from its incorrect premise to assert that under "federal cases ..., the defendant is not automatically prejudiced or deprived of his or her 'fundamental rights.'" Dissenting opinion at 146, 223 P.3d at 211 (citing *Cannel,* 517 F.3d at 1179 (Clifton, J., concurring); *United States v. De La Garza,* 516 F.3d 1266, 1269–70 (11th Cir. 2008); *Salazar,* 453 F.3d at 915; *Jensen,* 423 F.3d at 855). None of these cases are relevant under our state standard. *See Nichols,* 111 Hawai'i at 335, 141 P.3d at 982. Even if considered, *Cannel* is inapposite because there was no breach [44]; *Salazar* adopts a

---

**44.** In that case, the Ninth Circuit concluded that "the government did not breach the plea agree-

ment." 517 F.3d at 1177.

standard *Nichols* rejected [45]; in *De La Garza* there was no loss of the bargain [46]; and in *Jensen*, the breach had no consequence for the sentence.[47]

### 3.

Again, the dissent next contends that "[t]he majority's ruling is also at odds with the Supreme Court's clear ruling that a breached plea agreement does not satisfy the plain error requirement that the error 'must have affected the [defendant's] substantial rights.'" Dissenting opinion at 147, 223 P.3d at 212 (quoting *Puckett*, —— U.S. at ——, 129 S.Ct. at 1429) (brackets in original). First, *Puckett* simply is irrelevant to our plain error analysis because it departs from Hawai'i law in its requirement that, in addition to showing that the error affected substantial rights or the integrity of the judiciary, the defendant must make a particularized showing of prejudice, *i.e.*, that the sentence *would*

have been different. *See Puckett*, —— U.S. at ——, 129 S.Ct. at 1433; *see also Nichols*, 111 Hawai'i at 335, 141 P.3d at 982 (rejecting the federal plain error standard upon which *Puckett* relies).

Additionally, *Puckett's* "clear ruling" was *not* that "a breached plea agreement does not satisfy the plain error requirement" in every case, but, as the dissent concedes, only that there are situations where a breach on its own will not affect substantial rights. *Puckett* noted only *two* instances where "[t]he defendant whose plea agreement has been broken by the Government will not *always* be able to show prejudice[: 1] either because he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence that the prosecutor promised to request) or [2] because he likely would not have obtained those benefits in any event (as is seemingly the case here)." 129 S.Ct. at 1432–33.[48]

---

**45.** *Salazar* is inapposite, inasmuch as that court concluded "that the government honored its agreement with Salazar." 453 F.3d at 915. Moreover, the Seventh Circuit's dicta in that case regarding whether the breach hypothetically would have satisfied the plain error standard had one occurred is not applicable in this jurisdiction, as that court applied a rigid standard as opposed to that set forth in *Nichols*, requiring that the defendant show that *"but for* the breach of the plea agreement his sentence *would have been different." Id.* (emphases added). This court did not in *Nichols*, nor has it ever, stated that the error *must have* contributed to the conviction, but has only required that "there is a *reasonable possibility* that error *might* have contributed to conviction." *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (emphases added).

**46.** In *De La Garza*, 516 F.3d at 1269–70, the breach consisted of the prosecution's comments casting doubt on defendant's testimony regarding a fact that was stipulated to as part of the agreement. However, the defendant obtained the benefit of his bargain, because the district court explicitly credited the very testimony that the defendant claimed was undermined by the prosecution's comments. Also, despite not granting a downward sentencing departure, "the district court sentenced De La Garza at the low end of the [sentencing] Guidelines range" and its reasoning for denying the departure was totally separate and distinct from the issue in dispute, and thus would have been the same regardless of the stipulated fact at issue. *Id.* at 1270.

**47.** Likewise, in *Jensen*, there was little question that the court was entirely unaffected by the breach. The issue in *Jensen* was whether "the government was obligated to move for [an] addi-

tional level reduction" in sentence after "the district court granted a two-level reduction on its own motion[.]" *Jensen*, 423 F.3d at 854. Although answering that question in the affirmative, the *Jensen* court concluded that the failure to ask for an additional reduction had no consequence, because "Jensen was sentenced to 33 months, and the applicable guideline range absent the breach would have been between 27–33 months[,]" and "because in sentencing Jensen the district court explicitly deemed the guidelines as being advisory only." *Id.* at 854–55.

**48.** It is worth noting that, as acknowledged by the Supreme Court, the facts in *Puckett* were extremely unfavorable to the petitioner. In *Puckett*, the government had agreed as part of the plea deal to "agree[ ] that Puckett has demonstrated acceptance of responsibility and thereby qualifies for a three-level reduction in his offense level[,]" and "to request that Puckett's sentence be placed at the lowest end of the guideline level deemed applicable by the Court." —— U.S. at ——, 129 S.Ct. at 1426–27.

However, subsequent to the plea bargain, "Puckett assisted another man in a scheme to defraud the Postal Service[.]" *Id.* at ——, 129 S.Ct. at 1427. Therefore, at the time of sentence, the prosecutor "made clear that the [g]overnment opposed any reduction in Puckett's offense level[.]" *Id.* Based on the unique facts of *Puckett*, the Supreme Court noted:

It is true enough that when the Government reneges on a plea deal, the integrity of the system may be called into question, *but there may well be countervailing factors in particular cases. Puckett is again a good example: Given that he obviously did not cease his life of crime, receipt of a sentencing reduction for acceptance*

On the other hand, *Puckett* acknowledged that "*Santobello did hold that automatic reversal is warranted when objection to the Government's breach of a plea agreement has been preserved*[,]" based upon "a policy interest in establishing the trust between defendants and prosecutors that is necessary to sustain plea bargaining—an 'essential' and 'highly desirable' part of the criminal process," *id.* at ——, 129 S.Ct. at 1432 (emphasis added), and that "[i]t is true enough that when the Government reneges on a plea deal, *the integrity of the system may be called into question*," *id.* at ——, 129 S.Ct. at 1433 (emphasis added). The Court further recognized that "a breach is *undoubtedly a violation of the defendant's rights*[.]" *Id.* at ——, 129 S.Ct. at 1429 (citing *Santobello*, 404 U.S. at 262, 92 S.Ct. 495) (emphasis added)). *Puckett* only clarified that *for federal courts, under the federal plain error standard*, "impair[ment of] substantial rights" is not enough, as *Olano* requires that "a defendant 'must make a *specific showing of prejudice*[.]'" *Id.* at ——, 129 S.Ct. at 1433 (quoting *Olano*, 507 U.S. at 735, 113 S.Ct. 1770 (emphasis added).[49] Contrary to *Puckett*, under our law, plain error review is warranted where "the integrity of the system" is compromised. *See id.*

The prejudice standard enunciated in *Puckett*, and under the federal standard generally, is different from our law, requiring

that the defendant "*must demonstrate* that [the error] *affected the outcome* of the district court proceedings[,]" *id.* (citation omitted) (emphases added), as opposed to requiring a showing that there is "a *reasonable possibility* that [the] error *might have contributed* to conviction[,]" *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (citation omitted) (emphases added). As observed *supra*, this court flatly rejected adoption of the federal standard in *Nichols*, and distinguished our standard, stating that, "[i]n effect, we employ our HRPP Rule 52(b) discretion *to correct errors that are not harmless beyond a reasonable doubt* and to disregard those errors that are harmless beyond a reasonable doubt." *Id.* at 335, 141 P.3d at 982 (emphasis added). As the Supreme Court acknowledged in *Puckett*, *Santobello* held that a breach, at least where the unfulfilled promise acts as inducement for pleading guilty, *cannot be harmless. See Puckett*, —— U.S. at ——, 129 S.Ct. at 1431 (acknowledging that *Santobello* addressed the question of "[w]hether an error can be found harmless").

Furthermore, *Puckett* departed from federal precedent on breached plea agreements in significant respects, disavowing prior precedent indicating that a breach negates the voluntariness of the plea, and all but overturning *Santobello's* holding that "automatic reversal is warranted" where a plea agreement is breached.[50] In that connection, the

---

*of responsibility would have been so ludicrous as itself to compromise the public reputation of judicial proceedings.*
*Id.* at ——, 129 S.Ct. at 1433 (emphasis added). In this case, there are no "countervailing factors" that would have made following the agreement "so ludicrous as itself to compromise the public reputation of judicial proceedings." *See id.*

49. Many of our cases have not required such a "specific showing," but have noticed plain error because "substantial rights" were affected or denied. *See, e.g., Puaoi,* 78 Hawai'i at 191, 891 P.2d at 278 (holding that "[a] conviction based on insufficient evidence of any element of the offense charged *is a violation of due process and thus constitutes plain error*" (emphasis added)); *Fox*, 70 Haw. at 56, 760 P.2d at 676 (holding "that the admission of evidence grounded on statements made in the course of plea discussions was clearly [plain] error"); *Mitchell*, 2008 WL 4649426, at *13 (holding that "[i]f the psychologist-client privilege was destroyed, the exclusion/preclusion of Dr. Rhoades' testimony

would have seriously affected the fairness and integrity of Mitchell's trial, entitling Mitchell to a new trial to serve the ends of justice and prevent a denial of his fundamental right to a fair trial" without reference to whether exclusion of testimony prejudiced the outcome of the trial).

50. The dissent "cannot agree that the Supreme Court 'departed' from federal precedent[,]" dissenting opinion at 147, 223 P.3d at 212, in *Puckett*, because "*Santobello* was distinguishable from [*Puckett*] because the defendant in that case preserved error[,]" *id.* (citation omitted). Thus, the dissent attacks the majority for "clinging to the statements of *Santobello* and the Hawai'i case law that followed it[.]" *Id.* Again, despite the fact that the error is subject to plain error review in this case, we cannot agree that *Santobello* and the Hawai'i cases on breached plea agreements are not relevant to whether substantial rights were affected when the agreement was breached. Manifestly, in *Santobello* and *Adams*, the breach resulted in a denial of due process, which is why automatic reversal was required. The dissent's

Supreme Court "disavow[ed]" its "suggestion in *[Mabry]*, 467 U.S. [at] 509[, 104 S.Ct. 2543] . . . , that 'when the prosecution breaches its promise with respect to an executed plea agreement, *the defendant pleads guilty on a false premise,* and hence his conviction cannot stand.'" *Puckett*, —— U.S. at ——, 129 S.Ct. at 1430 n. 1 (emphasis added). However, contrary to *Puckett*, we continue to uphold this court's decision in *Yoon*, concluding that a breached plea agreement "raise[s] questions concerning fairness in the State's dealings with [the defendant] and the *voluntariness of his guilty pleas.*" 66 Haw. at 349, 662 P.2d at 1116 (emphasis added). Additionally, *Santobello* held that "*a constant factor* is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, *such promise must be fulfilled*[,]" *Santobello*, 404 U.S. at 262, 92 S.Ct. 495 (emphases added), a proposition that seems tenuous in the federal courts following *Puckett.*

The dissent concludes that it "cannot agree with the majority's decision to *erode* Hawaii's plain error standard[.]" Dissenting opinion at 147, 223 P.3d at 212 (emphasis added). But, the "ero[sion]" that the dissent refers to appears to relate to the inapplicable *federal* standard, and *Puckett* is significantly different from the Hawai'i plain error standard.

### XIII.

#### A.

The dissent argues that, in the cases cited by Petitioner, "the prosecution's *sentencing* statements were made despite promising to stand silent on the issue, whereas, here, the prosecution's statements addressed the sen-

tencing factors as *permitted* under the plea agreement." *Id.* at 148, 223 P.3d at 213 n. 13 (emphases in original).

As to all of its arguments, *see id.* at 148–50, 223 P.3d at 213-15, this contention is baseless because, as observed *supra*, when the assault was characterized by the prosecution as, *i.e.*, "brutality," the prosecution had *already agreed on the sentence to be imposed via the plea agreement and the only thing left to decide was whether the DANC plea was to be granted or not* and, as to that question, the prosecution had promised to *take no position*. Hence, the prosecution's arguments regarding "sentencing" were irrelevant to the punishment to be imposed and in contravention of its "no position" promise. Merely because some of the considerations that go to sentencing under HRS § 706–606 are similar to those considered for the DANCP motion, did not give the prosecution free rein to violate its promise under the guise that it was addressing the sentencing factors. *See Adams,* 76 Hawai'i at 413, 879 P.2d at 518 (stating that "to construe the promise to permit the prosecution's conduct would render the Government's promise practically meaningless, since it *would allow the Government to accomplish indirectly what it had promised not to do directly*" (quotation marks, brackets, and citation omitted) (emphasis added)). Indeed, because the DANCP motion was the only undecided element of the sentence, is presumably and precisely why the prosecution's obligation to stay silent on the DANCP was incorporated into the agreement.[51]

#### B.

The dissent seemingly believes that, because Petitioner's counsel also made an argu-

---

position is that, although a breach may constitute a denial of fundamental rights where it is objected to, that same breach would *not* violate due process if the defendant failed to object. We cannot agree with that view. Moreover, the dissent conveniently ignores *Puckett's* explicit departure from *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), which conflicts with *Yoon.*

**51.** The dissent does not argue that the prosecutor's statements were irrelevant to the DANCP.

Instead, the dissent argues that "[a] fair review of the record does not show that the prosecution's statements ... affected [Petitioner's] substantial rights[,]" because "[t]he court decided that, *based on the offense, as presented by both the prosecution* and [Petitioner's] counsel, it could not ... grant the DANCP motion." Dissenting opinion at 149, 223 P.3d at 214 (emphasis added). It is difficult to discern how the dissent comes to the conclusion that Petitioner's substantial rights were not affected, despite conceding that the court's decision was based, at least in part, on "the offense, *as presented by [] the*

ment related to the DANCP motion, and because the court was also made aware of some of the facts presented by the prosecution through other means, it makes no difference that the prosecution's comments may have influenced the court. Other courts have rejected similar arguments, recognizing the need for resentencing by a different judge, despite the fact that other facts in the record supported the sentence, because the effect of the prosecutor's comments is "difficult to erase":

> The effect of the government's breach of its commitment is *difficult to erase if the case remains before the same judge, because the judge's decision to deny the reduction was based on his assessment of the facts.* As the facts on remand will be the same, regardless of the arguments advanced by the [presentence report] and the government, it is likely that the same judge would reach the same result as he reached before. *On the other hand, had the government adhered to its commitment not to contest the defendant's request for a two-level reduction, there is some likelihood that the judge would never have given serious thought to denying it.* Resentencing before the same judge might therefore deprive the defendant of the benefit he was promised in the plea agreement.

*United States v. Enriquez,* 42 F.3d 769, 771–72 (2d Cir.1994) (emphases added). In that regard, the dissent attempts to parse the court's language, stating that, because the court said, "*although* it could find the defendant has had no record for fifty-one years, ... [t]he use of 'although' to preface the fact that [Petitioner] had no record for fifty-one years ... signals that the court recognized this fact as evidence to support the DANCP motion." Dissenting opinion at 149, 223 P.3d at 214 (brackets omitted) (emphasis in original).

But, that reasoning was precisely the reasoning urged by the *prosecutor* for denying DANCP, when she essentially argued that *despite* Petitioner's lack of any criminal history, the nature of the offense required that

he currently suffer the punishment, stating that "[h]e *does not have a prior criminal record, but ... this type of beating and brutality should not be accepted in our society.*" (Emphasis added.) The crux of the dissent's argument on this point seems to be that the court was aware of Petitioner's offense "because [Petitioner] was originally charged with Abuse of a Family or Household Member[.]" Dissenting opinion at 149, 223 P.3d at 214. Based on the express agreement that was entered into in this case, however, it was *not* appropriate for the prosecution to make statements that bore on the question of whether Petitioner's DANCP motion should be granted, which, at that juncture, was the *sole* issue to be determined. As noted before, the court's reasoning as to why the DANCP motion should not be granted directly reflected the rationale proffered by the prosecution.[52]

### C.

Several courts have recognized that it is virtually impossible for a reviewing court to determine whether the sentencing court's judgment was in fact influenced by improper factors. For example, in *State v. Dimmitt,* 665 N.W.2d 692, 697 (N.D.2003), the Supreme Court of North Dakota "conclude[d] [the defendant] has shown a manifest injustice requiring that he be afforded an opportunity to withdraw his guilty plea[,]" based on "the State's failure to make the agreed upon recommendation," because "[i]t is constitutionally impermissible to hold a defendant to his negotiated plea when the promises upon which it was based were not performed." That court recognized that "*[i]t is not possible, under the circumstances, to know whether the sentencing judge was influenced by the State's recommendation* of a ten year, rather than a five year, term of imprisonment." *Id.* (emphasis added).

Based on the difficulty that is often involved in discerning which sources of information ultimately contributed to a sentencing court's decision, the Seventh Circuit has for-

---

prosecution[.]" *See id.* at 149, 223 P.3d at 214 (emphasis added).

**52.** Notably, the dissent never states that the prosecutor's statements had no impact on the court's

decision, and, in fact, as stated *supra,* seems to concede that they did. *See* dissenting opinion at 149, 223 P.3d at 214.

mulated a standard requiring that "[a] petitioner need *only* show it is *'not improbable that the trial judge was influenced by improper factors in imposing sentence.'*" *United States. v. Barnes,* 907 F.2d 693, 696 (7th Cir.1990) (emphases added). In *Barnes,* the Seventh Circuit Court concluded that

> [t]he district court's comments at sentencing *raise sufficient doubts in our mind whether it imposed its sentence wholly without regard to the hearsay statements* of the confidential informant. *Granted, we cannot be sure that these statements influenced Judge Duff's sentencing determinations,* but given the closeness of this question—and the relatively low standard, under the law of this circuit, by which Barnes must prove his case—we vacate and remand so that Barnes may have an opportunity to challenge these statements.

*Id.* at 696–97 (emphases added). *See also United States v. Robin,* 545 F.2d 775, 779 (2d Cir.1976) (holding that "[w]here there is a *possibility* that sentence was imposed on the basis of false information or false assumptions concerning the defendant, an appeal will lie to this Court and *the sentence will be vacated*[,]" and noting that "*[a]ctual reliance need not be shown:* 'Here it is impossible to determine from the judge's remarks in imposing sentence ... whether he was at least in part influenced'" (quoting *McGee v. United States,* 462 F.2d 243, 245–46, 247 (2d Cir.1972)) (footnote omitted) (emphases added)); *State v. Rodgers,* 134 Ariz. 296, 655 P.2d 1348, 1359 (App.1982) ("remand[ing] for resentencing proceedings" because "viewing the sentencing as a whole, *it is impossible to speculate regarding the effect of the legal error on the trial judge's sentencing decision* as to each of the convictions" (emphasis added)).

### XIV.

Based on the foregoing, the ICA's judgment is reversed, the sentence of the court is vacated, and the case is remanded for resentencing before a different judge.

---

1. *See Price v. AIG Ins. Co., Inc.,* 107 Hawai'i 106, 111–12, 111 P.3d 1, 6–7 (2005) (explaining that "[t]here are sound reasons for the rule. It is unfair to the trial court to reverse on a ground that no one even suggested might be error. It is

*STATEMENT OF POINTS OF ERROR*

Dissenting Opinion by NAKAYAMA, J., in which substitute Justice HIRAI Joins.

I respectfully dissent. I agree with the ICA that Miller forfeited his claim for breached plea agreement when he failed to raise this issue before the trial court. Moreover, inasmuch as Miller does not point to any error committed by the trial court, and also failed to argue how the breached plea agreement affected his substantial rights, the Intermediate Court of Appeals ("ICA") would have had to notice this claim under the plain error standard *sua sponte.* The ICA did not gravely err in affirming Miller's conviction and sentence when it declined to notice plain error *sua sponte,* and the circumstances of the case do not warrant such review on certiorari.

### A. Failure to Preserve Breached Plea Agreement at Sentencing

First, I write to elaborate on the ICA's ruling that, because Miller did not raise the alleged breach at sentencing or in a Hawai'i Rules of Penal Procedure Rule 35 motion, he cannot raise the issue for the first time on direct appeal. *State v. Miller,* No. 28849, 118 Hawai'i 420, 191 P.3d 1097, 2008 WL 4195877 (App. Sept. 15, 2008) (SDO) at 3. In his application for writ of certiorari ("application"), Miller claims that the ICA gravely erred by holding that he did not properly preserve the issue of the breach of the plea agreement for appeal, and, therefore, waived it. Yet, in Miller's opening brief, Miller correctly explained that the breached plea agreement was to be reviewed for plain error, inasmuch as "failure to raise the issue of an alleged breach of a plea agreement at a sentencing proceeding may constitute a waiver of the issue." Moreover, it is well established that "challenges to such papers raised for the first time on appeal are waived absent plain error."[1] *Kawamata Farms, Inc. v.*

unfair to the opposing party, who did not have the opportunity to address the argument below. Finally, it does not comport with the concept of an orderly and efficient method of administration of justice." (quoting *Kawamata Farms,* 86 Ha-

*United Agri Prods.*, 86 Hawai'i 214, 248, 948 P.2d 1055, 1089 (1997).

The United States Supreme Court has recently affirmed the position held by a majority of federal circuit courts on this issue [2]— that a forfeited claim of a breached plea agreement must satisfy the "difficult" requirements of the plain error standard. *See Puckett v. United States ("Puckett II ")*, —— U.S. ——, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). In *Puckett II*, defendant James Puckett ("Puckett") entered into a plea agreement with the government, agreeing to plead guilty to the charges against him. *Id.* at 1426–27. In exchange, the government agreed to stipulate that Puckett qualified for a reduction in his offense level. *Id.* At sentencing, the probation officer noted that Puckett had admitted that he committed subsequent criminal acts following the plea agreement and recommended that he receive no reduction in his offense level. *Id.* at 1427. Puckett's counsel objected to this report based on the Government's prior recommendation that the court reduce the offense. *Id.*

The district court declined to grant the reduction in his offense level. *Id.*

On appeal to the United States Fifth Circuit Court of Appeals, Puckett argued for the first time that the government breached the plea agreement at sentencing. *Id.* The government conceded that it violated the plea agreement, but contended that Puckett forfeited this claim when he failed to raise it in the District Court and that the plain-error standard of review applied. *Id.* The Fifth Circuit Court of Appeals agreed and held that, although error (the breached plea agreement) had occurred and was obvious, Puckett did not show that the error affected his substantial rights. *Id.* at 1428 (citing *United States v. Puckett ("Puckett I ")*, 505 F.3d 377, 388 (5th Cir.2007)). Accordingly, the Court of Appeals affirmed the conviction and sentence. *Id.* On certiorari, the Supreme Court affirmed the Court of Appeals' decision, holding that the plain-error four-pronged test "does apply and in the usual fashion" to a "forfeited claim" that the gov-

wai'i at 248, 948 P.2d at 1089)); *see also United States v. Carr*, 170 F.3d 572, 577 (6th Cir.1999) ("If the system is to work and if appellate review is to be meaningful, it is absolutely essential that a defendant raise all objections to the sentence before the sentencing judge in the first instance. For this reason, the law has developed that a failure to object results in a waiver." (Citation and internal quotation marks omitted.)).

2. The majority of the federal circuit courts of appeal hold that a claim for a breached plea agreement is waived if not raised prior to appeal and may only be reviewed for plain error. *See United States v. Cannel*, 517 F.3d 1172, 1175–76 (9th Cir.2008) (noting that the court would "normally review [defendant's] claim that the government breached his plea agreement de novo," but that, because the defendant failed to assert this claim at the sentencing hearing, he "failed to preserve this issue for appeal" and "forfeited this claim"); *United States v. Rivera–Rodriguez*, 489 F.3d 48, 57 (1st Cir.2007) ("Ordinarily, whether the government has breached its plea agreement with a defendant is a question of law and our review is plenary." Where as here, however, the "defendant ... does not bring that breach to the attention of the sentencing court, we review only for plain error." (Citation and internal quotation marks omitted.)); *United States v. Jensen*, 423 F.3d 851, 854 (8th Cir.2005) ("Because Jensen failed to allege a breach at sentencing, we are limited to reviewing his now-raised challenge for plain error[.]"); *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir.2004) ("Where, as

here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain ... before we may exercise our discretion to correct the error.'" (Citation and block format omitted.)); *United States v. Brown*, 328 F.3d 787, 790 (5th Cir.2003) ("[B]ecause [defendant] failed to object on this basis at sentencing, we review this issue *only* for plain error." (Emphasis and brackets added.)); *United States v. Thayer*, 204 F.3d 1352, 1356 (11th Cir.2000) (holding that failure to object to breach of plea agreement at trial "waived the issue on appeal, unless the deviation can overcome the plain error standard"); *United States v. Hicks*, 129 F.3d 376, 378 (7th Cir.1997) ("A defendant's failure to allege the breach of a plea agreement at sentencing waives the matter for appeal."); *United States v. McQueen*, 108 F.3d 64, 66–67 (4th Cir. 1997) (holding that, because the defendant raises the claim of a breached plea agreement for the first time on appeal, the court "must affirm the sentence imposed ... unless [it] find plain error"). Even Miller cited to *United States v. Flores–Payon*, 942 F.2d 556 (9th Cir.1991) in his opening brief to support the rule that "failure to raise the issue of an alleged breach of a plea agreement at sentencing proceeding may *constitute a waiver of the issue.*" (Emphasis added.) In *Flores–Payon*, the court of appeals explained that, in light of "considerations of fairness and judicial efficiency," issues not presented to the trial court are generally waived. *Id.* at 558–60.

ernment breached its obligations under the plea agreement. *Id.* at 1428.

The Court observed the well-established rule that in order to properly preserve an error during a judicial proceeding, a litigant must bring the error to the attention of the tribunal. *Id.* Otherwise,

> [t]his claim for relief from the error is forfeited. "No procedural principle is more familiar to this Court than that a ... right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it."

*Id.* (quoting *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944)). The Supreme Court warned that "[f]ailure to abide by this contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error." *Id.* at 1429. (citation omitted). The Court explained why "appellate-court authority to remedy the error ... is strictly circumscribed," as follows:

> There is good reason for this; anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal. *United States v. Padilla,* 415 F.3d 211, 224 (1st Cir.2005) (en banc) (Boudin, C.J., concurring).
>
> This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them. That court is ordinarily in the best position to determine the relevant facts and adjudicate the dispute. In the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome. And of course the contemporaneous-objection rule prevents a litigant from "sandbagging" the court-remaining silent about his objection and belatedly raising the error only if the case does not conclude in his

favor. *Cf. Wainwright v. Sykes,* 433 U.S. 72, 89, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *see also United States v. Vonn,* 535 U.S. 55, 72, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002).

*Id.* at 1428 (some internal quotation marks omitted) (brackets omitted).

Based on federal case law and this jurisdiction's rulings on waiver, the ICA did not gravely err when it determined that Miller waived his claim of a breached plea agreement. The ICA was limited to reviewing the claim of a breached plea agreement under the plain error standard.

### B. Extending Plain Error Review To Errors Committed By the Parties Rather Than By the Trial Court

Miller's opening brief did not conform with HRAP Rule 28(b)(4) inasmuch as it did not state the error committed by the court. More specifically, Miller's opening brief raised as a point of error that "[t]he prosecutor violated the plea agreement," but it did not state "the alleged error committed *by the court or agency*," as required by HRAP Rule 28(b)(4). (Emphasis added.)

Under the plain language of this rule, each point must state "the alleged error committed by the court." HRAP Rule 28(b)(4); *see also O'Connor v. Diocese of Honolulu,* 77 Hawai'i 383, 385, 885 P.2d 361, 363 (1994) (providing that HRAP Rule 28(b)(4) requires that "[p]oints must 'refer to the alleged error committed by the court' "). However, Miller, at best, gave the prosecution *notice* that he needed to satisfy plain error requirements for appellate review of his breached plea agreement claim when he (1) set forth this standard in the standards of review section and (2) claimed that the ICA should consider this issue "even though raised for the first time on appeal, under [Hawai'i Rules of Penal Procedure ("HRPP") Rule 52] and the plain error doctrine." Yet, mere "notice" to the prosecution does not satisfy the HRAP Rule 28(b) opening brief requirement that each point of error state the error committed by the court or agency.[3]

---

**3.** The majority notes that I "fail[ ] to elaborate as to what is the legal significance of 'mere notice,' why 'mere notice' does not satisfy HRAP Rule 28(b), or why [Miller's] express discussion of

Rather than clearly explaining how Miller has satisfied HRAP Rule 28(b)(4), the majority attempts to obfuscate the points raised in the dissenting opinion by arguing at length that federal circuit courts "recognized that the breach should be considered pursuant to plain error review." *See* majority at 109, 223 P.3d at 174 n. 12 (citing *Puckett II*, 129 S.Ct. 1423; *United States v. Cannel*, 517 F.3d 1172, 1176–77 (9th Cir.2008); *United States v. Rivera–Rodriguez*, 489 F.3d 48, 57 (1st Cir.2007); *United States v. McQueen*, 108 F.3d 64 (4th Cir.1997); *United States v. Salazar*, 453 F.3d 911, 913, 915 (7th Cir.2006); *United States v. Jensen*, 423 F.3d 851, 854–55 (8th Cir.2005); *United States v. Swanberg*, 370 F.3d 622, 627 (6th Cir.2004); *United States v. Brown*, 328 F.3d 787, 789, 791 (5th Cir.2003); *United States v. Barnes*, 278 F.3d 644, 647 (6th Cir.2002); *United States v. Thayer*, 204 F.3d 1352, 1356 (11th Cir.2000)). However, the cited federal circuit cases are inapposite because, in contrast to Miller, the appellants in the cited federal cases were not required to follow HRAP Rule 28(b)(4).

Moreover, I am not saying that appellate courts are precluded from noticing plain error in reviewing a case that involves a breached plea agreement.[4] In fact, as I state *infra* on page 144, 223 P.3d at 209 of my dissent, I agree that "breaches of plea agreements" may "provide appropriate bases for appellate review under the plain error standard."

However, the majority insists that Miller satisfied HRAP Rule 28(b)(4) because he "succinctly stated in his points of error section fundamental errors that were commit-

ted, writing that ... *the prosecutor violated the plea agreement*[.]" Majority at 107–08, 223 P.3d at 172–73 (emphasis added). Yet, it does not point out how or where in his *points of error section* Miller stated the "error committed *by* the court," as required by HRAP Rule 28(b)(4). (Emphasis added.) Stating an error that was committed *in the court* (*i.e.*, "the prosecutor violated the plea agreement,") is not the same as an error committed *"by the court,"* which is the requirement of HRAP Rule 28(b)(4). (Emphasis added.) HRAP Rule 28(b)(4) unequivocally requires that the appellant state the "error committed by the court."

In my view, the majority ignores the requirement of HRAP Rule 28(b)(4), and instead rewrites this rule. Compliance with HRAP Rule 28(b)(4) does not turn on correctly naming who—the court, or a particular party—is at fault for the court's error. *See* majority at 109, 223 P.3d at 174. Rather, the rule requires that, in *"all proceedings* in the Hawai'i appellate courts except as otherwise provided by statute, Rules of the Supreme Court, or Rules of the Intermediate Court of Appeals," *see* HRAP Rule 1(a) (emphases added), the appellant states the "alleged error committed by the court." *See, e.g., State v. Merino*, 81 Hawai'i 198, 201, 915 P.2d 672, 675 (1996) (reviewing the appellant's point of error that the "circuit court ... erred in allowing him to plead no contest in the first place because ... the complaint charging him with criminal conspiracy was fatally defective, giving rise to plain error," because it

---

plain error review served only to provide 'notice' as opposed to actually raising the issue[.]'' Majority at 110, 223 P.3d at 175. Quite simply, mere notice-discussion of the plain error standard in the standards of error section-does not satisfy HRAP Rule 28(b)(4), because the rule does not require "notice," but, rather, a statement as to "the alleged error committed by the court or agency." Providing notice through stating the *standard of review*, as required by HRAP Rule 28(b)(5), does not satisfy HRAP Rule 28(b)(4)'s requirement that the point state the error.

**4.** The majority cites to cases that reviewed cases that involved allegations of breached plea agreements, but those cases do not quote to the appellants' points of error or otherwise indicate that the appellants in those cases failed to cite to a court's error in compliance with HRAP Rule

28(b)(4). *See State v. Chincio*, 60 Haw. 104, 105, 588 P.2d 408, 409 (1978) (observing that the appellant moved to withdraw his guilty plea); *State v. Waiau*, 60 Haw. 93, 95, 588 P.2d 412, 414, (1978) ("On this appeal, appellant presents only the question of the denial of his motion for specific performance of the plea bargain and for the change of the sentencing judge."); *State v. Schaefer*, 117 Hawai'i 490, 496, 184 P.3d 805, 811 (App.2008); *State v. Abbott*, 79 Hawai'i 317, 318, 901 P.2d 1296, 1297 (App.1995) ("Defendant therefore urges us to reverse the November 17, 1992 Order of the Second Circuit Court which (1) denied his Motion for Specific Performance of Plea Agreement and for Sentencing Before a New Judge...."). These cases do not permit this court to disregard the requirements of HRAP Rule 28(b)(4).

"fail[ed] to sufficiently allege the elements of conspiracy").

In *Merino*, the defendant pointed out the *circuit court's* error "in allowing him to plead no contest" where "the complaint charging him with criminal conspiracy was fatally defective." 81 Hawai'i at 201, 915 P.2d at 675. Although the complaint's defect was technically the "fault" of the prosecution and was the reason for the court's error, the defendant complied with HRAP Rule 28(b)(4) by stating the court's error. *Id.* Similarly, here, where the prosecution's breach of the plea agreement may have been the root of the court's error, Miller was required to state the court's alleged error.

Under the majority's ruling, however, an opening brief will be reviewed where its point of error section states the alleged error *committed by any party* as long as fault may be attributed to that party. It is alarming that, under the majority's construction of HRAP Rule 28(b)(4), Hawai'i appellate courts are now *required* to review an error committed by *any party*—the prosecution or defendant in a criminal case, or the plaintiff, defendant, co-party in a *civil case*—if that party is responsible for the "error." Consequently, where the appellant states as a point of error *any* party's error (and by implication, the appellant's own error in failing to object to the alleged error), the appellate court *must* rule as to this point, regardless of whether it is the appellant's *first* objection to the error.

The majority's opinion, therefore, requires Hawaii's appellate courts to review errors committed by parties in addition to the trial court. This results in the appellate court *first* determining whether the appellant's objection has merit, though that role is reserved for the trial court. As this court explained,

> [t]here are sound reasons for this rule. It is unfair to the trial court to reverse on a ground that no one even suggested might be error. It is unfair to the opposing party, who might have met the argument not made below. Finally, it does not comport with the concept of an orderly and efficient method of administration of justice.

*Kawamata Farms, Inc. v. United Agri Prods.*, 86 Hawai'i 214, 248, 948 P.2d 1055, 1089 (1997) (citation omitted).

*Price*, 107 Hawai'i at 111, 111 P.3d at 6. Thus, I cannot agree with the majority's ruling that "[n]o further detail was required" than stating the *prosecutor's* error. *See* majority at 108, 223 P.3d at 173. To reiterate, in my view, HRAP Rule 28(b)(4) requires stating "the alleged error committed *by the court or agency.*" (Emphasis added.)

## C. Reviewing For Plain Error *Sua Sponte*

In his application, Miller seeks review of the ICA's ruling, apparently under a *de novo* standard, based on (1) past case law reviewing breached plea agreements, and (2) the prosecution's alleged breach of the plea agreement. Miller recited case law demonstrating that a breached plea agreement has affected other defendants' substantial rights, but he did not show how he, specifically, suffered prejudice from the alleged breach of the plea agreement, *i.e.,* evidence that the court would have granted the DANCP motion if not for the breach. He claims generally that the breach "affected [his] substantial rights by influencing whether he would be granted a DANCP," but he does not explain how the court's error had this effect. Miller thus seeks to inflate the "plain error standard"—in his view, *any* time the prosecution breaches a plea agreement, the defendant is "prejudiced" and his or her "fundamental rights [were] affected." Miller alleges that his claim should be reviewed under the plain error standard, but he actually argues for a *de novo* standard of review for forfeited claims of breached plea agreements. As such, in order to scrutinize Miller's claim under the plain error standard, the majority is required to inject its own analysis as to the effect of the prosecution's breach of the plea agreement. *See* majority at 106–07, 223 P.3d at 171–72; HRAP Rule 40.1 (providing that, when an issue is not presented in accordance with the appellate rules, this court, "at its option, may notice a plain error not presented").

Hawai'i appellate courts may notice error not raised on appeal and at the trial court,

pursuant to HRAP Rule 28(b)(4) and HRPP Rule 52(b), and they also have the "inherent power to notice plain error *sua sponte.*" *State v. Fields,* 115 Hawai'i 503, 528–29, 168 P.3d 955, 980–81 (2007) (citations omitted). This court has not previously articulated a distinct standard for noticing plain error *sua sponte.* However, because this court may only notice a breached plea agreement affecting Miller's substantial rights *sua sponte,* I believe it is necessary to review this court's opinions finding plain error *sua sponte.* Upon review, it is apparent that we have exercised this power, and that it is appropriate to do so, only in extraordinary circumstances.

At the outset, I observe that this court has stated that the "appellate court's discretion to address plain error is *always* to be exercised *sparingly.*" *Okada Trucking Co., Ltd.*

*v. Bd. of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002) (emphases added); *see Honda v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i,* 108 Hawai'i 212, 239, 118 P.3d 1155, 1182 (2005) (Levinson, J., dissenting); *Liftee v. Boyer,* 108 Hawai'i 89, 98, 117 P.3d 821, 830 (App.2004). We have *repeatedly* stated that the *power* to exercise plain error is one to be used sparingly.[5] *See Fox,* 70 Haw. at 56, 760 P.2d at 676. According to the majority, *Fox,* and the cases that adopted its statement that the "power to deal with error is one to be exercised sparingly and with caution," simply "indicate that the term 'sparingly' refers to the limitation *already in place in HRPP Rule 52(b)* that the error must be one 'affecting substantial rights.'" Majority at 117, 223 P.3d at 182 (emphasis added). Yet, the *Fox* decision did

5. Miller's claim that "Hawai'i appellate courts have *not hesitated* to invoke the plain error doctrine" is wrong. (Emphasis added.) (Citing to *State v. Nichols,* 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) and *State v. Sanchez,* 82 Hawai'i 517, 524–25, 923 P.2d 934, 941–42 (App.1996).) Simply because our courts are authorized to notice plain error, *see* HRPP Rule 52, and have decided to notice plain error, it does not follow that this standard is exercised without hesitation. The ICA and this court have stated many times that appellate "power to deal with plain error is one to be exercised sparingly." *See State v. Mars,* 116 Hawai'i 125, 132, 170 P.3d 861, 868 (2007); *Fields,* 115 Hawai'i at 529, 168 P.3d at 981; *State v. Frisbee,* 114 Hawai'i 76, 85, 156 P.3d 1182, 1191 (2007) (Nakayama, J., dissenting); *State v. Rodrigues,* 113 Hawai'i 41, 47, 147 P.3d 825, 831 (2006); *Nichols,* 111 Hawai'i at 335, 141 P.3d at 982; *Honda,* 108 Hawai'i at 239, 118 P.3d at 1182 (Levinson, J., dissenting) ("We have noted that 'the appellate court's discretion to address plain error is always to be exercised sparingly[.]'" (quoting *Okada Trucking Co.,* 97 Hawai'i at 458, 40 P.3d at 81); *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001); *State v. Kotis,* 91 Hawai'i 319, 343, 984 P.2d 78, 102 (1999); *State v. Lee,* 83 Hawai'i 267, 274, 925 P.2d 1091, 1098 (1996); *State v. Nguyen,* 81 Hawai'i 279, 293, 916 P.2d 689, 703 (1996); *State v. Kaiama,* 81 Hawai'i 15, 25, 911 P.2d 735, 745 (1996); *State v. Baron,* 80 Hawai'i 107, 117, 905 P.2d 613, 623 (1995); *State v. Puaoi,* 78 Hawai'i 185, 191, 891 P.2d 272, 278 (1995); *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 75 (1993); *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 676 (1988); *State v. Kiaaina,* No. 29034, 119 Hawai'i 321, 196 P.3d 323, 2008 WL 4900553 (App. Nov. 14, 2008) (SDO); *State v. Mitchell,* No. 28079, 195 P.3d 711, 2008 WL 4649426 (App. Oct. 17, 2008) (mem.); *State v. Kaahui,* No. 28487, 118 Hawai'i 418, 191 P.3d

1095, 2008 WL 4057645 (App. Aug. 29, 2008) (mem.); *State v. Meyers,* 112 Hawai'i 278, 290, 145 P.3d 821, 833 (App.2006); *State v. Randles,* 112 Hawai'i 192, 194, 145 P.3d 735, 737 (App. 2006); *State v. Chin,* 112 Hawai'i 142, 147 n. 4, 144 P.3d 590, 595 n. 4 (App.2006); *State v. Kiakona,* 110 Hawai'i 450, 458 n. 4, 134 P.3d 616, 624 n. 4 (App.2006); *State v. Yoo,* 110 Hawai'i 145, 150, 129 P.3d 1173, 1178 (App. 2006); *In re Doe Children,* 108 Hawai'i 134, 141, 117 P.3d 866, 873 (App.2005); *State v. Gray,* 108 Hawai'i 124, 134 n. 9, 117 P.3d 856, 866 n. 9 (App.2005); *Liftee v. Boyer,* 108 Hawai'i 89, 98, 117 P.3d 821, 830 (App.2004); *State v. Smith,* 106 Hawai'i 365, 375, 105 P.3d 242, 252 (App. 2004); *State v. Lioen,* 106 Hawai'i 123, 128, 102 P.3d 367, 372 (App.2004); *State v. Carvalho,* 106 Hawai'i 13, 16 n. 6, 100 P.3d 607, 610 n. 6 (App.2004); *State v. Malivao,* 105 Hawai'i 414, 417, 98 P.3d 285, 288 (App.2004); *State v. Bernisa,* 104 Hawai'i 387, 392, 90 P.3d 1256, 1261 (App.2004); *State v. Coffee,* 104 Hawai'i 193, 197, 86 P.3d 1002, 1006 (App.2004); *State v. Aki,* 102 Hawai'i 457, 459, 77 P.3d 948, 950 (App. 2003); *State v. Mara,* 102 Hawai'i 346, 352, 76 P.3d 589, 595 (App.2003); *State v. Martin,* 102 Hawai'i 273, 278, 75 P.3d 724, 729 (App.2003); *State v. Sugihara,* 101 Hawai'i 361, 364, 68 P.3d 635, 638 (App.2003); *State v. Gunson,* 101 Hawai'i 161, 162 n. 4, 64 P.3d 290, 291 n. 4 (App.2003); *State v. Kossman,* 101 Hawai'i 112, 122 n. 10, 63 P.3d 420, 420 n. 10 (App.2003); *State v. Lewis,* 94 Hawai'i 309, 313, 12 P.3d 1250 (App.2000), *aff'd,* 94 Hawai'i 292, 12 P.3d 1233).

Our court has used the word "sparingly" in order to *limit* appellate courts from noticing plain error. *See* The Random House College Dictionary 1260 (rev'd ed.1975) (defining "sparing" as "3. lenient or merciful. 4. frugally restricted. 5. scanty; limited-[sparingly], adv.").

not merely restate HRPP Rule 52(b)—rather, it added a crucial element to this rule. *Fox* stated that under HRPP Rule 52(b), appellate courts "have the *power, sua sponte,* to notice plain errors ... though they were not properly brought to the attention of the trial judge or raised on appeal," 70 Haw. at 56, 760 P.2d at 676 (emphasis added), and subsequently *limited* this power, stating, "this *power to deal with error* is *one to be exercised sparingly* and *with caution* because the rule represents a departure from the presupposition of the adversary system." *Id.; see Fields,* 115 Hawai'i at 529, 168 P.3d at 981 (explaining that the power to exercise plain error is to be exercised sparingly because it "represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes"); *see also United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (stating that appellate courts may "correct *particularly egregious errors* on appeal regardless of a defendant's trial default" (emphasis added)). Although court rules may also reflect this concern, an appellate court's power is actually narrowed by case law.

*Fields* elaborated on this standard by quoting other courts highlighting the importance of the adversary system, as follows:

See also Penson v. Ohio, 488 U.S. 75, 84[, 109 S.Ct. 346, 102 L.Ed.2d 300] (1988) ("This system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question."); Hines v. United States, 971 F.2d 506, 509 (10th Cir.1992) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one.") (Citing United States v. Burke, 504 U.S. 229, 249[, 112 S.Ct. 1867, 119 L.Ed.2d 34] (1992) (Scalia, J., concurring).); Ford v. United States, 533 A.2d 617, 624 (D.C. 1987) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the

parties before them.") (Citation omitted.); Carducci v. Regan, 714 F.2d 171, 177 (D.C.Cir.1983) ("Failure to enforce this requirement will ultimately deprive us in substantial measure of that assistance of counsel which the system assumes—a deficiency that we can perhaps supply by other means, but not without altering the character of our institution.").

115 Hawai'i at 529, 168 P.3d at 981.

When an appellate court notices plain error *sua sponte,* it "depart[s] from the position usually presupposed by the adversary system that a party must look to his counsel to protect him and that he must bear the cost of the mistakes of his counsel" *twice:* first, when the counsel failed to preserve the error at the lower court and, subsequently, when the counsel failed to argue the plain error on appeal. The appellate court must seek power to notice plain error *sua sponte* from both HRAP Rule 28(b)(4) and HRPP Rule 52(b). The power to deal with plain error *sua sponte,* therefore, should be exercised even more "sparingly" than the "power to deal with plain error." As such, this court has stated that an appellate court should notice plain error *sua sponte* in "*exceptional circumstances.*" *Fox,* 70 Haw. at 56, 760 P.2d at 675–76 (" 'In *exceptional circumstances,* especially in criminal cases, *appellate courts,* in the public interest, *may, of their own motion, notice errors* to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.' " (Emphases added and quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936).)). The circumstances should be exceptional for the court to overcome the fact that the error was not presented at the trial court or on appeal. *See State v. Ruiz,* 49 Haw. 504, 506, 421 P.2d 305, 308 (1966) ("The power to notice error on the court's own motion will be exercised only in an *exceptional case.*" (Emphasis added.)); *see also State v. Schroeder,* 76 Hawai'i 517, 532, 880 P.2d 192, 207 (1994) ("[P]oints of error not raised on appeal in accordance with Hawai'i Rules of Appellate Procedure (HRAP) 28(b)(4) (1993) will *ordinarily* be disregarded." (Emphasis added.)).

This court has clearly sought to limit plain error review. Moreover, Hawaii's case law provides that plain error may be noticed to correct errors "which *seriously affect* the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (quoting *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (internal quotation marks omitted) (emphasis added) (formatting altered)). I do not believe that the majority has a reasonable basis to now question our long-held practice to consider the *nature of the error* or its impact when reviewing for plain error.

The majority also posits that the language of HRAP Rule 28(b)(4) and HRPP Rule 52(b) already "encompass a preference for the adversarial system." *See* majority at 117, 223 P.3d at 182 n. 24. HRAP Rule 28(b)(4) does provide that "[p]oints not presented in accordance with this section *will* be disregarded," (emphasis added), and that an appellate court "*may* notice a plain error not presented." Yet, appellate review of plain error is confined and explained by case law. *See Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (" 'This court will apply the plain error standard of review to correct errors which *seriously affect* the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.' " (Quoting *Sawyer*, 88 Hawai'i at 330, 966 P.2d at 642.)); *see also* majority at 100, 223 P.3d at 165. In the same way, the mere recitation of the HRAP 28(b)(4) and HRPP Rule 52(b) requirements is insufficient; the constraints of appellate review of plain error must continue to be explained by appellate *case law*. Although an appellate court "may notice a plain error not presented," this court's discretion to notice plain error *sua sponte* should be narrowed and explained by case law.

Dismissing the value of our court's explanations and discussions of these rules, and seeking to rely solely on HRPP Rule 52(b) and HRAP Rule 28(b)(4), *see* majority at 118, 223 P.3d at 183, creates a vague and ambiguous standard. The mere acknowledgment

that "an error may be noticed despite counsel's failure to raise it" *see* majority at 118, 223 P.3d at 183, does not provide any explanation as to when it is appropriate for an appellate court to notice plain error. Consequently, this decision will result in confusion as to this court's application of the plain error rule.

The majority further disregards the dangers present when reviewing for plain error *sua sponte*, and plain error generally, claiming that a two-tiered standard for reviewing plain errors would "invite not only due process, but equal protection objections" because it "would create two classes of defendants who could have suffered the *same substantial right injury*, granting one relief but denying it to the other on the circumstance that plain error was expressly raised in one instance but not in the other." Majority at 119, 223 P.3d at 184 (emphasis added). Nevertheless, Hawaii's appellate courts require parties to follow numerous procedural court rules, and have dismissed parties' claims or appeals in accordance with rules and case law, when the rules were not followed, even where another appellant could have suffered the "same substantial right injury." *See, e.g., Bank of Hawai'i v. Shinn*, 120 Hawai'i 1, 8, 200 P.3d 370, 377 (2008) (disregarding appellant's argument under HRAP Rule 28(b)(7) where appellant failed to make a "discernable argument" in support of his claim); *In re Contested Case Hearing on Water Use Permit Application Filed by Kukui (Molokai)*, 116 Hawai'i 481, 506, 174 P.3d 320, 345 (2007) (disregarding appellant's point of error under HRAP Rule 28(b)(4), because appellant failed to indicate where in the record the factual assertions are supported); *Poe v. Hawai'i Labor Relations Bd.*, 98 Hawai'i 416, 419, 49 P.3d 382, 385 (2002) (dismissing appellant's appeal because it was untimely under HRAP Rule 4(a)(1)). An appellant who fails to comply with this rule should, like other rules, be subjected to the consequences that are provided by case and statutory laws.

A review of the small number of cases in which this court has noticed plain error *sua sponte*[6] indicates that it is only appropriate to

6. In Justice Acoba's dissenting opinion in *Fields*,

he stated, among other things, that "even if

do so in extraordinary circumstances.[7] *See*

Fields had failed to raise these issues in his certiorari application," the court has the "inherent power to notice plain error sua sponte." 115 Hawai'i at 536–37, 168 P.3d at 988–89 (Acoba, J., dissenting). He further stated that "this court has many times employed" this power, supporting this statement with the following cases:

> In re Doe, 102 Hawai'i 75, 87, 73 P.3d 29, 41 (2003) [ (Acoba, J., dissenting) ]; *State v. McGriff*, 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (citing *State v. Grindles*, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989) (the power to *sua sponte* notice plain errors or defects affecting substantial rights' clearly resides in this court (quoting *State v. Hernandez*, 61 Haw. 475, 482, 605 P.2d 75, 79 (1980)))); *State v. Iaukea*, 56 Haw. 343, 355, 537 P.2d 724, 733 (1975) (This court ha[s] the power, *sua sponte*, to notice plain errors or defects in the record affecting substantial rights not properly brought to the attention of the trial judge or raised on appeal (citing *State v. Yoshino*, 50 Haw. 287, 289, 439 P.2d 666, 668 (1968); *State v. Cummings*, 49 Haw. 522, 528, 423 P.2d 438, 442 (1967); *State v. Ruiz*, 49 Haw. 504, 507, 421 P.2d 305, 308 (1966))).
> *Id.*

Again, I do not dispute an appellate courts' ability to notice plain error *sua sponte*. *See supra* at 138, 223 P.3d at 203 (quoting *Fields*, 115 Hawai'i at 528–29, 168 P.3d at 980–81 (stating that Hawai'i appellate courts have the "inherent power to notice plain error *sua sponte* ") (citations omitted)). However, I note that many of these cited cases declined to notice plain error. *See Doe*, 102 Hawai'i at 77, 73 P.3d at 30 (dismissing the appeal on the grounds that the appeal was moot); *McGriff*, 76 Hawai'i at 155, 871 P.2d at 789 (examining the defendant's issue raised on appeal even though it did not conform with the HRAP Rule 28(b)(4) requirements, but finding that there was no plain error and affirming the defendant-appellant's conviction); *Iaukea*, 56 Haw. at 357, 537 P.2d at 734 (recognizing the court's power to review for plain error but ruling that the trial court did not err in giving a particular jury instruction); *Cummings*, 49 Haw. at 531, 423 P.2d at 444 (recognizing the power to notice plain error *sua sponte*, but ruling that there was no error in the admission of evidence). In *Yoshino*, this court reviewed defendant-appellant's allegation that the trial court "prejudicial[ly] err[ed]" in examining and discrediting the defendant's witnesses for *plain error*, but, inasmuch as the defendant alleged error for the first time on appeal, this court did not actually notice plain error *sua sponte*. *See* 50 Haw. at 290, 439 P.2d at 668.

7. The cases that did notice plain error involved *extraordinary* errors. *See State v. Staley*, 91 Hawai'i 275, 287, 982 P.2d 904, 916 (1999) (holding that the circuit court's failure to establish on the record that defendant's decision not to testify was made knowingly and voluntarily constituted plain error); *State v. Mahoe*, 89 Hawai'i 284,

*State v. Ruggiero*, 114 Hawai'i 227, 239, 160 285, 972 P.2d 287, 288 (1998) (noticing plain error where the trial court failed to give a *unanimity instruction*, inasmuch as defendant's constitutional rights to due process and unanimous jury verdict were violated); *State v. Richie*, 88 Hawai'i 19, 33–36, 960 P.2d 1227, 1241–43 (1998) (holding that the trial court plainly erred by *convicting defendant on two counts under two different statutes* that seek to redress the same conduct); *State v. Loa*, 83 Hawai'i 335, 357–59, 926 P.2d 1258, 1280–82 (1996) (holding that circuit court plainly erred in allowing jury instruction for the *nonexistent offense* of "attempted reckless manslaughter" as a purported "lesser included offense" of attempted first degree murder, where appellant was convicted of the nonexistent offense); *State v. Gaylord*, 78 Hawai'i 127, 150, 890 P.2d 1167, 1190 (1995) (noticing that the court plainly erred by sentencing defendant to consecutive indeterminate terms of *imprisonment* for the sole reason of ensuring payment of *restitution* in contravention of the philosophy that imprisonment "may properly be imposed *only* if the penal objectives sought to be achieved include retribution (*i.e.*, 'just deserts') and deterrence" (emphasis added)); *Schroeder*, 76 Hawai'i at 532, 880 P.2d at 207 (holding that the circuit court's *sua sponte* ordering of *two* concurrent mandatory terms of imprisonment-even though the prosecution explicitly sought only *one* mandatory minimum term of imprisonment and the defense counsel relied on the prosecution's explicit "premise in fashioning his sentencing arguments"—constituted plain error affecting the defendant's substantial rights because he was not given notice and an opportunity to be heard with regard to the *second* mandatory minimum term of imprisonment ordered *sua sponte* by the circuit court); *State v. Lemalu*, 72 Haw. 130, 136, 809 P.2d 442, 445 (1991) (emphasizing that "the use of multiple verdict forms addressing both DUI counts does not, in and of itself, constitute reversible error," but recognizing plain error where DUI was the only offense presented to the jury, and the wording of the jury instructions in question, together with the multiple verdict forms, could probably "mislead the jury into believing that the two methods of proving DUI constitute two separate offenses" when, in that case, "DUI is one offense"); *State v. Hirayasu*, 71 Haw. 587, 589, 801 P.2d 25, 26 (1990) (observing that the "statute charged only involves the use of signs" and not the defendant's conduct at the time of the incident, but recognizing plain error because the trial court expressly found that the defendant's conduct supported his conviction); *Grindles*, 70 Haw. at 530–32, 777 P.2d at 1189–90 (concluding that "the trial court's action in compelling Appellant to put on his evidence prior to the conclusion of the State's evidence violated his due process right to a fair trial," even though defendant did not raise a due process claim on appeal); *Hernandez*, 61 Haw. at 481–82, 605 P.2d at 79 (noticing plain error *sua sponte* where

P.3d 703, 715 (2007) (plurality opinion) (holding that the district court plainly erred in convicting defendant-appellant as a second time drinking under the influence offender, where the *complaint against the defendant failed to allege the elemental attendant circumstance that the defendant had a prior conviction,* and, therefore, "substantially prejudiced him with regard to defending against a DUI charge as a second-time offender"); *State v. Yamada,* 99 Hawai'i 542, 550–52, 57 P.3d 467, 475–77 (2002) (noticing plain error *sua sponte* because the jury instruction, directing the jury to convict the defendant of manslaughter if a *single juror believed that the prosecution had failed to negative the mitigating defense,* "deprived the defendant of his constitutional right to a unanimous verdict"). To illustrate, in *Yamada,* a special jury instruction directed the jury to return a guilty verdict for "EMED manslaughter" (manslaughter based upon extreme mental or emotional disturbance ("EMED")) if "one or more jurors believes or

believe that the prosecution had failed to disprove the EMED defense to first degree murder." 99 Hawai'i at 548, 57 P.3d at 473. This court ruled that this "plainly erroneous" instruction "potentially allowed a single juror to highjack the proceedings and strong-arm the other eleven panel members into returning a verdict convicting Yamada of manslaughter," and, accordingly, vacated the defendant-appellant's manslaughter convictions. *Id.* at 551–52, 57 P.3d at 476–77. This court therefore noticed plain error *sua sponte,* correcting the particularly "egregious" nature of the error. *Id.* at 557–63, 57 P.3d at 482–88 (Acoba, J., concurring) ("Most egregious, however, is that Court's Special Instruction No. 1 erroneously advised the jurors that they could return a verdict on manslaughter without unanimously agreeing to such a verdict."). Similarly, the plurality opinion of *Ruggiero* determined that the district court plainly erred in convicting appellant where the *complaint* failed to state an attendant circumstance of the statute. 114 Hawai'i at

the only evidence in support of defendant-appellant's conviction of sexual abuse of the victim's anus was the testimony from the complaining witness that the defendant "might have" engaged in anal contact); *Ruiz,* 49 Haw. at 506, 421 P.2d at 307–08 (noticing plain error *sua sponte* where the trial court's stated ground of the decision to find the defendant guilty was erroneous); *see also State v. Calarruda,* No. 28880 at 2–3, 120 Hawai'i 383, 205 P.3d 648, 2009 WL 1060465 (App. Apr. 21, 2009) (SDO) (observing that Calarruda had been sentenced for the possession of both a firearm and the ammunition, but recognizing a plain error because there was "no evidence that Calarruda had separately acquired or possessed the firearm and ammunition").

Moreover, I certainly recognize that the *denial* of constitutional rights may well be extraordinary. However, the majority places too much emphasis on the exact words used. Instead, it behooves the majority to place that language in context with the circumstances of the cases that even it relies on. For example, the majority's citation to *State v. Heapy,* 113 Hawai'i 283, 305 n. 26, 151 P.3d 764, 786 n. 26 (2007) (plurality opinion), majority at 123, 223 P.3d at 188, is unavailing for the following reasons: (1) unlike this case, the trial court actually considered arguments as to whether to admit certain evidence, *id.* at 304, 151 P.3d at 785; (2) without relying on the plain error doctrine, a plurality of this court believed that consideration of HRS §§ 291E–19 and –20, as well as "The Use of Sobriety Checkpoints for Impaired Driving Enforcement," (Nov.1990) of the National Highway Traffic Safety Administration ("the Guide") was

germane to resolving the reasonableness of the stop in that case, even though the defendant failed to raise on appeal both these statutes and the trial court's exclusion of the Guide into evidence, *see id.* at 303, 151 P.3d at 784 ("It would be disingenuous in this case to perform an analysis of the reasonableness of the stop disengaged from consideration of HRS §§ 291E–19 and –20."), *id.* at 304, 151 P.3d at 785 ("[A]lthough ultimately excluded [as evidence], the Guide was considered in the case. Also, consideration of the Guide on appeal, like HRS §§ 291E–19 and –20, is germane to the reasonableness of the stop in this case by virtue of the principles in [*Delaware v. Prouse,* 440 U.S. 648[, 99 S.Ct. 1391, 59 L.Ed.2d 660] (1979) and *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444[, 110 S.Ct. 2481, 110 L.Ed.2d 412] (1990)]."); and (3) the plurality merely noted in a footnote the possibility that plain error could be used as an alternative ground to simply refer to the statutes and the Guide when considering the reasonableness of the traffic stop in that case, *see id.* at 305 n. 26, 151 P.3d at 786 n. 26. Accordingly, the plurality's mere mention of the plain error doctrine was unnecessary to adjudicate the particular issue presented in that case, and is therefore dictum. *See Robinson v. Ariyoshi,* 65 Haw. 641, 654, 658 P.2d 287, 298 (1982) ("[A]n inferior tribunal might not be bound under the doctrine of stare decisis if the pronouncement of a superior court is actually dictum."). In this regard, the majority's reliance on *Heapy* is wrong, inasmuch as it is clearly not an accurate reflection of the extraordinary circumstances under which this court has applied the plain error doctrine in the past.

239, 160 P.3d at 715 (plurality opinion). In both *Ruggiero* and *Yamada,* this court decided to notice plain error *sua sponte* because of the "particularly egregious and obviously harmful nature of the error." *Frisbee,* 114 Hawai'i at 85, 156 P.3d at 1191 (Nakayama, J., dissenting).

As this court's case law has demonstrated, when an appellant fails to identify or argue a court's error, an appellate court should only notice an *extraordinary* plain error *sua sponte.* Anytime this power is exercised, both parties are precluded from presenting arguments on the issue and our adversarial system is directly undermined.[8] As previously quoted and worth repeating here, " 'This system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question.' " *Fields,* 115 Hawai'i at 529, 168 P.3d at 981 (quoting *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)). In order to prevent the deterioration of our justice system, the power to notice plain error *sua sponte* should not be used in circumstances that are not extraordinary.

## D. Noticing Plain Error *Sua Sponte*

This court may notice plain error to correct errors "which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights,"—and, arguably, in extraordinary circumstances. The majority correctly states that this court may review a breached plea agreement claim for plain error, but it (1) applies a *de novo* standard for a breached plea agreement claim raised for the first time on appeal, and (2) determines that Miller's fundamental rights were violated based on the breached plea agreement itself. I disagree with the majority's application of the plain error standard.

### 1. *A breached plea agreement does not in itself satisfy the plain error requirements.*

"[T]he decision to take notice of plain error *must turn on the facts of the particular case to correct errors* that 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.' " *Fox,* 70 Haw. at 56, 760 P.2d at 676 (citation, brackets, and internal quotation marks omitted) (emphasis added); *see Puckett II,* 129 S.Ct. at 1433 (ruling that "a per se approach to plain-error review is flawed" (internal quotation marks and citation omitted)). To notice plain error, a Hawai'i appellate court must also find that "there is a reasonable possibility that the error contributed to the defendant's conviction, *i.e.,* that the [breached plea agreement] was not harmless beyond a reasonable doubt." *Nichols,* 111 Hawai'i at 337, 141 P.3d at 984 (brackets added).

Thus, in order to notice plain error, the majority must determine that, based on the record, Miller's substantial rights were affected from the breached plea agreement. The majority states that

[Miller's] right to due process was violated *based on the circumstances of this case,* because (1) the promise of the prosecution to take no position on DANCP was central to the promise made by the prosecution as a condition of the plea, and thus, was clearly material to [Miller's] resulting decision to forego all of his constitutional rights and plead guilty,[ ] and (2) the court's rationale for rejecting [Miller's] DANCP, closely reflected the prosecution's position, which was offered for no other apparent reason than to influence the court's decision to grant or deny the DANCP.

Majority at 125–26, 223 P.3d at 190–91 (emphasis in original) (footnote omitted).

First, the majority's conclusion that Miller's due process rights were violated, in part, because of the court's rationale for rejecting Miller's DANCP, is contradicted by

8. The majority finds this "ironic," inasmuch as the prosecution argued against the ICA noticing plain error. Majority at 125, 223 P.3d at 190 n. 37. Although the prosecution noticed that Miller asked the ICA to notice plain error, mere notice does not satisfy HRAP Rule 28(b) requirements— under HRAP Rule 28(b)(7), the appellant must also present *arguments* that satisfy the plain error standard. When the appellant fails to explain why the error that occurred in the lower court deprived him of his substantial rights, the prosecution cannot rebut the appellant's arguments.

its conclusion that Miller "was denied his due process rights[,]" *based solely on the alleged breach.* *See* majority at 106, 223 P.3d at 171. The majority made this conclusion prior to discussing the breach's impact on Miller and whether it affected Miller's substantial rights. *See id.*

The majority *concludes* that Miller's fundamental rights were violated based *entirely* on the fact of a breached plea agreement—and without a discussion of how Miller's due process rights were affected in this case.[9] *See* majority at 106, 223 P.3d at 171. It states that the prosecution breached the plea agreement, because, despite the prosecution's promise to "take no position" on the DANCP motion, the prosecution's "comments 'parallel[ed] several important factors which a court considers' in determining whether to grant a DANCP motion,"—whether the "defendant is not likely again to engage in a criminal course of conduct," and "the welfare of society [requires] that the defendant shall presently suffer the penalty." *Id.* at 105, 223 P.3d at 170. The prosecution addressed Miller's "criminal record and his age, and the closeness of [Miller's] relationship with the victim." Majority at 105, 223 P.3d 170. The majority also refers to the fact that, in reference to Miller's offense, the prosecutor stated, "you shouldn't be doing that to a significant loved one," which "directly intimated that the charge was in effect that of Abuse of a Family or Household Member," and an offense that is excluded from DANCP eligibility. *Id.* at 105, 223 P.3d

at 170. Based on these observations alone and case law regarding plea agreements, generally, the majority concludes, as follows:

Hence, in this case, the terms of the agreement were not fulfilled and [Miller] *was denied his due process rights;* thus, there was "manifest injustice as a matter of law." *See* [*State v. ]Adams,* 76 Hawai'i [408, ]414, 879 P.2d [513,] 519 [ (1994)]. Accordingly, [Miller's] *fundamental rights were indeed violated. See id.* (noting that "[t]he fundamental rights flouted by a prosecutor's breach of a plea agreement are those of the defendant, not of the State" (quoting *Santobello,* 404 U.S. at 267[, 92 S.Ct. 495] (Douglas, J., concurring))). Because contravention of the plea agreement violated Petitioner's fundamental rights and *resulted in manifest injustice,* it was incumbent upon the ICA to recognize the violation as plain error under HRPP Rule 52. *See Santobello,* 404 U.S. at 262[, 92 S.Ct. 495] (concluding that the "interests of justice" require that the case be remanded for relief based on the breach, despite accepting the judge's assertion that "the prosecutor's recommendation did not influence him").

Majority at 106, 223 P.3d at 171 (emphases added). In my view, the majority's analysis is flawed because it contravenes the plain error standard of review.

I agree that "breaches of plea agreements" may "provide appropriate bases for appellate review under the plain error standard[.]" Majority at 101, 223 P.3d at 166. Yet, this court has never provided that all breached plea agreements violate a defendant's fundamental rights.[10] The appellate court must

---

**9.** The majority states that Miller's right to due process was violated, in part, because "the court's rationale for rejecting [Miller's] DANCP, closely reflected the prosecution's position." Majority at 126, 223 P.3d at 191. However, this analysis was conducted—*sua sponte—following* its conclusion that Miller was denied his due process rights. *See* majority at 105–06, 223 P.3d at 170-71. The conclusion itself was based entirely on its *de novo* review of the breach. *See id.*

**10.** The majority's cited cases, *Adams,* and *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), do not support the *de novo* standard set forth here. Although both *Adams* and *Santobello* vacated the plea agreement because of the breached plea agreement, the courts were not limited to reviewing the defendant's claim for plain error. Both defendants objected to the prosecution's breached plea agreement

and gave the court the opportunity to review the alleged breach before appealing the court's error. *Santobello,* 404 U.S. at 258, 92 S.Ct. at 497; *Adams,* 76 Hawai'i at 410, 879 P.2d at 515.

In *Adams,* the defendant sought to withdraw his plea, arguing in a motion for reconsideration that the plea agreement was breached. *Adams,* 76 Hawai'i at 410–11, 879 P.2d at 515–16. After concluding that the prosecution breached the plea agreement, this court reviewed the trial court's denial of the request for abuse of discretion. *Id.* at 412–414, 879 P.2d at 517–19. We ruled that the circuit court abused its discretion-that it "clearly exceeded the bounds of reason or disregarded rules of principles of law or practice to the substantial detriment of a party litigant"—and vacated the court's order denying the defendant's motion to withdraw his plea. *Id.* at 411, 879 P.2d at 516.

determine that the error *in fact* affected *the defendant's* substantial rights.[11]

Even assuming, *arguendo*, that the prose-. cution breached the plea agreement, it does not follow that Miller "was denied his due process rights" or that his "fundamental rights were indeed violated." *See* majority at 106, 223 P.3d at 171. Although we have recognized that breached plea agreements *implicate* constitutional rights, *see* majority at 106, 223 P.3d at 171 (citing *Adams*, 76 Hawai'i at 414, 879 P.2d at 519), thereby permitting this court to notice plain error, *see* majority at 100-01, 223 P.3d at 165–66, a breached plea agreement—even if it acts as inducement for pleading guilty—does not automatically *deny* a defendant of his or her due process rights. Under the plain error standard of review, the error must be such that it "*seriously affect[ed]* the fairness, integrity, or public reputation of judicial proceedings[.]" *Nichols*, 111 Hawai'i at 334, 141 P.3d at 981 (citation and block format omitted). By requiring an appellate court to notice a waived error if it involved a breached plea agreement that induced the defendant to plea, the majority lowers the plain error standard for breached plea agreements and creates a *per se* rule for noticing plain error in any breached plea agreement. *Cf. Henderson v. Kibbe*, 431 U.S. 145, 154 n. 12, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (characterizing appellate consideration of a forfeited trial court error which was not obviously prejudicial as "extravagant protection" (quoting *Namet v. United States*, 373 U.S. 179, 190, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963))).

Although the majority states that the prosecution's promise to take no position on DANCP "was clearly material to [Miller's] resulting decision to forego all of his constitutional rights and plead guilty," *see* majority at 125, 223 P.3d at 190, I note that the prosecution also "agree[d] to amend the charge of abuse of a family or household member to assault in the third degree," which may have reduced Miller's criminal liabilities. HRS § 709–906 (Supp.2007) requires that, for the first offense of abuse of a family or household member, the convicted defendant "serve a minimum jail sentence of forty-eight hours," and that, for the second offense that occurs within one year of the first conviction, "the person shall be termed a 'repeat offender' and serve a minimum jail sentence of thirty days." Further, as the majority recognizes, the original charge is so serious that, if it was the charged offense, it would have *automatically* precluded the court from deferring the defendant's no contest plea, whereas assault in the third degree would not have. *See* majority at 105, 223 P.3d at 170 (citing HRS § 853–4 (Supp. 2008)). Thus, the plea agreement clearly involved advantages and incentives for the defendant other than the prosecution's promise to stand silent on the DANCP motion. *See State v. Perry*, 93 Hawai'i 189, 198, 998

---

Hawai'i precedent does not support the majority's claim that a breached plea agreement automatically denies a defendant of his due process rights and/or violates his fundamental rights. Because *Adams* was not subject to plain error review, the case does not dictate that a breach of a plea agreement requires the case to be remanded, even where the claim is forfeited.

I also note that the majority's quotation that "a breach is *undoubtedly a violation of the defendant's rights*," majority at 130, 223 P.3d at 195 (quoting *Puckett II*, 129 S.Ct. at 1429) (emphasis in original), is misleading, inasmuch as the Court recognized the defendant's rights, but notes the defendant's limited recourse when, as here, the defendant fails to object to the breach at the trial court:

Such a breach is undoubtedly a violation of the defendant's rights, but the defendant has the opportunity to seek vindication of those rights *in district court; if he fails to do so, Rule 52(b) as clearly sets forth the consequences for that forfeiture as it does for all others.*

*Puckett II*, 129 S.Ct. at 1429 (citation omitted) (emphases added).

11. The majority claims that I am "[u]rging ... that the denial of due process, *i.e.*, the breach, does not 'in fact' affect substantial rights," and that it "is contrary to this court's plain error jurisprudence, and would greatly diminish due process protections under our constitution." Majority at 127, 223 P.3d at 192. Again, this is an egregious distortion of my statements. Consequently, I must reiterate that the denial of due process affects substantial rights, but that a breached plea agreement, in itself,. does not deny the defendant of his or her due process rights or affect the defendant's substantial rights. *See Puckett II*, 129 S.Ct. at 1429–33 (rejecting the claim that a breached plea agreement always impairs a defendant of his "substantial rights"). As it is well-established, in order to notice plain error, the appellate court must determine that (1) there was an error (2) which affected the defendant's substantial rights.

P.2d 70, 79 (App.2000) ("Under the facts, it is apparent that the bargain struck between Defendant and the State was, on one hand, to permit Defendant to plead to a reduced charge in order to avoid any aggravated penalties, and on the other hand, to allow the State to forego a trial and to obtain a certain conviction."). The breach of the plea agreement alone did not deprive Miller of his due process rights.

In my view, the majority's position on breached plea agreements (1) is misleading, where it restates our long-held plain error standard, *see* majority at 99–100, 223 P.3d at 164–65, but concludes that Miller's fundamental rights were violated without actually applying this standard, *see* majority at 101–06, 223 P.3d at 166–71, (2) invites appellants to raise for the first time on appeal *any* error that a court has—on a lower standard of review—found that, under the circumstances, fundamental rights are denied,[12] and (3) contradicts the well-established limitation to the plain error standard that this court's power to deal with plain error is one to be exercised *sparingly* and *with caution*.

### 2. *Federal case law*

"We have never employed the four-pronged plain error standard of review set forth in [*U.S. v. Olano,* 507 U.S. 725[, 113 S.Ct. 1770, 123 L.Ed.2d 508] (1993)]." *Nichols,* 111 Hawai'i at 335, 141 P.3d at 982; *see also Fox,* 70 Haw. at 53, 760 P.2d at 676 ("We have not endeavored to place a gloss on the rule, as other courts have, by further defining the kind of error for which we would reverse under [HRPP Rule 52(b) ].") (internal quotation marks, brackets, and citation omitted). Nevertheless, because Hawaii's plain error standard is substantially similar to the federal plain error test, it is useful to consider the federal treatment of a waived claim that the plea agreement was breached.

Each federal circuit court of appeals that reviewed a breach of a plea agreement for

plain error required a showing that there was "(1) *error;* (2) that was plain; (3) *that affected substantial rights;* and (4) that *seriously affected the fairness, integrity, or public reputation of the judicial proceedings.*" *Cannel,* 517 F.3d at 1176 (emphases added); *Rivera–Rodriguez,* 489 F.3d at 57; *Salazar,* 453 F.3d at 913; *Jensen,* 423 F.3d at 854; *Swanberg,* 370 F.3d at 627; *Brown,* 328 F.3d at 789; *Thayer,* 204 F.3d at 1356; *McQueen,* 108 F.3d at 66. The conditions of the federal test, specifically, that there is an error that affected substantial rights and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings," are included within this court's rule that we "will apply the plain error standard to review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *Nichols,* 111 Hawai'i at 334, 141 P.3d at 981 (quoting *Fox,* 70 Haw. at 56, 760 P.2d at 676). Further, this court has stated that in order to notice plain error, there must be a "reasonable possibility that error might have contributed to the defendant's conviction, *i.e.,* that the [breached plea agreement] was not harmless beyond a reasonable doubt." *Id.* at 337, 141 P.3d at 984 (brackets added).

The federal cases reviewing breached plea agreements for plain error have determined that, even where the prosecution breaches the plea agreement, the defendant is not automatically prejudiced or deprived of his or her "fundamental rights." *See Cannel,* 517 F.3d at 1179 (Clifton, J., concurring) (concluding that the government breached the plea agreement but agreeing with the majority that the sentence should be affirmed because the defendant did not show that the breach prejudiced him); *U.S. v. De La Garza,* 516 F.3d 1266, 1269–70 (11th Cir. 2008) (concluding that the government breached the plea agreement, but that defendant did not show that the breach prejudiced

---

12. I strongly disagree with the majority's attempt to recharacterize a portion of my dissent, where it suggests that I "seem to" claim that "cases wherein this court has concluded that fundamental rights were denied outside of the plain error context, cannot be used as support for the proposition that substantial rights were affected in the plain error context." Majority at 127, 223 P.3d at 192. Cases that present similar factual patterns and analysis may, of course, be used to support cases that are to be reviewed under different standards of review. My disagreement with the majority rests on its holding that, because the plea agreement was breached, Miller's due process rights were violated, *based on Adams' discussion on the effect of a breached plea agreement, generally.*

him and, therefore, failed to establish plain error); *Salazar,* 453 F.3d at 915 (holding that, "even if the government had breached the agreement," the defendant could not have shown plain error, inasmuch as he could not have shown that "the district court would have imposed a different sentence but for the government's argument. . . ."); *Jensen,* 423 F.3d at 855 (holding that even if defendant was able to show a breach, he did not establish that it affected his substantial rights). When reviewing for plain error, the entire standard of review must be satisfied.

The majority's ruling is also at odds with the Supreme Court's clear ruling that a breached plea agreement does not satisfy the plain error requirement that the error "must have affected the [defendant's] substantial rights." *See Puckett II,* 129 S.Ct. at 1429. In *Puckett II,* the defendant, like the majority here, *see* majority at 100–01, 223 P.3d at 165–66, relied, in part, on *Santobello,* arguing that "if the 'interests of justice' required a remand in *Santobello* even though the breach there was likely harmless, those same interests call for a remand whenever the Government reneges on a plea bargain, forfeiture or not." 129 S.Ct. at 1431. The Supreme Court rejected this claim, explaining that "[w]hether an error can be found harmless is simply a different question from whether it can be subjected to plain-error review. *Santobello* (given that the error in that case was preserved) *necessarily addressed only the former." Id.* (emphasis added).

Furthermore, the Supreme Court rejected the claim that a breached plea agreement always impairs a defendant of his "substantial rights." *Id.* It explained that a breached plea agreement does not necessarily prejudice the defendant where the defendant may have obtained the benefits of the plea agreement "either because he obtained the benefits contemplated by the deal anyway (*e.g.,* the sentence that the prosecutor promised to request) or because he likely would not have obtained those benefits in any event." *Id.* at 1432–33. According to the Supreme Court, the claim that a defendant asserting a breached plea agreement will always suffer an impairment of his substantial rights

is simply an ipse dixit recasting the conceded error—breach of the plea agreement—as the effect on substantial rights. Any trial error can be said to impair substantial rights if the harm is defined as "being convicted at a trial tainted with [fill-in-the-blank] error." Nor does the fact that there is a "protected liberty interest" at stake render this case different. *That interest is always at stake in criminal cases.*

*Id.* at 1433 (emphasis added).

The majority dismisses the Supreme Court's recent limitation of errors not objected to at the trial court, stating that *Puckett II* "departed from federal precedent on breached plea agreements in significant respects, ... all but overturning *Santobello's* holding that 'automatic reversal is warranted' where a plea agreement is breached.' " Majority at 130, 223 P.3d at 195. Yet, as the Supreme Court explained, *Santobello* was distinguishable from *Puckett II* because the defendant in that case preserved error. 129 S.Ct. at 1431. As such, I cannot agree that the Supreme Court "departed" from federal precedent.

Moreover, even though *Puckett II* is clear that an error that is not preserved is reviewed under a higher standard, the majority insists on clinging to the statements of *Santobello* and the Hawai'i case law that followed it, even though the defendants preserved error and the appellate courts subsequently reviewed the trial court's rejection of the defendant's claim of a breached plea agreement. *See* majority at 100–01, 223 P.3d at 165–66 (discussing *Adams,* 76 Hawai'i 408, 879 P.2d 513), 127–28, 223 P.3d at 192–93 (relying on *State v. Yoon,* 66 Haw. 342, 349, 662 P.2d 1112, 1116 (1983)).

Although stated differently from the federal four-prong standard, the Hawai'i plain error standard also requires that the error affect the defendant's substantial rights. In light of *Puckett II* and the other federal decisions on this issue, I cannot agree with the majority's decision to erode Hawaii's plain error standard by determining that a breached plea agreement automatically denies a defendant of his substantial rights.

### E. The Circumstances In This Case Do Not Require This Court To Correct The Alleged Error.

Although the majority decides that the breached plea agreement itself denied Miller of his due process rights, *see* majority at 101–02, 223 P.3d at 170–71, it also concludes that the error was not harmless beyond a reasonable doubt. Majority at 102, 223 P.3d at 171. In order to reach this conclusion, the majority is forced to inject its own analysis as to the effect of the prosecution's breach of the plea agreement because Miller does not attempt to explain this himself. As previously stated, the error should be extraordinary for an appellate court to notice plain error *sua sponte*, inasmuch as it precludes the prosecution from responding to the court's conclusions. In my view, such circumstances are absent here.

Assuming, *arguendo*, that the prosecution breached the plea agreement,[13] the majority also points to the court's statements that (1) Miller "had no record for [fifty-one] years," (2) his offense "was one too significant for the court to ignore," and (3) "the welfare of society" requires that he suffer the penalty. Majority at 102, 223 P.3d at 171 (emphases omitted). It posits that

> [the court's] statement mirrors the prosecutor's comments regarding the severity of the crime and that "[Miller] does not have

a prior criminal record, but you know, at [fifty-one] years old, you shouldn't be doing that to a significant loved one. And this type of beating and brutality should not be accepted in our society."

*Id.* at 102, 223 P.3d at 171.

Yet, the court's ruling indicates that it took into account the defense counsel's factual statements that

> [t]he [c]ourt has the discretion to grant the deferral. If the [c]ourt makes two findings, and one, it appears that the defendant's not likely, again to engage in a criminal course of conduct; and two, the ends of justice and the *welfare of society* have been properly served by the penalty as imposed by law.
>
> .... [H]e's 51 years old. He has no prior criminal record. ... I ask that you use your discretion where [Miller] has not engaged at all in any criminal conduct. He's 51 years old.

(Emphases added.) It may seem implausible that the court considered Miller's counsel's statements because these facts were presented in support of the DANCP motion, and the court ruled against the motion. However, the court stated, "*although* [it could] find the defendant has had no record for [fifty-one] years," it could not make the required find-

---

**13.** Although the plea agreement precluded the prosecution from taking a position as to the DANCP motion, the prosecution was permitted to make statements as to Miller's sentencing. The prosecution argues that its statements relating to Miller's offense was made in response to the court's prompt, "Sentencing?," and for the purpose of influencing the court's ruling as to Miller's sentencing.

This case differs from the cases relied on by Miller, *see* majority at 98, 223 P.3d at 167, which include *United States v. Crusco*, 536 F.2d 21, 23, 25 (3d Cir.1976), where the prosecution had promised to take no position on sentencing but made statements in an "effort to influence the severity of [the appellant's] sentence," and *United States v. Moscahlaidis*, 868 F.2d 1357, 1361–62 (3d Cir.1989), where the government promised not to take a position related to the defendant's custodial sentence but presented a sentencing memorandum that was "highly critical." In *Crusco* and *Moscahlaidis*, the prosecution's *sentencing* statements were made despite promising to stand silent on the issue, whereas, here,

the prosecution's statements addressed the sentencing factors as *permitted* under the plea agreement.

In ruling on sentencing, the court is required to consider, among other things:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct[.]

HRS § 706–606. The prosecution's statements that the complaining witness was a "significant loved one," and that "this type of beating and brutality should not be accepted in our society" directly addresses "[t]he nature and circumstances of the offense" and "[t]he need for the sentence imposed ... to reflect the seriousness of the offense ... and to provide just punishment for the offense." Because the prosecution's statements addressed the sentencing factors, I cannot agree that it breached its promise not to take a position as to the DANCP motion.

ing to grant the motion. The use of "although" to preface the fact that Miller had no record for fifty-one years, but then denying the DANCP motion, signals that the court recognized this fact as evidence to support the DANCP motion.

The remainder of the court's ruling denying the DANCP motion was based on whether "the defendant is not likely again to engage in a criminal course of conduct," and "[t]he ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law," which are requirements that a defendant must satisfy prior to a court's grant of a DANCP motion. *See* HRS § 853–1(a)(2)–(3). The court stated that it could not make these findings based on *Miller's offense*. The court was aware of Miller's offense because of statements made by both Miller's counsel and the prosecution—in its sentencing statements—regarding *Miller's offense*.

In response to the court's "Sentencing" prompt, the prosecution described the nature of the offense, which is a factor of sentencing, *see* HRS § 706–606, as follows:

> [T]his case was borderline strangulation. The defendant actually elbows her, kneed her in the back, punched her, choked her, put his hand over her mouth, and told her to be quiet, and then also took a pillow after that because she wouldn't be quiet and put it over her face.
>
> At that time, your Honor, the witness in this case, the victim, actually feared for her life. And, you know, she's [fifty-one] years old. So is the defendant.

The prosecution also referred to the complaining witness ("CW") as a "significant loved one."

Miller's counsel next spoke as to the offense and the court's discretion to grant the DANCP motion. He further discussed Miller's relationship with CW and the resulting injuries to the complaining witness:

> [Miller] has had a *[fourteen]-year relationship* with [CW], and frankly, during the last four years of it, it has ended. And he has been ordered to attend Child and Family Services *domestic violence classes*. He has told me that he is actually *learning a lot* about it.

. . . .

> He has agreed to pay whatever restitution to be determined, given the four-day later *emergency check out* to the office. . . .
>
> I just want the court to note, while we are not minimizing his plea and apology, when Officer Katayama appeared at the scene, there was no complaint of injuries. She showed the officer no injuries, and Officer Katayama would have testified that he's tried to look for injuries. Look for and found none.

(Emphases added.)

The prosecution, in response, informed the court as to the extent of the CW's injuries:

> We did have Dr. Nelson from the ER examine [CW], and did see—well, diagnosis, she had a bruised neck; and also, in talking with Miss Moyco, she did have bruises to her leg area by basically getting into a fetal position to block the defendant.
>
> So Officer Katayama, even though he was on the scene first, bruises do show up later.

A fair review of the record does not show that the prosecution's statements to the court, even if they could be construed to be in violation of the plea agreement, affected Miller's substantial rights. The court decided that, based on the offense, as presented by both the prosecution and Miller's counsel, it could not find the necessary pre-requisites to grant the DANCP motion. *See* HRS § 853–1. The court was also well aware as to the type of crime Miller committed because Miller was originally charged with Abuse of a Family or Household Member, under HRS § 709–906. Moreover, the court was further informed as to the offense when, pursuant to the plea agreement, it sentenced Miller to write a letter of apology to CW, participate in domestic violence intervention classes, and pay restitution to CW. Based on the ample evidence before the court regarding Miller's offense, I cannot agree that the prosecution's statements affected Miller's substantial rights, or that the error created such "exceptional circumstances" that this court must notice plain error *sua sponte*.

In light of the foregoing analysis, I would hold that (1) Miller waived the issue of breached plea agreement when he failed to raise it before the trial court, and (2) there was not an "error which seriously affected the fairness, integrity, or public reputation of judicial proceedings, subverted the ends of justice, and prevented the denial of fundamental rights." *Miller*, SDO at 3 (quotations marks and citations omitted). As such, I would affirm the ICA's October 3, 2008 judgment, which affirms the family court of the second circuit's October 15, 2007 judgment.